Pages 1 - 22

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Maxine M. Chesney, Judge

UNITED STATES OF AMERICA,          )
                                   )
            Plaintiff,             )
                                   )
  VS.                              )          NO. CR 18-cr-00465-MMC
                                   )
UNITED MICROELECTRONICS            )
CORPORATION; FUJIAN JINHUA         )
INTEGRATED CIRCUIT, CO., LTD.;     )
and CHEN ZHENGKUN a.k.a STEPHEN    )
CHEN,                              )
                                   )
            Defendants.            )
_____    )

                        San Francisco, California
                        Wednesday, February 6, 2019

                    **TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

For Plaintiff:
                        DAVID L. ANDERSON
                        United States Attorney
                        450 Golden Gate Avenue
                        San Francisco, California  94102
              BY:  **SHIAO LEE**
                   **JOHN HEMANN**
                   **ASSISTANT UNITED STATES ATTORNEY**S

For Defendant United Microelectronics Corporation:

                        LATHAM & WATKINS
                        505 Montgomery Street - Suite 1900
                        San Francisco, CA  94111
              BY:  **LESLIE R. CALDWELL**
                   **ATTORNEY AT LAW**

Reported By:  Marla F. Knox, RPR, CRR
              Official Reporter

(APPEARANCES CONTINUED ON FOLLOWING PAGE)

**<u>APPEARANCES (CONTINUED):</u>**


For Defendant Fijian Jinhua Integrated Circuit Co., Ltd.:

                         MORRISON FOERSTER
                         425 Marke Street
                         San Francisco, CA  94105
               **BY:  CHRISTINE WONG**
                     **ATTORNEY AT LAW**

1  <u>**Wednesday - February 6, 2019**</u>                    <u>**3:18 p.m.**</u>

2                         <u>**P R O C E E D I N G S**</u>

3                              **---000---**

4          **THE CLERK:**  Calling criminal Case Number 18-465,

5  United States of America versus United Microelectronics and

6  Fujian Jinhua Integrated Circuit.

7          **THE COURT:**  Counsel, do you want to step forward,

8  please, and state your appearances?

9          **MS. LEE:**  Shiao Lee and John Hemann on behalf of the

10 United States.  Good afternoon.

11         **THE COURT:**  Good afternoon.  I haven't seen you for a

12 while.

13         **MS. CALDWELL:**  Leslie Caldwell on behalf of United

14 Microelectronics.

15         **MS. WONG:**  Kristine Wong for Fujian Jinhua Integrated

16 Circuit.

17         **THE COURT:**  I have an interesting motion here.  Let me

18 just -- I do have an interesting motion here because the papers

19 for it are in chambers.  Ms. Geiger, could I see you for a

20 moment?

21         **(Whereupon:**  An off-the-record discussion was had.)

22         **THE COURT:**  We can proceed while we are waiting for

23 her to bring the papers out.  This is a motion for a bill of

24 particulars.  The Government has opposed the motion and has

25 essentially stated we have a long indictment; has a lot of

1   facts and that is good enough under the case law.  The

2   Defendants' position is, yes, a lot of information about the

3   other Defendants, not much about my client, okay.  United

4   Microelectronics did not file the motion?

5              **MS. CALDWELL:**  We did not, Your Honor.

6              **THE COURT:**  Okay.  And you didn't file a joinder in

7   it?

8              **MS. CALDWELL:**  We did not.

9              **THE COURT:**  All right.  There is probably a really

10   good reason for that.  It seemed to me that the heavy

11   players -- at least at the outset according to the indictment

12   and I'm not making any factual findings -- the story as told in

13   the indictment is that three of the defendants who are

14   individuals, Mr. Chen, Mr. Wang -- does he pronounce it Wang or

15   Wong?

16              **MS. CALDWELL:**  Wong.

17              **THE COURT:**  Thank you.  Mr. Wang and Mr. Ho were the

18   active parties in stealing the trade secrets that are alleged

19   and along the way -- oh, and then they all ended up at Ms.

20   Caldwell's client -- we can call them UMC, I guess.  Is that

21   what you call them?

22              **MS. CALDWELL:**  Yes, Your Honor.

23              **THE COURT:**  UMC.  And then along the way came Jinhua

24   and they -- is that what you call your client?

25              **MS. WONG:**  We do, Your Honor.

1          **THE COURT:**  All right.  Fine.  Okay.  And also thank

2     you for getting the papers, Ms. Geiger.

3          So they came along.  There is some ambiguity for when they

4     came along frankly, which I want to speak to Government's

5     counsel about as pled in the indictment; and they go onto say,

6     and furthermore, we can't tell why you think we need knew

7     anything.  Even if we were producing product with what turned

8     out to be stolen technology, we didn't really know anything

9     about it.  You can't show we did, and we shouldn't have to

10    guess about what the Government's thoughts are in that regard.

11    And the government has little factual snippets along the way as

12    to what might be the basis for why they think that Jinhua knew

13    and possibly entered a conspiracy.  Not sure why they pled

14    conspiracy.  Maybe it has something to do with sentencing.

15         A lot of times in the cases that the Government pleads

16    conspiracy -- not always, but in a lot of instances they really

17    need it in order to get jurisdiction over the case.  The three

18    cases that were cited -- three of the cases that were cited by

19    the Defendant all by my estimable colleague, the Honorable

20    William Alsup, involved gangs that are alleged to have been

21    engaged in racketeering and in particular killed people.

22         All right.  So they can't bring a, you killed somebody

23    here in federal court, unless they did it in the Presidio or

24    some federal officer.  They need a hook, and their hook is to

25    bring it under the racketeering statutes which are conspiracy;

1   and that's what they do.  So here, whether they are going to be

2   able to show the conspiracy or not or whether they have

3   individuals who didn't get together but knew what they were

4   doing, another question.  Mr. Chen turns out to be an officer

5   in both companies.  All right.  Now, he can't conspire with his

6   own corporation, I don't think.  Can he conspire with himself?

7   I don't know that he can.  Let's just say, for example --

8   argument's sake.  I'm not making a finding -- Mr. Chen knew

9   when he was working as an officer at UMC that Mr. Ho, Mr. Wang,

10  had stolen the trade secrets from their former employer,

11  Micron; and then he found out about that as president of

12  Jinhua; but he can't really have a conversation with himself or

13  they will commit him.  So I don't know exactly where this is

14  going to fit in, but you can all be thinking about that as --

15  you know, if any of you need it.

16      Here are some of the anomalies -- I should pull the

17  indictment out because I asked Ms. Geiger to go and get it.

18  Here is the file.

19      The conspiracy that is alleged in Count One said it

20  started in January of '16, but the papers also state factually

21  that PRC didn't form Jinhua until February of that year.  So

22  that's a little bit -- threw me off; and I don't know, Ms. Lee,

23  if you want to respond to that in anyway.  Is that a typo or is

24  that for real or what?  I'm pretty sure it says that.  I should

25  double-check, but I put the paragraphs down on one of these

1    papers that I have here, so -- I think on the bill of

2    particulars I made a note.  Count One starts by saying January

3    of '16.  Let's see where did I write the part about -- and

4    that's by the way when Jinhua and UMC was supposed to enter

5    into the contract to produce the DRAM, which is the -- it is an

6    acronym for the technology.  But yes, it's -- just one second

7    -- where is that?

8         **MS. WONG:**  In paragraph 19 of the indictment.

9         **THE COURT:**  Is it 19 that they got it?

10        **MS. WONG:**  They have got it at February 2016 and

11   paragraph 6 is another place when they talk about the

12   cooperation agreement in January 2016.

13        **THE COURT:**  All right.  Hang on.  They say they formed

14   in February.  That's what I'm talking about.

15        **MS. WONG:**  Right.

16        **THE COURT:**  That didn't seem to add up.  If I were the

17   Defendant, I might want to know what were you thinking in that

18   regard.

19        **MS. LEE:**  Your Honor, paragraph 20 states:  In or

20   around January of 2016 Fujian Jinhua and UMC negotiated --

21        **THE COURT:**  I'm sorry.  You are going to have to speak

22   up particularly if you are going to look down while you are

23   reading.

24        **MS. LEE:**  Yes.  So our theory is that the negotiations

25   began between Jinhua and UMC in January of 2016.

1           **THE COURT:**  Even though they weren't a company yet?

2           **MS. LEE:**  Yes.  I think the formal creation of Fujian

3    Jinhua was in February, but the negotiations and communications

4    existed prior.

5           **THE COURT:**  All right.  So that's the thought that

6    before they were formally incorporated by the Government or

7    whatever --

8           **MS. LEE:**  That's correct, Your Honor.

9           **THE COURT:**  All right.  Okay.  The Defendant wants to

10   know all the details that Judge Alsup said his Defendants were

11   entitled to:  When was the meeting?  Who was there?  Who said

12   what?  All right.  Unless you have got a fly on the wall, I

13   don't know that you are going to be able to give those details.

14   One of Judge Alsup's concerns in the orders he made were there

15   were a lot of defendants.  There was a huge period of time;

16   that the conspiracy in one instance was supposed to have been

17   conducted for.  The -- there were people who were dead, people

18   who may have just been dealing drugs.  People wanted to know

19   who they were being held responsible for in terms of the overt

20   acts that, frankly, were the real case, okay.  Whereas here,

21   the overt acts may be behaviors that are totally legitimate and

22   not even, you know, crimes in and of themselves.  So those

23   cases are somewhat distinguishable.  Let me just ask you, do

24   you -- if someone said, Okay, give them the information -- who

25   was there, when it happened and what was said -- could you do

1   that?

2       **MS. LEE:**  I think, Your Honor, appropriately said you

3   would have to be a fly on the wall to be able to have that

4   communication -- the phone call saying, Hi, this is Jinhua; Hi,

5   this is UMC.  I would like to enter into this agreement with

6   you; and let's be clear, you are going to get the DRAM for

7   stealing Micron technology -- no.  The time of that

8   communication, the who, the what was said, that is impossible.

9   That is not what is required for us to prove the charge.

10      **THE COURT:**  Okay.  They don't know.  So to a certain

11  extent, this motion asks the question:  Is this all you have

12  got?  Okay.  Then they will launch whatever defense they want

13  to bring based on what they might argue is a paucity of

14  circumstantial evidence.  Okay.

15      At least at the moment, I guess, the answer is that's all

16  we have got.  Then you have the question of what exactly was

17  stolen?  Well, they were supposed to be trade secret.  They

18  don't want to spell them out in full in the public indictment,

19  but they say that they do have more information about them; is

20  that correct?

21      **MS. LEE:**  That's correct, including the documents

22  themselves.

23      **THE COURT:**  Okay.  So that the document itself is the

24  secret in effect?

25      **MS. LEE:**  Yes.

1          **THE COURT:**  It has the secret spelled out on it, here

2   is how you make it?

3          **MS. LEE:**  Yes.

4          **THE COURT:**  So you are actually going to have a chance

5   to see the secret, and that I assume you are not going to

6   provide until you get a satisfactory protective order.

7          **MS. LEE:**  Yes.

8          **THE COURT:**  Have you been discussing with both,

9   Counsel, what that might be, Mr. Hemann?

10          **MR. HEMANN:**  Yes, Your Honor.  So we have a draft

11   protective order that was prepared by the defense based on a

12   protective order that we entered into in another recent case,

13   the United States entered into.  It is largely acceptable.  As

14   the Court knows, there is a parallel civil action that has a --

15          **THE COURT:**  Right here.

16          **MR. HEMANN:**  Right here -- that has a parallel civil

17   protective order, and we are going to talk tomorrow about

18   making sure that there is no meaningful --

19          **THE COURT:**  Discrepancy.

20          **MR. HEMANN:**  -- discrepancy between the two we will

21   make sure -- we anticipate we will have a protective order to

22   Your Honor within several days that is acceptable to all of the

23   parties.

24          **THE COURT:**  Okay.  I want to go back to counsel for

25   Jinhua for a second.  Ms. Wong, were there other pieces of

1  information that you were also asking for or were these the

2  prime aspects, so to speak?

3      **MS. WONG:**  To start, I think while we do ask for any

4  details that the Government has, if they have them, about how

5  Jinhua joined the conspiracy; and it sounds like they don't

6  have those details.  At least what we would like to understand

7  is what is the factual theory of liability for Jinhua.  As,

8  Your Honor, stated at the outset, you have got Stephen Chen who

9  was the president of Jinhua and also UMC.  Could they really

10  conspire -- could he conspire with himself on behalf of these

11  two parties?  Is this the theory that the Government is

12  operating under?  And to start, if that's the theory they are

13  operating under, does that mean Jinhua didn't join the

14  conspiracy until towards the end of February of 2017 when

15  Stephen Chen became employees of both?  There are questions

16  about the factual theory of the case that even with without the

17  specific details, that the Government says they do not have,

18  would really greatly reduce surprise; help us defend at trial.

19      **THE COURT:**  Well, the Government did cite a case that

20  said that ordinarily you are not entitled to the theory as long

21  as you have the facts.  All right.  So it is as long as you

22  have the facts part that you would have to be relying on here.

23  And the facts that they have got in the indictment at the

24  moment are Mr. Chen's dual role, if you will.  They have that

25  -- I think you acknowledged in your papers, that at least

1   arguable knowledge that Jinhua would have that UMC wasn't in a

2   position to make this type of a product or be in a possession

3   of that type of information at least before Mr. Wang and Mr. Ho

4   came over.  So you have those facts.  Cooperation, in and of

5   itself, I guess you would argue you could have one totally

6   blameless party who is being used by somebody else; but the --

7   oh, there is -- before I forget, you had a question about what

8   acts they were relying onto tie all this to the U.S. and not

9   just be people doing what they always do outside of the U.S.

10  And they had the joint recruitment of workers to now produce

11  this previously unproduced product and also the application for

12  patents in the U.S. which is pretty big availment of one's

13  resources here in the Northern District or in the United

14  States, I think.  But getting back to the idea of what is your

15  theory, okay, corporations like Jinhua or UMC are pieces of

16  paper.  There are people that are deemed as legally to be the

17  corporation for whatever they know and do, and I don't know how

18  many people work at Jinhua and whether the Government is

19  assuming that Mr. Chen talked to somebody else who is high up

20  in the organization as well or how this is all going to play

21  out, I don't know.  You are not relying on Mr. Chen talking to

22  himself, are you, for a conspiracy?

23          **MS. LEE:**  No, Your Honor.

24          **THE COURT:**  Okay.  So do you have any details that you

25  were planning on giving, Ms. Wong, during the course of

1  discovery as to who else may be involved even though they

2  aren't named perhaps as defendants?

3          MS. LEE:  Yes, Your Honor.  Just as an example, though

4  it is not in the four corners of the indictment, our discovery

5  would show that there were employees at UMC that were dually

6  being paid by UMC and Jinhua.  Essentially that is Mr. Chen.

7  As you can tell, he assumed dual role as vice president of UMC,

8  president of Jinhua but also J.T. Ho.  It is our understanding

9  that during the course of the conspiracy, he was being employed

10  or at least paid and receiving money from both Jinhua and UMC.

11  And as the indictment alleges, J.T. Ho stole and was in

12  possession of many Micron trade secrets.  They were found on

13  electronic devices tied to him.  That is just one additional

14  fact.

15      We are not relying on the fact that Mr. Chen conspired

16  with himself.  Our understanding is that the case law is that

17  you can conspire between an employee of a company with the

18  company itself.  So Mr. Chen can engage in a conspiracy with

19  Fujian Jinhua with UMC.

20          THE COURT:  Say that not quite so fast again.

21          MS. LEE:  An individual can conspire with the company

22  for whom he works.

23          THE COURT:  He can?

24          MS. LEE:  They can, yes.

25          THE COURT:  But there needs to be somebody else there.

1    Otherwise, you are talking to a piece of paper again, right, or

2    not.  I don't know.

3          **MS. LEE:**  It is a fine distinction.

4          **THE COURT:**  This is worth looking into.  There are

5    some legal issues here that kind of overlay the factual

6    inquiry, and I don't frankly have them sorted out.  I thought a

7    corporation can't -- yeah, well, they can't conspire with

8    themselves but that's -- wait a minute.  That doesn't work.

9    Anyway, whatever I was thinking, now that I'm mulling it over,

10   everybody here can find whatever authority they think allows

11   whoever it is at one of these companies or another to be all

12   they need or don't need for a conspiracy; but you will still

13   get down to ultimately did somebody know something and

14   nonetheless used it because you don't have to steal it.  You

15   can just avail yourself of it.  So even separate from the

16   conspiracy, they are going to have to show some knowledge here

17   of the theft; and that may be easier for them to do than the

18   conspiracy charge.  I don't know.  It may depend on what they

19   have much okay.

20        Okay.  I don't think it is going to be productive to -- at

21   least at this stage -- try to put an order in place because,

22   frankly, it sounds like they haven't worked it out yet, okay.

23   And that there will be discovery and considerably more than you

24   have here.  What I would like to say is if you get through with

25   that and you can't figure out where they are coming from, then

1    I would say come back; and I will take a look at it either from

2    a discovery standpoint or from a bill of particulars

3    standpoint.  I do think that at this stage that it would not be

4    productive to make a formal order.  I think you really have

5    pretty much what they have got in the indictment itself, and

6    you will get more.  You also, frankly, will get all of the

7    benefit to the extent it is more extensive of civil discovery.

8    Whatever limitations there may be on discovery in criminal

9    cases, you are going to get to depose people.  You can do all

10   kinds of things in the civil case that wouldn't necessarily be

11   available in the civil case.  I know for criminal law that may

12   not be full consideration but just as a practical matter.

13          **MS. WONG:**  Your Honor, if I may add one thing, I

14   understand your ruling.  I just want to flag one point, which

15   is that while I understand that there is additional discovery

16   forthcoming, it should be voluminous.  What it sounds like it

17   is described on is based on this Taiwan proceeding, and that

18   Taiwan proceeding does not name Jinhua; included searches of

19   UMC, offices and their employees but not Jinhua's premises or

20   their employees.  So while I appreciate and will look out for

21   what Ms. Lee described as Mr. Ho's role in possibly being

22   funded by both Jinhua and UMC, it strikes us that the bulk of

23   that evidence will nonetheless still be not about Jinhua.

24          **THE COURT:**  Then it will be.

25          **MS. WONG:**  Right.

1      **THE COURT:**  And then the answer to that is we are not

2   pleading to anything because you can't prove your case, okay,

3   if that's where you end up coming from.  I think that we have

4   determined that they are not really holding a lot back here at

5   the moment, okay; but Government is pretty good at flushing

6   things out as they go along, so we will see what they do with

7   it as they go along.

8      All right.  For the reasons I stated, I'm going to deny

9   the motion.  It is not -- it is something I'm denying

10   cavalierly or haven't thought about.  I think it was a thought

11   provoking motion.  I spent some time looking into and also

12   reading some of the cases, which seem to me to be in most

13   instances not so similar to what we have.  So the motion is

14   denied also without prejudice, so that you have that just as

15   some security blanket, so to speak.

16      And then I hope that you can get this protective order

17   idea squared away, and that everything looks good; and they can

18   start giving you discovery and hopefully from the Government's

19   standpoint, that you are not going to just, you know, dump a

20   truckload of papers on them with no organization at all.

21      **MR. HEMANN:**  Sure.  I can talk a little bit about

22   that, Your Honor.  We have some fairly discreet sources of

23   information, and we will provide them to the defense in a way

24   that is clear what the source is and what the information is.

25      **THE COURT:**  That will be helpful hopefully.  Ms.

1   Caldwell, I don't want you to think in the course of this

2   discussion and in reading these papers that the Court has

3   formed any formal decision as to your client.  It is just that

4   in the allegations, your client and the individual Defendants

5   were more of the focus.  So that's why it may sound that way,

6   but it is not like I'm making any finding in that regard.

7          **MS. CALDWELL:**  I understand, Your Honor.  I appreciate

8   that.

9          **THE COURT:**  Okay.  So I don't know.  Is there anything

10  else so that while you have got me here you want to take up?

11         **MR. HEMANN:**  We talked about coming back, and I think

12  all of us agreed to see, Your Honor, in April.

13         **THE COURT:**  That would be for --

14         **MR. HEMANN:**  A status.

15         **THE COURT:**  Status conference.  Well, I think it is

16  important that you not just sort of drop off the face of the

17  earth.  At the moment you don't have any other proceedings

18  scheduled?

19         **MR. HEMANN:**  We do not.  I think the consensus is that

20  we have got to nail down a protective order.  We need to get

21  the discovery over to the defense that is available and work

22  through that.  I think the defense needs some time to talk to

23  their clients; decide whether they have motions to file; decide

24  if they don't and then come back and tell the Court whether we

25  are anticipating some motions or we want to set trial dates.

1        There is an issue that I have talked to Ms. Caldwell a

2   little bit about that we may be asking the Court for some help

3   on.  There were a number of devices seized by the Taiwan

4   government during some searches in February of 2017 in Taipei.

5   Those documents -- those devices -- the forensic images of

6   those devices and the devices are in the possession of the

7   court in Taiwan, and the court in Taiwan is very concerned

8   because of its, as we understand from the Taiwan prosecutors,

9   its perception that on those devices might exist both Micron

10  trade secrets and potentially UMC trade secrets.  So they are

11  concerned about giving them to us.

12        **THE COURT:**  Oh, I see.

13        **MR. HEMANN:**  This is a -- a new world I think for the

14  Judge in Taiwan.  And so we have been talking about with Ms.

15  Caldwell about how we might -- if it is in our joint interest

16  to obtain those devices.  If we continue to have some struggles

17  with the court in Taiwan, we may be asking, Your Honor, to

18  weigh in with a request from the U.S. judicial system for

19  those.  We have been trying to go through the mutual legal

20  assistance treaty approach, but that is obviously from the

21  executive branch; and we might be coming back to Your Honor

22  with that.  That is the only sort of tricky issue that we see

23  on the horizon, both in terms of discovery and in terms of

24  scheduling and delay and in terms of sort of a calamity of

25  issues between the two systems.  We don't have an ask right now

1  or a prediction as to how it is going to turn out.  We have

2  asked them plenty of times for the devices.

3      **THE COURT:**  You mentioned at the outset of that

4  description of the proceedings in Taiwan how Ms. Caldwell might

5  be able to help you in some way.  What were you thinking --

6      **MR. HEMANN:**  Not Ms. Caldwell in particular although

7  she is very helpful but UMC.  UMC is a participant -- is a

8  party in the proceedings in Taiwan.

9      **THE COURT:**  What are you anticipating that they would

10 identify what is theirs and extract it in some way?

11     **MR. HEMANN:**  If there is a joint request from UMC and

12 the United States and Micron for these documents -- for these

13 devices to be produced.

14     **THE COURT:**  Well, under perhaps, though, some

15 protection that they have collectively contained secrets that

16 shouldn't be disclosed necessarily to other parties.  I'm not

17 sure how it is going to work.

18     **MR. HEMANN:**  We are hoping.  Perhaps when we get the

19 protective order nailed down here, that would provide a little

20 bit of impetus.  Just so the Court knows, that is a tricky

21 issue.  If it doesn't get resolved soon -- certainly it is our

22 perception -- what we know about those devices is we know by

23 the file path listings that there are Micron documents in large

24 numbers on these devices that were seized from UMC.

25     **THE COURT:**  Okay.

1          **MR. HEMANN:**  What we also know is that Micron -- and

2     we believe we can prove -- that those documents that are

3     identified by the file path are documents that contain Micron

4     trade secrets.  We don't have -- because we don't have the

5     device -- we have got the file path name and Micron can say,

6     well, that is this document; but we don't have the document.

7     We don't have the thing.  We are trying to get the thing, and

8     it's --

9          **THE COURT:**  No, no, I got that part.

10         **MR. HEMANN:**  And it is going to take a little bit of

11    time.

12         **THE COURT:**  I was just wondering how UMC was going to

13    help -- and you sort of explained that -- and also that if the

14    protective order here about who gets what and how it is going

15    to be distributed, it may be that you can take that model and

16    apply it to what is going on in Taiwan.

17         **MR. HEMANN:**  Hopefully.

18         **THE COURT:**  Fine.  It will serve multiple purposes.

19    If it needs tweaking, maybe you can work that out.  I mean, I

20    started this case, frankly, with the civil case figuring out

21    how someone was going to get served over there.

22         In any event, you mentioned April.  Have you discussed

23    with opposing counsel a date?  Do you just want to collectively

24    off the record pick one here?

25         **MR. HEMANN:**  17th, Your Honor.  Does that work?

1  **THE COURT:**  Probably okay.  It's a Wednesday.

2  I guess, we would have to, though, if we are putting it over

3  that far, have some exclusion of time, wouldn't we?

4  **MR. HEMANN:**  We would request that the Court exclude

5  time for effective preparation of counsel, frankly, on both

6  sides.  I think there is probably sufficient factual predicate

7  with regard just to the devices issue that I mentioned to the

8  Court, I know that defense counsel intends to be visiting their

9  clients in Taiwan and China in the meantime, and that would

10 also I think provide a basis.

11  **THE COURT:**  All right.  Let me just confirm.

12 Ms. Caldwell, given the amount of discovery that is still to be

13 produced, the work that has to be done in more than one

14 country, are there good grounds then to exclude time from the

15 running of the speedy trial clock through April 17 for

16 effective preparation of counsel?

17  **MS. CALDWELL:**  We agree with that, Your Honor.  I do

18 want to make one point again.  I will save this for another

19 day.  We are not prepared to acknowledge that the materials

20 seized by the Taiwanese or interviews conducted by Taiwanese

21 authorities are going to be admissible in this court.

22  **THE COURT:**  That's fine.  I have no idea how they even

23 got them.  Okay.  Ms. Wong, are you in accord with the question

24 that I asked and the answer given about excluding time?

25  **MS. WONG:**  Yes, Your Honor.

1    **THE COURT:**  All right.  Thank you.  Then I will

2    exclude time from the running of the speedy trial clock through

3    April 17 of this year for effective preparation of counsel.

4    Those interests are clearly in the Defendants' best interests

5    and independent of whatever interest the Government has as

6    well, and those interests on behalf of the Defendant outweigh

7    any others they may have or the public in proceeding too

8    quickly to trial.  So I will see everyone back on April 17,

9    2:15.  This will be for, I think, just status.  We won't even

10   tack anything else onto that, just status.

11       **MS. CALDWELL:**  Thank you, Your Honor.

12       **THE COURT:**  All right.

13     (Proceedings concluded.)

14                            ---oOo---

<u>**CERTIFICATE OF REPORTER**</u>

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE:   Tuesday, February 12, 2019

_____

Marla F. Knox, RPR, CRR
U.S. Court Reporter