LATHAM & WATKINS LLP
Leslie R. Caldwell (CA Bar No. 302700)
*leslie.caldwell@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Telephone: (415) 391-0600
Facsimile: (415) 395-8095

*Attorneys for Defendant*
*United Microelectronics Corporation*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

UNITED STATES OF AMERICA,

Plaintiff,

v.

UNITED MICROELECTRONICS CORPORATION; FUJIAN JINHUA INTEGRATED CIRCUIT, CO., LTD.; CHEN ZHENGKEN, a.k.a. STEPHEN CHEN; HE JIANTING, a.k.a. J.T. HO; and WANG YUNGMING, a.k.a. KENNY WANG,

Defendants.

CASE NO. 3:18-CR-00465-MMC

**DEFENDANT UNITED MICROELECTRONICS CORPORATION'S RESPONSE TO UNITED STATES' MOTION FOR ENTRY OF PROTECTIVE ORDER**

Date: October 9, 2019
Time: 2:15 p.m.
Location: Courtroom 7, 19th Floor
Judge: Hon. Maxine M. Chesney

## I. INTRODUCTION

Information relating to the alleged trade secrets in the indictment—including at minimum, what they are, who may have seen them, where they were kept, and what value (if any) they had—is critical to United Microelectronics Corporation's (UMC) constitutional right to a defense. At the same time, UMC recognizes the importance of preserving the confidentiality of trade secrets, and to that end has negotiated extensively with the U.S. Department of Justice ("DOJ" or "the government") regarding the provisions of a proposed protective order to be submitted to the Court. UMC and DOJ at this point are in agreement as to all but one term of the government's proposed order: Paragraph 7(b), which provides that "Confidential Materials," including materials alleged to be trade secrets, "may not be transported or transmitted outside of the United States, with the exception that they may be transported to Taiwan, Japan, and Singapore." *See* U.S. Mot. for Entry of Prot. Order, Ex. A (Protective Order [Proposed]) (Sept. 11, 2019), ECF No. 62-2 ¶¶ 2, 7(b). The government's refusal to include Hong Kong—where one of UMC's lead outside counsel is based—in the list of permissible locations imposes significant burdens on UMC, and is neither necessary nor appropriate under the circumstances. *See* 18 U.S.C. § 1835(a) (requiring court action where "necessary and appropriate to preserve the confidentiality of trade secrets"); *United States v. Hsu*, 155 F.3d 189, 198 (3d Cir. 1998) ("[T]he confidentiality provision of the [Economic Espionage Act (EEA)] does not exist in a vacuum. As the EEA provides in § 1835, confidentiality must coexist with or be tempered by other principles of the law, including a defendant's constitutional rights and the Federal Rules of Criminal Procedure.").[1]

---

[1] Micron Technology, Inc. ("Micron") has joined in the government's motion for a protective order, endorsing the government's reasoning in support of the geographic restriction in Paragraph 7(b) and otherwise relying largely on the allegations in the indictment to argue in favor of excluding Hong Kong as a permitted location. *See* Nonparty Micron's Joinder to U.S. Mot. for Entry of Prot. Order ("Micron's Joinder") (Sept. 18, 2019), ECF No. 66 at 2–3 (listing allegations from the Indictment and noting, "the government's motion summarizes a host of compelling reasons to not allow any review of Micron's trade secret materials to occur in Hong Kong"). Micron's proposed protective order is identical to the government's with respect to the geographic restrictions in Paragraph 7(b). *See* Decl. of Neal J. Stephens in Support of Micron's Joinder (Sept. 18, 2019), ECF No. 67 at Ex. A ¶ 7(b). Unless otherwise indicated, UMC's arguments opposing the geographic limitations in Paragraph 7(b) apply equally to Micron's and the government's arguments. Also, as explained *infra* at 8–9, UMC disagrees with the additional, non-geographic restrictions that Micron seeks to impose.

First, the government's motion significantly overstates the risk that Micron's alleged trade secrets would be vulnerable to theft if transported to and kept at the Hong Kong office of UMC's outside counsel, Latham & Watkins LLP ("Latham"). Hong Kong is respected and relied upon worldwide as a key international financial, legal, and business center. This is in large part because Hong Kong has a well-established legal system and relies on the rule of law—including protections for privileged, confidential, and sensitive documents and data. Relying on the strength of these protections, many of the United States'—and the world's—largest and most sophisticated organizations have significant operations in Hong Kong. These include many organizations for whom information and data security are of paramount concern, such as many of the most sophisticated U.S. and global banks, law firms, accounting firms, and major corporations. If DOJ's dire claims regarding the alleged threat to information security were correct, it would follow that all of these entities immediately should curtail or shut down operations in Hong Kong because they are unable to protect the sensitive, confidential and/or privileged financial, legal, or business information, data, or trade secrets, in their possession and entrusted to them.

Micron's own business activities further undercut its and the government's claims that the DRAM Confidential Materials in this case would not be safe in Hong Kong. First, outside this courtroom, Micron highlights and boasts that it has an ongoing DRAM manufacturing operation and several DRAM (and other technology) design offices in Mainland China—a country that both DOJ and Micron allege would actively steal the trade secrets relating to some of the very same technology if it were in Hong Kong. Further, Micron's outside counsel in the civil case against UMC and on Micron's submission to this Court, Jones Day, has offices in both Mainland China and Hong Kong, and one of the lawyers who has worked on Micron's litigation against UMC is based in Hong Kong. *See Micron Tech., Inc. v. United Microelectronics Corp.*, Case No. 3:17-cv-06932-MMC; Decl. of Leslie R. Caldwell in Support of UMC's Response to U.S. Mot. for Entry of Prot. Order ("Caldwell Decl.") ¶ 2.

Last, the government greatly understates the burden that this unnecessary geographic limitation would impose on UMC and its counsel. One of the principal Latham attorneys

working on this matter resides in and is based in Hong Kong; to require that she travel internationally to Taiwan, Singapore, or Japan each time she needs to consult key evidence is onerous, and would significantly hamper UMC's right and ability to mount a defense.

UMC requests that this Court modify the government's proposed protective order to include Hong Kong in Paragraph 7(b) as a permitted location for transport and safekeeping of Confidential Materials.[2]

## II. DISCUSSION

### A. The Government Overstates the Information Security Risk in Hong Kong

The government's motion describes alleged information security risks in Mainland China and asserts: "Given the sophistication of the PRC and its intelligence gathering, there is no combination of protective measures that would ensure the security of confidential information in Hong Kong." U.S. Mot. for Entry of Prot. Order ("U.S. Mot.") (Sept. 11, 2019), ECF No. 62 at 8. UMC does not accept or agree with the government's overblown allegations or characterizations.

Indeed, one of DOJ's own exhibits greatly undercuts its allegations. The government's Exhibit K, a report authored by the U.S. Department of State, notes that, as of 2019:

> The Hong Kong economy was . . . ranked by the Heritage Foundation as the world's most free for a 25th consecutive year. The World Bank ranked Hong Kong in fourth place in its ease-of-doing business index for 2018. The Hong Kong legal system continued to be based on common-law traditions. Judges were independent and final judgments respected and enforceable. Property rights were well protected in law and in practice . . . . Hong Kong was not subject to mainland cybersecurity law . . . .

U.S. Mot. for Entry of Prot. Order, Ex. K (U.S. Department of State 2019 Hong Kong Policy Report) (Sept. 11, 2019), ECF No. 62-12 at 2.

Hong Kong is widely respected and relied upon as a key international financial and business center. As the government's Exhibit K notes, as of 2019, "more than 1300 U.S. firms operated in [Hong Kong], with about 300 U.S. firms basing their Asian regional operations

---

[2] UMC also requests that this Court reject Micron's proposed protective order to the extent it differs from the government's proposed protective order.

[there]") *Id.* at 3. And "[n]early every major U.S. financial firm maintained a presence in Hong Kong, with hundreds of billions of dollars in assets under management." Further, "Hong Kong was a major destination for U.S. legal and accounting services." *Id.*

Hong Kong also is a major partner to the United States in international trade. As Exhibit K notes: "In 2018, the United States' largest worldwide bilateral trade-in-goods surplus was with Hong Kong, at $31.1 billion. Exports totaled $37.4 billion and imports were $6.3 billion; Hong Kong ranked ninth–largest among U.S. goods exports destinations . . . . U.S. exports of goods and services to Hong Kong supported an estimated 188,000 jobs in 2015 (latest data available)." *Id*.

Many others have recognized Hong Kong's status as a globally respected place to do business. *See, e.g.*, Ex.[3] A, *Best Countries for Business – 2018 Ranking*, Forbes (Dec. 2018) (list showing Hong Kong in third place on Best Countries for Business list); Ex. B, Census and Statistics Department, *Hong Kong Special Administrative Region, Report on 2018 Annual Survey of Companies in Hong Kong with Parent Companies Located Outside Hong Kong* (Oct. 2018) (noting that the United States had 290 companies with regional headquarters in Hong Kong). It holds that status in large part because it has a well-established legal system and relies on the rule of law. *See* Ex. C, The Government of the Hong Kong Special Administrative Region of the People's Republic of China, *Why Hong Kong? Sound Legal Framework*.

In particular, Hong Kong has robust laws and regulations regarding privacy. Hong Kong's Basic Law[4] ("Basic Law") is Hong Kong's constitution and is recognized by Mainland China. It prohibits "arbitrary or unlawful" searches of Hong Kong residents' homes or premises, and safeguards the privacy of their communications from unwarranted inspection. *See* Ex. D, Basic Law ch. III art. 29 (regarding searches of homes or premises); *id.* at art. 30 (protecting

---

[3] Citations to "Ex." materials refer to exhibits to the Declaration of Leslie R. Caldwell filed herewith.

[4] Ex. D, The Basic Law of the Hong Kong Special Admin. Region of the People's Republic of China (Adopted at the Third Session of the Seventh Nat'l People's Congress on April 4, 1990 Promulgated by Order No. 26 of the President of the People's Republic of China on April 4, 1990, Effective as of July 1, 1997), L.H.K. BLIS Cap. 2101 (unofficially numbered chapter) ("Basic Law").

"[t]he freedom and privacy of communication of Hong Kong residents"). The Basic Law also requires that the provisions of the International Covenant on Civil and Political Rights, which protects the right of privacy, must remain in force and be implemented through the laws of the Hong Kong Special Administrative Region. *Id.* art. 39; Ex. E, United Nations Human Rights, Office of the High Comm'r, Int'l Covenant on Civil & Political Rights (Mar. 23, 1976), part III art. 17. Further, the Hong Kong Bill of Rights Ordinance provides that "[n]o one shall be subjected to arbitrary or unlawful interference with his privacy, family, home or correspondence . . . ." Ex. F, Hong Kong Bill of Rights Ordinance (1991), L.H.K. Cap. 383, part II § 8 art. 14. In addition, the Interception of Communications and Surveillance Ordinance ("ICSO") prohibits unauthorized interceptions of communications and covert surveillance. Ex. G, ICSO (2006), L.H.K. Cap.589, part II §§ 4, 5. Hong Kong also has a strong personal data privacy protection law. *See* Ex. H, Personal Data (Privacy) Ordinance (1996), L.H.K. Cap. 486.

Hong Kong law also recognizes legal privileges. It has both a legal advice privilege and a litigation privilege, as well as a common interest privilege. Ex. I, DLA Piper, Legal Privilege Global Guide at 57–60 (Mar. 15, 2019).

Relying on the strength of these and other protections, numerous U.S. entities have extensive operations in Hong Kong. These include many of the largest and most prominent U.S. financial institutions—JPMorgan Chase, Citigroup, Wells Fargo, Goldman Sachs, Morgan Stanley, and Bank of America Merrill Lynch, to name only a few—all of which routinely handle sensitive financial and personal information on behalf of their customers and clients.[5] Major U.S. technology, biotechnology, engineering, and pharmaceutical companies also operate in Hong Kong, including, for example, Qualcomm, Emerson Electric Co., Honeywell Int'l Inc., Nvidia, Pfizer, Amgen, Allergan, Eli Lilly, and Dow Chemical.[6] These entities are heavily

---

[5] Ex. J, JPMorgan Chase BK NA/JPMorgan Chase & Co., *About Us*; Citigroup Inc., *Countries & Jurisdictions: Hong Kong SAR*; Wells Fargo & Co., *Asia Pac. Region & Int'l Locations*; Goldman Sachs Grp., Inc., *Greater China Offices*; Morgan Stanley, *Office Locations in Hong Kong*; Bank of America Merill Lynch, *Locations Info.*; State Street Corp., *State Street in Hong Kong & Contact Us*.

[6] Ex. K, Emerson Elec. Co., *About Us: Emerson in China*; Honeywell Int'l Inc., *Global Locations: Asia Pac.*; Qualcomm, *12 Offices in Peoples Republic of China*; Nvidia, *Our*

dependent on and must safeguard valuable intellectual property, including trade secrets and other sensitive business information. As the government's Exhibit K notes, Hong Kong also is a major consumer of U.S. accounting services, with Deloitte, PricewaterhouseCoopers, Ernst & Young, and KPMG each maintaining a major presence there while handling sensitive client matters.[7] And many of the most prominent U.S. law firms—including, but not limited to, Jones Day (counsel to Micron); Latham; Davis Polk & Wardwell; Gibson, Dunn & Crutcher; Kirkland & Ellis; Latham & Watkins; Morrison & Foerster; O'Melveny & Myers; Paul, Weiss, Rifkind, Wharton & Garrison; Sidley Austin; Simpson Thacher & Bartlett; Skadden, Arps, Slate, Meagher & Flom; and Sullivan & Cromwell—have offices in Hong Kong, from which they regularly handle clients' confidential and/or privileged information.[8] As law firms, they have not only business interests in maintaining the confidentiality of their clients' information, but professional and ethical obligations requiring that they do so. *See* Ex. N, Model Rules of Prof'l Conduct R. 1.6 (discussing lawyers' confidentiality obligations to clients, including that "a lawyer shall make reasonable efforts to prevent the inadvertent or unauthorized disclosure of, or unauthorized access to, information relating to the representation of a client.").

If the government's and Micron's hyperbolic characterization of the information security threat were accurate, none of these law firms, financial institutions, accounting firms, or technology-related companies, could or would operate in Hong Kong. *See* U.S. Mot., ECF No. 62 at 5–8. Instead, with no reasonable means to protect the sensitive, confidential, and/or privileged financial, legal or business information, data, trade secrets, or other intellectual

---

*Locations: Asia Reg'l Offices*; Pfizer, *Contact Us*; Amgen, *Contact Us*; Allergan, *In Hong Kong*; Eli Lilly & Co., *Contact Us*; Dow Chemical, *Greater China Office*.

[7] Ex. L, PricewaterhouseCoopers, *PwC office locations in Hong Kong*; KPMG, *Hong Kong SAR*; Deloitte, *China Office Directory*; Ernst & Young, *Offices in EY Greater China Region*.

[8] Ex. M, Davis Polk & Wardwell LLP, *Hong Kong*; Gibson, Dunn & Crutcher LLP, *Hong Kong*; Kirkland & Ellis LLP, *Hong Kong*; Latham & Watkins LLP, *Hong Kong*; Morrison & Foerster LLP, *Hong Kong*; O'Melveny & Myers LLP, *Our Locations*; Paul, Weiss, Rifkind, Wharton & Garrison LLP, *Locations: Hong Kong*; Sidley Austin LLP, *Hong Kong*; Simpson Thacher & Bartlett LLP, *Hong Kong Office*; Skadden, Arps, Slate, Meagher & Flom LLP, *Locations*; Sullivan & Cromwell LLP, *Hong Kong*; *see also* Ex. R, Jones Day, *Locations: Hong Kong, Shanghai*, *Beijing* ("Jones Day Asia-Pacific Offices").

property in their possession, they would be forced to curtail or close their operations immediately.

**B. Micron's Own Conduct Belies DOJ and Micron's Assertions Regarding the Alleged Information Security Threat in Hong Kong**

Most telling is Micron's own business conduct. Micron has a significant and established presence in Mainland China. Ex. O, Micron Locations: China. The company has operated on the Chinese mainland for more than ten years. Ex. P, Jing Shuiya, *Driving Innovation to Meet Demand*, China Daily (Apr. 24, 2019, 16:31). According to Micron's website, it has a DRAM manufacturing facility in the Xi'an High-Tech Zone, an integrated circuit design center in Shanghai, design offices in Beijing and Shanghai, sales and marketing offices in Shanghai, Beijing, and Shenzhen, and a logistics center in Xiamen. *Id.*; Ex. O, Micron Locations: China; Ex. Q, Micron, *Micron Tech., Inc. In China*; Ex. P, Driving Innovation. Indeed, in an interview earlier this year, Micron's Chief Executive Officer, Sanjay Mehrotra, boasted that Micron is "proud of the manufacturing plant in Xi'an" in which it has "invested heavily. . . to expand [its] capabilities to manufacture DRAM. . . modules as well as to enhance assembly and test capabilities." Ex. P, Driving Innovation. The Micron CEO also highlighted that Micron has "invested heavily in R&D in the Chinese market," and has "a large R&D center in Shanghai where excellent engineers are working on all aspects of Micron's product portfolio from DRAM to flash solutions." *Id.* Given that Micron appears to be comfortable researching, developing, and manufacturing DRAM technology in Mainland China, it is clearly unreasonable for DOJ and Micron to seek to prohibit UMC's outside counsel in Hong Kong from reviewing evidence related to some of the same DRAM technology. U.S. Mot., ECF No. 62 at 4. Indeed, Micron's stated "prefer[ence] that any review by defense counsel take place in the United States" simply smacks of hypocrisy. Micron's Joinder, ECF No. 66 at 2.

Continuing with double standards, the proposed protective order would impose geographic restrictions on UMC's counsel that are stricter than those Micron appears to require of its own counsel. Jones Day, Micron's counsel, has offices in Shanghai, Beijing, and Hong Kong. *See* Ex. R, *Jones Day Asia-Pacific Offices*. Jones Day's website describes its Hong Kong

practice a "dynamic cross-border practice[]" that includes handling intellectual property matters. *See id*. Jones Day could not fulfill its confidentiality and privilege obligations to its clients if its claims, and those of DOJ, regarding the alleged information security threats in Hong Kong were accurate.

Further, at least one of Jones Day's Hong Kong-based lawyers has been involved in the Micron civil litigation against UMC and Jinhua. Caldwell Decl. ¶ 2. If Micron can entrust Jones Day with its sensitive, confidential, and/or privileged DRAM and other information in Hong Kong, there is no principled basis for it to object to allowing lawyers in Latham's Hong Kong office to review the DRAM evidence at issue. Moreover, Latham takes significant precautions to ensure that its clients' information and data is secure in all of the firm's offices around the world, including Hong Kong.

### C. The Burdens Imposed on UMC by the Government's Proposed Protective Order Are Significant And Unwarranted

The proposed protective order would impose significant burdens on UMC and its outside counsel. As noted, one of the two lead partners representing UMC in this case resides in Hong Kong and works out of Latham's Hong Kong office. Latham does not have an office in Taiwan, and requiring her to travel to Singapore or Japan each time she needs to review critical evidence in this case would impose more than a "slight inconvenience." *See* U.S. Mot., ECF No. 62 at 8. The flight time alone from Hong Kong to Singapore or Tokyo is roughly four hours, approximately the same as the flight time from San Francisco to Chicago. Surely the government would not view frequent flights from the Northern District to Chicago simply to view key evidence as a "slight inconvenience" in the preparation of its case. Requiring the same from defense counsel, with no justification, impinges on UMC's right to an effective defense.

### D. The Additional Restrictions Micron Seeks to Impose Are Not Necessary or Appropriate

Micron seeks to impose additional limitations beyond those already agreed to by UMC and the government. *See* Micron's Joinder, ECF No. 66 at 3–4. Namely, it seeks to prohibit review of Confidential Materials by defense counsel other than U.S.-barred attorneys of record in

this case (and their staff), and to prohibit defense counsel's experts from making copies of the same. *Id.* These restrictions are unwarranted and overly burdensome, and have not been sought by the government. Micron's proposed prohibition on defense counsel's experts making copies of Confidential Materials unnecessarily limits the access of those most qualified to interpret them based on their technological expertise. Indeed, for UMC's expert(s) to physically visit Latham's U.S. offices each time he or she needs to review materials (materials the expert is expected to analyze in depth) would be highly inconvenient. It would only add further challenges to UMC's effort to mount its defense. As to experts who may be located in the United States, such a requirement is unnecessary and inappropriate, as the government apparently recognizes.

## III. CONCLUSION

For the reasons above, the terms in Paragraph 7(b) of the government's protective order are unnecessary, unduly burdensome, and inappropriate. UMC requests that this Court modify the government's proposed protective order to include Hong Kong in the list of locations in Paragraph 7(b) to which the parties can transport Confidential Material. UMC asks that the Court reject Micron's other proposed modifications to the protective order.

Dated: September 25, 2019

Respectfully submitted,

LATHAM & WATKINS LLP
Leslie R. Caldwell

By: /s/ Leslie R. Caldwell

*Attorneys for Defendant*
*United Microelectronics Corporation*