# EXHIBIT I



FULL HANDBOOK

# Legal privilege global guide

DOWNLOADED: 24 SEP 2019

# Table of contents

About . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Australia . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Austria . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Bahrain . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Belgium . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Brazil . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Canada . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

China . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Czech Republic . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Denmark . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

England and Wales . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

Egypt . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

European Union . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

Finland . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

France . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

Germany . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

Greece . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

Hong Kong . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57

Hungary . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 61

Israel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 64

Italy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 66

Japan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 69

Kuwait . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 73

Lebanon . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 75

Luxembourg . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 77

Morocco . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 80

Netherlands . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 83

New Zealand . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 87

Norway . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 91

Oman . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 94

Poland . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 96

Portugal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 98

Qatar . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 102

Romania . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 104

Russia . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 108

Scotland . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 111

Singapore  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 116

Slovak Republic  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 120

South Africa  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 123

South Korea  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 125

Spain . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 129

Sweden . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 133

Thailand . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 135

Turkey  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 138

Ukraine  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 140

United Arab Emirates . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 142

United States  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 144

# About

Welcome to DLA Piper's Legal Professional Privilege Global Guide, the ultimate guide to legal professional privilege around the world.

Legal professional privilege protects the confidentiality of communications between lawyers and their clients and it has become an exception to the general principle of public policy for full disclosure. It is, in substance, a fundamental human right.

Although the concept of legal professional privilege is universal, its scope and limitation differ between jurisdictions. We are aware that many of our clients operate on a global platform, so it is of critical importance that they are aware of these differences in order to make informed decisions about the countries in which they are active and about how their business interests may be protected.

This global guide is a dynamic resource containing up-to-date details of the varying concepts and scope of legal professional privilege across dozens of jurisdictions globally. New jurisdictions are regularly being added to the guide, so if you cannot find the jurisdiction you are seeking, please let us know.

## How to use this guide

Let us provide a few examples:

**1. You are a Compliance Director for a listed company located in Country A and you have found that problematic conduct has occurred within your subsidiary in Country B.**

**Scenario A:** You are about to send an e-mail to your in-house colleague in Country B with a legal assessment of the conduct in question. Before you push the button, you think about the scope of legal privilege. You will ask yourself: "Does Country B protect in-house lawyer communications? Or can my e-mail be seized by inspectors or discovered in court?" Our guide provides a first answer.

**Scenario B:** You plan to forward the legal advice received from DLA Piper to your colleague in Country B. Then you ask yourself the following question: "What is the scope of legal privilege in Country B?" Indeed, virtually all jurisdictions recognize the concept of privilege, but there is a big difference in terms of when privilege applies (e.g. only after the start of an investigation) and how broad is the scope. Again, our guide provides a first answer.

**2. You are a freshly appointed Compliance Director for your internationally active company, and no clouds darken your horizon - yet. Before launching a new communications policy, you want to find out about the underlying privilege issues.** Our guide provides initial guidance for your strategic legal communications and planning, and will help shape your strategy for sourcing and storing legal advice.

But remember, our Legal Professional Privilege Global Guide **does not constitute legal advice**. While this guide will be essential reading for those who need to find out more about the scope of legal professional privilege around the world, it is imperative that you contact the contributors to the individual chapters for more comprehensive guidance and legal advice in your particular case.

## About DLA Piper

DLA Piper is a global law firm with lawyers located in more than 40 countries throughout the Americas, Europe, the Middle East, Africa and Asia Pacific, positioning us to help clients with their legal needs around the world.

For further information visit www.dlapiper.com.



### Dr. Bertold Bar-Bouyssiere
Partner
bbb@dlapiper.com
T: +32 2 500 1535



### Michael Marelus
Associate
michael.marelus@dlapiper.com
T: +1 212.335.4542



# Hong Kong

*Last modified 15 March 2019*

## Concept of legal professional privilege

In Hong Kong, legal professional privilege is a substantive right available under statute (Basic Law) and common law. Hong Kong's legal system is based on English common law. The justification for legal professional privilege is the public policy interest in the need to facilitate the administration of justice by encouraging and enabling a client to consult his lawyer fully and frankly, and in complete confidence, safe in the knowledge that what he tells his lawyer will never be revealed to a third party without his consent.

Two main classes of documents and communications are protected on this ground, namely:

- Those that are privileged, whether or not litigation was contemplated or pending (legal advice privilege), and
- Those that are only privileged if litigation was contemplated or pending when they were made or came into existence (litigation privilege)

There is also common interest privilege. This privilege is in aid of anticipated litigation in which several persons have a common interest although all such persons have not been made parties to the action. They may share privileged information without waiving their right to assert lawyer-client privilege.

Common to these types of privileges is that these privileges cannot be claimed unless the relevant communication or document is confidential. Therefore, documents which are in the public domain are not privileged. Moreover, privilege is lost once the relevant communication ceases to be confidential. For example, if a client forwards an email from his lawyer to an accountant, the email loses confidentiality and will no longer be considered privileged.

In Hong Kong, the privileges exist in the context of civil litigation, criminal investigations and investigations by regulatory authorities.

The parties to a civil litigation or the subject of any criminal investigations or investigations by any regulatory authorities are entitled not to disclose any communications and documents which are covered by privilege (and such privilege has not been waived).

Privilege does not extend to cases where the document came into existence as a step in a criminal or illegal proceeding. However, to bring a case within this exception there must be a definite charge of fraud or illegality or a *prima facie* case must be made.

## Scope of legal professional privilege

### What is protected by legal advice privilege?

Letters and other communications passing between a party and their lawyer are privileged from production if they are, and sworn to be:

- Confidential
- Written to or by the lawyer in his professional capacity, and
- For the purpose of getting legal advice or assistance for the client

Legal advice privilege applies to communications between a lawyer and his client. It does not provide protection for communications with

an independent third party. However, legal advice privilege does extend to information that the lawyer receives in a professional capacity from a third party and which the lawyer conveys to his client.

In addition to confidentiality, a document or communication must also be made for the purpose of getting legal advice before legal advice privilege can apply.

The purpose of getting legal advice has been construed broadly. Where information is passed between a lawyer and his client as part of a process aimed at keeping both informed, so that advice may be sought and given, legal professional privilege will attach. Moreover, legal advice is not confined to telling the client the law; it may include advice about what should prudently and sensibly be done in the relevant legal context.

Where the client appoints employees to communicate with his lawyer, those employees are the client for the purpose of legal advice privilege. Information provided to the lawyer by any other employee of the client for the dominant purpose of obtaining legal advice will also attract legal advice privilege.

Where legal advice privilege applies to lawyer-client communications, internally circulated documents or parts of documents revealing such communications are also privileged.

## What is protected by litigation privilege?

Litigation privilege is wider than legal advice privilege. It not only covers communications between a lawyer and his client, but also covers the communications between a lawyer and his non-professional agent, a lawyer and a third party or the client and his agent or third party, provided that:

- They came into existence after litigation is commenced or contemplated, and
- They are for the dominant purpose of giving or obtaining legal advice, obtaining or collecting evidence or obtaining information which may lead to the obtaining of such evidence

These two requirements must be satisfied before litigation privilege can be applied.

Litigation refers to proceedings in court and tribunals, arbitration, disciplinary proceedings and any other adversarial proceedings. It must be 'adversarial' as opposed to investigative or inquisitorial. Hence, where a proceeding is merely fact-gathering or where a tribunal is an administrative one, it is unlikely that litigation privilege can be claimed.

The application of the 'dominant purpose' test can be problematic:

- If the relevant communication came into existence for more than one purpose, and
- In deciding at what stage it can fairly be said any such purpose is obtaining advice in anticipated litigation

In analysing the dominant purpose, it is important to turn to the facts of the particular case. Hong Kong courts have in the past examined 'purpose' from an objective standpoint, examining all the relevant evidence, including reference to the intention of the actual author or creator of the relevant document (or the person under whose direction it was made) at the time when the document is brought into existence.

If a document or communication has not come into existence for the purposes of the litigation, but is already in existence before the litigation is contemplated or commenced, litigation privilege does not apply even if it was obtained by the client or his lawyer for the purposes of the litigation. Hence, a pre-existing document not entitled to legal advice privilege does not become privileged merely because it is handed to a lawyer for the purposes of litigation.

## Are communications with in-house counsel protected by legal professional privilege?

Yes. The definition of 'professional lawyer' for the purpose of legal advice and litigation privilege includes all members of the legal profession:

- Solicitors
- Barristers
- In-house lawyers, and
- Foreign lawyers

Communications between the in-house lawyer and the management and employees of the same company are therefore prima facie

entitled to enjoy legal professional privilege and / or litigation privilege in a similar way to those of private lawyers.

Legal advice privilege however cannot be sufficiently established based on the mere fact that a party to a communication is a lawyer. The lawyer must be acting in a professional capacity as a lawyer. Therefore, if an in-house lawyer is consulted about anything other than the law, or where legal advice had been given on a social rather than professional basis, legal advice privilege will not be attached to such advice.

Moreover, an in-house lawyer should take particular caution if, apart from being a legal adviser, he holds other positions within the company (such as an executive or operational role). If he is consulted in his capacity as a business adviser about commercial issues, legal advice privilege will not apply.

## Does legal professional privilege apply to the correspondence of non-national qualified lawyers?

Yes. Legal advice privilege exists between a foreign lawyer and his client to the same extent as the legal advice privilege exists between a Hong Kong lawyer and his client. The approach to determining the question of legal advice privilege is the same as adopted for communications with Hong Kong lawyers.

## How is legal professional privilege waived?

Privilege is in all cases the privilege of the client and not of the lawyer, and it may only be waived expressly or impliedly by the client. Privilege is considered waived if the relevant document or communication is included in the depositions filed in the course of a court action or in the transcripts of other notes of court proceedings.

Hong Kong law also incorporates the concept of partial waiver of privilege. If a privileged document is disclosed for a limited purpose only (eg for investigation by a regulator such as the Securities and Futures Commission), it does not follow that privilege is waived generally. The privilege is waived for that particular purpose only.

## Legal professional privilege in the context of merger control

Legal professional privilege has not been clearly defined within the context of merger control in Hong Kong. Currently, only the telecommunications sector is subject to merger control in Hong Kong. As of 14 December 2015, the applicable merger control rules are contained in Schedule 7 of the Competition Ordinance (Chapter 619, Laws of Hong Kong). There are no Hong Kong cases on merger control so far. Nevertheless, legal professional privilege has been recognised as a substantive right and cannot be disregarded within the context of merger control proceedings.

# Recent cases and/or other legal developments

On 29 June 2015, the Hong Kong Court of Appeal in *Citic Pacific Limited v Secretary for Justice & Commissioner of Police* [2015] 4 HKLRD 20 (the 'Citic Decision'), rejected the restrictive definition of 'client' in the context of legal advice privilege taken by the English Court of Appeal in *Three Rivers District Council v Governor and Company of the Bank of England* (No. 5) [2003] QB 1556. In Three Rivers (No. 5), the English Court of Appeal ruled that the 'client' means the person or persons authorized by a corporation to seek and obtain advice from its legal advisers and therefore confidential internal communications within a corporation created with a view to putting the information before the legal advisers do not attract legal advice privilege.

The Hong Kong Court of Appeal did not follow the decision of the English Court of Appeal in *Three Rivers* (No. 5) and decided that a more liberal approach should be adopted. In essence, the Hong Kong Court of Appeal ruled that the client is simply the corporation and its employees should be regarded as being authorised to act for it in the process of obtaining legal advice. Therefore, legal advice privilege should not only be limited to communications passing between the client and its legal advisers, but should also cover a wider range of communications, including documents generated during the information gathering process.

The Hong Kong Court of Appeal found that a narrow definition of 'client' would basically frustrate the rationale behind legal professional privilege, which is to give effective and meaningful protection for confidentiality whilst clients obtain legal advice in any context. The Hong Kong Court of Appeal further held that the 'dominant purpose' test is more appropriate in setting proper limits for legal advice privilege, is consistent with authorities and rationale of legal professional privilege, and should therefore be the test to be adopted in Hong Kong.

On 5 September 2018, the UK Court of Appeal in *Director of the Serious Fraud Office v Eurasian Natural Resources Corp Ltd* [2018] EWCA Civ 2006 made specific reference to the Citic Decision to note that *Three Rivers* (No 5) is an outdated decision that fails to reflect the nature of

modern day multinational corporations.

## Key contacts



**Satpal Gobindpuri**

Partner

satpal.gobindpuri@dlapiper.com

T: +852 2103 0826



**Leo Cheng**

Of Counsel

leo.cheng@dlapiper.com

T: +852 2103 0681