Pages 1 - 48

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE MAXINE M. CHESNEY, JUDGE

UNITED STATES OF AMERICA,       )
                                )
            Plaintiff,          )
                                )
  VS.                           )      **No. CR 18-465 MMC**
                                )
UNITED MICROELECTRONICS         )
CORPORATION, INC.               )
                                )
            Defendant.          )
_____)      San Francisco, California
                                       Wednesday, October 28, 2020


**TRANSCRIPT OF PROCEEDINGS VIA ZOOM WEBINAR**

**APPEARANCES:** (via Zoom)

For Plaintiff:
                        DAVID L. ANDERSON
                        UNITED STATES ATTORNEY
                        450 Golden Gate Avenue, 11th Floor
                        San Francisco, California  94102
                  BY:   **LAURA VARTAIN HORN**
                        **ASSISTANT UNITED STATES ATTORNEY**

                        U.S. DEPARTMENT OF JUSTICE
                        National Security Division
                        950 Pennsylvania Ave, N.W.
                        Washington, DC 20530
                  BY:   **NICHOLAS O. HUNTER**
                        **TRIAL ATTORNEY**


              (Appearances continued on next page)


Reported By:   Katherine Powell Sullivan, CSR #5812, CRR, RMR
               Official Reporter - U.S. District Court

**APPEARANCES:** (via Zoom - continued)

For Defendant UMC:

LATHAM & WATKINS LLP
505 Montgomery Street, Suite 2000
San Francisco, California 94111
BY: **LESLIE CALDWELL, ESQ.**
**TYLER PAUL YOUNG, ESQ.**

**Also Present:**

**Lucas S. Chang, General Counsel**
**United Microelectronics Corporation**

**Jessica Goldsberry**
**U.S. Probation**

For Micron Technology, Inc:

JONES DAY
1755 Embarcadero Road
Palo Alto, California 94303
BY: **NEAL J. STEPHENS, ESQ.**

```
 1   Wednesday - October 28, 2020                      2:14 p.m.
 2                         P R O C E E D I N G S
 3                             ---000---
 4        THE COURT:  All right.  Good afternoon.  I think we
 5   have everyone.
 6        Could I ask the clerk to call the case, please.
 7        THE CLERK:  Yes, Your Honor.
 8        Please come to order.  This court is now in session.  The
 9   Honorable Judge Chesney presiding.
10        Calling Criminal action 18-cr-465, USA versus United
11   Microelectronics Corporation.
12        Counsel, beginning with Government counsel, state your
13   appearances, please.
14        MS. VARTAIN:  Good afternoon, Your Honor.  Laura
15   Vartain and Nic Hunter for the United States.
16        THE COURT:  Okay.  You're a little bit fuzzy.  Not
17   legally or mentally, but as far as the audio goes.  I'm not
18   quite sure why.  Hopefully, that won't be a problem.  Thank
19   you.
20        And then who's appearing, then, this afternoon on behalf
21   of the defendant?
22        MS. CALDWELL:  Your Honor, good afternoon.  This is
23   Leslie Caldwell on behalf of United Microelectronics
24   Corporation.
25        THE COURT:  All right.  You're coming through fine.
```

 1   Thank you, Ms. Caldwell.

 2            **MS. CALDWELL:**  Thank you.

 3            **THE COURT:**  Do we have someone here, then, from the

 4   U.S. Probation Office?

 5            **MS. GOLDSBERRY:**  Good afternoon, Your Honor.  Jessica

 6   Goldsberry from the Probation Office.

 7            **THE COURT:**  Thank you.

 8       Okay.  Is there anyone else who wants to make an

 9   appearance?  Apparently not.

10       I might suggest, we have a couple of lawyers who are

11   appearing, an additional lawyer on behalf of the defendant,

12   apparently, and also someone from Micron.

13       Does Micron's counsel want to state their appearance that

14   they're here in connection with this proceeding?

15            **MR. STEPHENS:**  Yes, Your Honor.  Good afternoon.  Neal

16   Stephens, from Jones Day, on behalf of Micron.

17            **THE COURT:**  All right.  Thank you.

18            **MS. CALDWELL:**  And, Your Honor, this is Leslie

19   Caldwell.  I'm sorry, I neglected to introduce two people, one

20   of whom is the most important person here other than Your

21   Honor.

22       The first is Lucas Chang, who is the general counsel of

23   United Microelectronics Corporation.  And he is in Taiwan.  And

24   we've previously submitted a power of attorney signed by the

25   chairman of the company authorizing him to enter this plea.

1        Also present is my colleague Tyler Young.

2        **THE COURT:**  All right.  Very good.

3        All right.  If I could just indicate that we are appearing

4   in an official proceeding on this criminal case.  The

5   appearances are electronic.  We are engaged in this endeavor

6   during the course of the coronavirus pandemic.  As a result,

7   there are general orders that have been issued by the Northern

8   District of California placing certain restrictions on

9   proceedings being conducted in person in light of health

10  concerns for both the general public and also the participants

11  in any given proceeding.

12        There is a possibility that this case could have proceeded

13  in part in person, but it is my understanding that,

14  particularly given Mr. Chang's locale and all of the other

15  concerns about health in general, that the -- both parties,

16  both the Government and the defendant, preferred that we

17  proceed by way of a video hearing using the Zoom function.

18        Is that correct as far as the Government's position,

19  Ms. Vartain?

20        **MS. VARTAIN:**  It is.  Thank you.

21        **THE COURT:**  Okay.  Is there any way to turn your

22  volume up?

23        **MS. VARTAIN:**  I will try.

24        **THE COURT:**  Okay.  And on behalf of the defendant,

25  Ms. Caldwell?

1          **MS. CALDWELL:**  Yes, that's our understanding, Your

2     Honor.  Thank you.

3          **THE COURT:**  All right.  In other words, you and your

4     client agree that we can proceed in this fashion as opposed to

5     an in-person hearing.

6          **MS. CALDWELL:**  Yes, Your Honor.

7          **THE COURT:**  All right.  Thank you.

8     And we do -- for the record, the matter is being reported

9     by an official court reporter.

10     And do you just want to state your name for the record.

11          **REPORTER:**  Good afternoon, Your Honor.  This is

12     Katherine Sullivan, the court reporter.

13          **THE COURT:**  Thank you.

14     All right.  And then, Mr. Ybarra, who is filling in for

15     our regular courtroom deputy clerk, will be taking minutes of

16     the proceedings.

17     This is an official proceeding even though we're all

18     looking at each other on the screen at this point.  I am not

19     sitting in the courtroom.  This is a virtual background.  I've

20     mentioned before that on occasion virtual backgrounds tend to

21     blur when people move around.  If that becomes distracting, I

22     will repair to my chambers where I actually am sitting at this

23     time.

24     Okay.  I want to indicate what I understand we're going to

25     try to accomplish this afternoon.  This is a circumstance in

1   which a corporate defendant, through their designee, Mr. Chang,

2   is proposing to enter a plea of guilty to a Superseding

3   Information.

4        I will need to discuss with Mr. Chang, essentially, his

5   waiver of an indictment, if that is what he is prepared to do,

6   and to arraign him on the Superseding Information.

7        In addition, the parties have anticipated that if

8   Mr. Chang does go forward under a plea agreement and enters a

9   plea of guilty on behalf of the defendant, United

10  Microelectronics Corporation -- and I'll shorten that, as most

11  of us have been doing, to UMC -- then the parties also wish to

12  waive the preparation of a formal full Probation Report and,

13  instead, have the Court go forward with sentencing this

14  afternoon in accordance with a plea agreement that is entered

15  pursuant to a Rule 11(c)(1)(C) of the Federal Rules of Criminal

16  Procedure.

17       So is that everyone's understanding as to what we are

18  going to do this afternoon in the course of this hearing?

19            **MS. VARTAIN:**  For the Government, it is.  Thank you.

20            **THE COURT:**  Thank you.  And you're coming in better

21  now, Ms. Vartain.  Thank you.

22            **MS. CALDWELL:**  For UMC, that is also correct, Your

23  Honor.

24            **THE COURT:**  Thank you, Ms. Caldwell.

25       Okay.  So let me tell you the documents that I do have and

1   just make sure that I'm not missing any.  I have the Plea

2   Agreement.  And at this time I have a copy of a signed version

3   of the Plea Agreement.

4        Was this signed with Mr. Chang in -- he's in Taiwan -- no.

5   Where's Mr. Chang located now?

6            **MS. CALDWELL:**  He's in Taiwan, Your Honor.

7            **THE COURT:**  Taiwan.  That's what I thought.

8            **MS. CALDWELL:**  And he signed the document while in

9   Taiwan and sent it to me electronically.

10           **THE COURT:**  Okay.  So a copy of this will ultimately

11   need to be E-filed.  And I will ask the clerk how he wishes to

12   have that done.

13       Just so that we're clear, there were several different

14   versions of the Plea Agreement that I received.  I received

15   version 1, that was substituted with version 2 to correct

16   typographical errors.

17       Then I received version 3, which I believe is the most

18   recent version, that included some substantive changes and

19   then, very most recently, a signed copy of that Agreement.

20       What I want to find out -- and I'll just ask

21   Ms. Vartain -- were any changes made between the time that I

22   received a number 3, essentially unsigned, and then received

23   the signed version that I have in my hand at this point?

24           **MS. VARTAIN:**  No, Your Honor.  And the change -- the

25   changes between 1 and 2 was to correct the -- the special

```
1    assessment from $100 to the $400 for the corporate special
2    assessment pursuant to Chapter 8.
3            THE COURT:  Yes.  Well, you may be calling 2 what I'm
4    calling 3.  I'm not sure.
5            MS. VARTAIN:  Okay.
6            THE COURT:  Okay.
7            MS. VARTAIN:  Okay.  But no -- no changes from -- from
8    3, then, to the signed Agreement that the Court now has.
9            THE COURT:  All right.  Thank you.  Okay.
10       So I will probably work off, then, the unsigned copy,
11   ultimately, because any questions or notes that I made on that
12   I didn't want to start making them again and on something that
13   may get scanned.
14       All right.  Now, I also received a document, as
15   Ms. Caldwell pointed out, Power of Attorney, and also a Waiver
16   of Indictment.
17       I have the Sentencing Memoranda from the two parties.
18   Those were filed on behalf of both parties on October 21,
19   separate statements but both filed on the same date.  And then
20   I have the Superseding Information that was filed October 26th.
21       And then, lastly, what was forwarded to me was an email
22   that went to the, quote, victim witness coordinator at the
23   U.S. Attorney's Office.  It is a Victim Impact Statement on
24   behalf of Micron.
25       And I just wanted to mention that in that statement Micron
```

1   states they don't oppose the Plea Agreement.  They don't feel

2   that this amount of the fine that is contemplated by the

3   Agreement makes Micron whole, but, nonetheless, they're not

4   opposing the Plea Agreement.

5       They do point out that they would like the civil case to

6   move ahead, once a stay could be lifted, if the criminal case

7   against UMC is resolved today.  And I would suggest in that

8   regard that counsel for Micron then file a motion to lift the

9   stay or a stipulation to lift the stay, if you can obtain that

10  agreement, either way, and a proposed date for a case

11  management conference in that document so that we can move

12  ahead in some orderly fashion if that's appropriate.  And it

13  most likely is.

14      **MR. STEPHENS:**  Your Honor, we shall do so.

15      **THE COURT:**  All right.  So let's turn to -- oh, you

16  were just saying you'll do it?

17      **MR. STEPHENS:**  Yes, Your Honor.  We intend to do so.

18  We did meet and confer.  UMC has not agreed to our request to

19  lift the civil stay, so we will file our motion.

20      **THE COURT:**  Oh, okay.  That's fine.  At that time, if

21  you file the request to lift the stay, then UMC will have an

22  opportunity to present their objections to doing so, why they

23  feel it's not appropriate.  You can file a reply, and we'll see

24  where we are at that point.

25      Okay.  So the original Indictment had charges beyond what

1  are contained in the Superseding Information.   And this

2  document is being filed in order to effectuate a Plea

3  Agreement.

4       Mr. Chang, there are a number of things that I need to go

5  over with you, sir.   The arraignment, the waiver of the

6  Indictment, your intent to enter a plea on behalf of the

7  company; all of these can be merged, to a certain extent, into

8  one proceeding.

9       I was making an effort to avoid you having to make a

10  separate appearance in front of a magistrate judge.   Although I

11  don't do these types of arraignments ordinarily, hopefully I

12  can get whatever information you need in front of you so that

13  you can make a reasoned decision to go forward on the

14  Superseding Information or not.

15       So let's take that one step at a time because I do have to

16  go over all of this, including the Plea Agreement, where it may

17  seem that you've already told me in writing, the law requires

18  me to do this orally with you, here in court, which we are

19  essentially in.

20       And your answers should be under oath, so I'm going to ask

21  you to raise your right hand and I'm going to ask Mr. Ybarra,

22  our clerk, to administer an oath at this time.

23            **THE CLERK:**  Yes, Your Honor.

24            **THE COURT:**  Thank you.

25       (Oath administered to Mr. Chang.)

1          **THE CLERK:**  Thank you, sir.

2          **THE COURT:**  Thank you.  All right.  You can put your

3    hand down now.  Thank you.

4          All right.  In the Superseding Information there is a

5    single charge, and it alleges theft of trade secrets,

6    specifically from in or about 2015 to in or about 2018 in the

7    Northern District of California and elsewhere.

8          It is alleged that the defendant, UMC, knowingly and with

9    the intent to convert a trade secret, and then it specifies

10   Trade Secret 5, recorded an Excel spreadsheet with the digital

11   file name DR25NMS, design rules periphery -- I won't try and

12   read all of the description because it's very long and will be

13   hard for the reporter to take down.

14         It goes on to say that's a trade secret used in and

15   intended for use in interstate and foreign commerce to the

16   economic benefit of someone other than the owner, Micron

17   Technology, Inc., and then knowing that the offense would

18   injure Micron, and that UMC knowingly received and possessed

19   Trade Secret 5, and knowing Trade Secret 5 to have been stolen,

20   appropriated, obtained, and converted without authorization.

21         Have you been over this Superseding Information with

22   counsel, Ms. Caldwell?

23         **MR. CHANG:**  Your Honor, yes, I have.

24         **THE COURT:**  Okay.  Very good.  Thank you.

25         Are you satisfied you do understand the somewhat wordy

1    language in the Superseding Information?

2              **MR. CHANG:**  Yes, I do, Your Honor.

3              **THE COURT:**  Okay.  Thank you.

4         Now, ordinarily, Mr. Chang, you have a right -- and I'll

5    just say you.  Maybe I should say UMC.  UMC has a right to be

6    charged, if they are going to be charged, by an indictment.

7         An indictment requires that the Government, Ms. Vartain in

8    all likelihood, present to a grand jury the evidence that they

9    think is sufficient for the grand jury to vote an indictment.

10   They have to have -- I believe it's at least 16 grand jurors,

11   and they need 12 to bring in an indictment.

12        Is that correct, Ms. Vartain?

13             **MS. VARTAIN:**  It is, Your Honor.

14             **THE COURT:**  All right.  Just to confirm that.

15        And they don't have to find that a defendant's guilt has

16   been proved beyond a reasonable doubt, unlike the trial jury,

17   but they have to find there's sufficient evidence to require

18   the defendant to actually have to stand trial.  And that is

19   sometimes referred to as probable cause to believe that the

20   defendant committed the offense.

21        So do you understand that UMC has a right to actually have

22   a grand jury bring an indictment, and if they don't, that UMC

23   would not be facing this particular charge?

24             **MR. CHANG:**  Yes, Your Honor.  Yes, I understand.

25             **THE COURT:**  Is it your desire to give up the right on

1    behalf of UMC and proceed, instead, under the document that is

2    titled Superseding Information?

3          **MR. CHANG:**  Yes, Your Honor.

4          **THE COURT:**  Okay.  For purposes of the exposure, so to

5    speak, in other words, what is the most that someone facing an

6    indictment like this could be sentenced to, we can talk about

7    that later.

8         Ordinarily, I might talk to you about it now, but it's

9    going to come up in connection with the Plea Agreement, or I

10   can -- if Ms. Vartain and Ms. Caldwell think it's more

11   appropriate, I can discuss it now and go over it again if

12   necessary.

13        Do counsel have a preference in that regard?

14         **MS. VARTAIN:**  I think it's fine to handle in the

15   context of the Plea Agreement, Your Honor.

16         **THE COURT:**  Ms. Caldwell?

17         **MS. CALDWELL:**  That's fine with UMC, Your Honor.

18         **THE COURT:**  Okay.  Let me ask, does anyone feel that I

19   should be advising Mr. Chang of anything else in connection

20   with his decision to essentially waive an indictment?

21         **MS. VARTAIN:**  No, Your Honor.

22         **MS. CALDWELL:**  We agree, Your Honor.

23         **THE COURT:**  Okay.  Let me just say I have a Waiver of

24   Indictment, and it is signed at this time by Ms. -- it's not

25   by.  All right.

1        I think this is your signature, is it, Mr. Chang, to the

2   waiver?  I don't know how to show this without doing file

3   share, and I'm a little concerned about what will happen if I

4   start playing with this.  I'm not even sure if I can do it

5   here.

6        So, I think, let me just ask you, did you sign a waiver?

7            **MR. CHANG:**  Yes, Your Honor.

8            **THE COURT:**  Okay.  Before you signed it, did you

9   discuss the implications and, essentially, the pros and the

10  cons of going ahead under the Information as opposed to

11  demanding an indictment?

12           **MR. CHANG:**  Yes, we did.

13           **THE COURT:**  Okay.  I guess I should say one of the

14  reasons you're entitled to an indictment is because the charge

15  in even the Superseding Information is a felony; in other words

16  a crime that can be punished by more than a year.

17       For lesser crimes with lesser penalties, they don't

18  necessarily need an indictment.  They can file a complaint for

19  the same goal.

20       Okay.  And I also have a Power of Attorney.  Now, this was

21  signed, Ms. Caldwell, let's see, by someone --

22           **MS. CALDWELL:**  It was signed, Your Honor, by the

23  chairman of UMC, Stan Hung.

24           **THE COURT:**  Is this a man or a woman?

25           **MS. CALDWELL:**  It's a man.

1          **THE COURT:**  A man.  All right.  So Mr. Hung signed

2   that.

3          Ultimately, either after this proceeding or during it,

4   Mr. Ybarra, I need to confer with you about how we are to file

5   these documents.  They are official.  They should be part of

6   the court file.  And if I do accept a plea from Mr. Chang on

7   behalf of UMC, then we'll have to file the signed Plea

8   Agreement as well.

9          **THE CLERK:**  I understand, Judge.

10         **THE COURT:**  All right.  Thank you.

11         All right.  Well, then I'm going to go ahead and go over

12   the Plea Agreement with Mr. Chang.

13         All right.  This Plea Agreement is in a little different

14   form than the Court ordinarily experiences because usually we

15   have defendants who are individuals named as defendants and not

16   corporate entities.  So there are some distinctions.

17         We've just mentioned in brief the nature of the crime

18   briefly described as theft of trade secrets.  This is pursuant

19   to Title 18 of the United States Code Section 1832 subpart

20   (a)(3).  That is a felony, as mentioned.

21         And I did describe, as set forth in the Superseding

22   Information, the facts that the Government alleges underlie

23   this particular count.  There was just the one count.

24         Every crime has elements that the Government would have to

25   prove if somebody decided to go to trial.  In this instance the

1   Government would have to prove that UMC intended to convert a

2   trade secret to the economic benefit of anyone other than the

3   owner thereof.   In other words, to use it for their own

4   purposes and make money from it, for example.

5         That the trade secret is related to a product used in and

6   intended for use in interstate and foreign commerce; that UMC

7   intended that the offense would injure any owner of the trade

8   secret and did knowingly receive and possess that trade secret

9   information knowing that it was stolen, appropriated without

10  authorization, obtained without authorization, or converted

11  without authorization; i.e., somehow they got their hands on it

12  and used it for their own purposes when they didn't have

13  authority or approval to do so.

14        Do you understand the elements that are required to be

15  proved by the Government, for example, if UMC went to trial,

16  Mr. Chang?

17              **MR. CHANG:**  Your Honor, yes.

18              **THE COURT:**  Okay.  Thank you.

19        And even if you nod, by the way, I'll still have to ask

20  you to say the answer aloud because the court reporter can only

21  take down oral responses.

22        Okay.  Then every crime under this statutes here, federal

23  law, has a maximum penalty, sometimes a minimum as well.

24        In this instance, the maximum fine is an amount of no more

25  than, whichever is larger, $5 million or three times the value

1    of the stolen trade secret to the organization, including

2    expenses for research and design and other costs of reproducing

3    the trade secret that the organization has thereby avoided; any

4    restitution also to be determined by the Court; and forfeiture

5    of anything that was obtained unlawfully.

6        Ms. Vartain, if I could go to you for a moment, you

7    understand this to mean then that -- three times the value of

8    the stolen trade secret to the defendant; is that correct?

9            MS. VARTAIN:  Yes, Your Honor.

10           THE COURT:  Okay.  By "organization," in other words,

11   you're referring to the defendant, not to the party from whom

12   it was allegedly stolen?

13           MS. VARTAIN:  Correct.

14           THE COURT:  All right.  You understand that as well,

15   Mr. Chang?

16           MR. CHANG:  Sorry.  Mute.  Yes, Your Honor.

17           THE COURT:  Okay.  I might suggest, unless there's

18   something really going on in a noisy fashion wherever you're

19   located, that you go ahead and leave your microphone on rather

20   than mute it, because I'm going to have to keep asking you

21   questions, you're going to have to keep answering them, and

22   rather than have to keep disengaging the mute, it may be

23   easier.

24       If for any reason there is something going on there and

25   you want to make sure that there's no background noise, then

 1  feel free to use the mute, whichever works best for you.

 2       I should perhaps have gone over with you, just to make

 3  sure, that the signed version I have was signed by you.  So let

 4  me go back to that for just a moment.

 5       On the last page, Lucas S. Chang is listed as having

 6  signed the Plea Agreement on October 26 of this year.

 7       And did you sign the Agreement, sir?

 8            **MR. CHANG:**  Yes, Your Honor.

 9            **THE COURT:**  Thank you.

10       And then, Ms. Vartain and Ms. Caldwell, those are your

11  signatures on the same date as well; is that correct?

12            **MS. CALDWELL:**  Yes, Your Honor.

13            **MS. VARTAIN:**  Yes, Your Honor.

14            **THE COURT:**  Thank you.

15       So, Mr. Chang, before you signed -- I may start coughing.

16  I think the dust circulating in this room is sort of a problem,

17  and if I -- I've got something here that I can drink if I start

18  getting something in my throat.

19       Before you signed it, did you have enough time to discuss

20  it with your lawyer?

21            **MR. CHANG:**  Yes, we did.

22            **THE COURT:**  Okay.  Was there anyone else also that

23  was, you know, part of the discussion?  You don't have to name

24  them, but anyone else who might have been interested, did they

25  have a chance to also discuss this or get answers from

 1   Ms. Caldwell?

 2            **MR. CHANG:**  Yes, they did.

 3            **THE COURT:**  Okay.  Do you feel confident that you

 4   understand it, everything in it, the Plea Agreement?

 5            **MR. CHANG:**  Yes, Your Honor.

 6            **THE COURT:**  Okay.  Then I'll keep going.

 7        All right.  So we just discussed the penalties.

 8        The Court understands, because it's a corporate defendant,

 9   that there isn't the potential for a prison sentence.

10        Is that correct, Ms. Vartain?

11            **MS. VARTAIN:**  That is, Your Honor.

12            **THE COURT:**  Okay.  Let me see what else I wanted to

13   talk about.  I think I'm going to go to -- oh, well, we haven't

14   discussed here the penalty assessment.  Is that listed in the

15   Plea Agreement?  I just realized it's not -- I don't think it's

16   here in paragraph 1, which covered both elements and penalties.

17            **MS. VARTAIN:**  Your Honor, the --

18            **THE COURT:**  Go ahead.

19            **MS. VARTAIN:**  The Court is correct, it's not in

20   paragraph 1, but paragraph 10 specifies the special assessment

21   pursuant to the guidelines provision.

22            **THE COURT:**  Okay.

23            **MS. VARTAIN:**  It's $400.

24            **MS. CALDWELL:**  Yes, Your Honor.  It's 10d. on page 13,

25   line 24.

1        **THE COURT:**  Thank you.  It got a little bit separated,

2   and so let me just go back to that.  Yes.  All right.

3        Frankly, of less concern to UMC, I'm sure, but,

4   nonetheless, the Court has to impose -- in other words, a

5   maximum is one thing, but the Court has to impose a $400

6   special assessment per count.

7        All right.  So that is in paragraph 10d., that's on page

8   13.  Compared to what, you know, the actual agreement is here,

9   this is not significant and, frankly, is not significant to

10   most defendants.  But it is something that the Court has to

11   impose and is ordinarily due immediately even if somebody

12   couldn't pay it immediately.

13        The other penalties that I talked about, in terms of the

14   fine, are a maximum.  In other words, the very most anyone

15   could get.  A lesser amount could be ordered as a fine, but the

16   Court is required to order the $400.  So I just want to make

17   that clear.

18        All right.  Okay.  Let me go back for a minute to what I

19   wanted to do, which was just to go over rights.  There is a

20   large discussion of facts, which we'll go back to, but I want

21   to -- before we get to that, before I ask you if these facts

22   are correct, UMC has all the rights that an individual U.S.

23   citizen would have in connection with a criminal prosecution.

24   That means a right to a jury trial.  It can't be found guilty

25   of anything unless all 12 jurors are satisfied UMC's guilt was

1    proved beyond a reasonable doubt.

2        UMC has a right to have counsel representing itself

3    throughout the proceedings.  If they couldn't afford a lawyer,

4    they would have one appointed.  But, obviously, UMC can afford

5    a lawyer, and you have Ms. Caldwell appearing on UMC's behalf.

6        At trial, UMC would have the right to confront and

7    cross-examine all the witnesses the Government called against

8    them.  It would have a right to see all the evidence the

9    Government was relying on.

10       It has a right to call witnesses on its own behalf,

11   present evidence on its own behalf, have the Court issue

12   subpoenas to make sure those witness and evidence were in court

13   on behalf of UMC.

14       Someone could speak on UMC's behalf at the trial, but

15   nobody could be forced to do that.  And if UMC decided to rely

16   on its right to remain silent, no one could comment about that

17   or make any adverse remarks about it in any way.

18       Before trial, UMC would have certain rights as well.  It

19   could move to suppress evidence, keep it out of the trial, if

20   it wasn't, in UMC's view, lawfully seized.  It could be

21   physical evidence, it could be a statement, any evidence they

22   felt was not properly obtained by the Government.

23       It would be entitled to discovery.  If there's more

24   evidence the Government comes up with, they would have to give

25   it to UMC.

1          There might be affirmative defenses.  Those generally

2     don't go to the merits of whether somebody did what's alleged,

3     but something separate.  Often it could be that the Government

4     waited too long to bring the charge and a statute of

5     limitations has run, something of that nature.

6          Do you understand UMC has all these rights?

7               **MR. CHANG:**  Yes, Your Honor, we do.

8               **THE COURT:**  Okay.  And do you understand that you will

9     give them up if you do enter a plea?  UMC will be doing so if

10    you enter a plea on its behalf.

11              **MR. CHANG:**  Yes, Your Honor, we do.

12              **THE COURT:**  You won't lose Ms. Caldwell, by the way.

13    I mean, she's not going away.  But she wouldn't be representing

14    you in the context of a contested trial.  She would be

15    representing you in the context of the plea and any sentence.

16    So I just want to make that clear.

17         Okay.  Also, if UMC went to trial and it had the

18    misfortune of being found guilty, it would have a right to

19    appeal and to, again, if they couldn't afford counsel, to have

20    counsel appointed at no cost for them.

21         And, also, if they wanted to bring a collateral attack,

22    sometimes they're called a petition for a writ of habeas

23    corpus, they could do that and raise similar or different

24    arguments in that regard.

25         Under the Plea Agreement, UMC will give up those rights

1  both to appeal and to bring a collateral attack with one very

2  limited exception:  If they could show that they did not

3  receive effective assistance from their attorney.

4      So do you understand UMC has these appellate rights and

5  rights to challenge post judgment, but it's giving it up except

6  if they could show that, essentially, Ms. Caldwell didn't give

7  you adequate legal advice?

8          **MR. CHANG:**  Yes, Your Honor.

9          **THE COURT:**  Okay.  And, frankly, that's a pretty slim

10  opportunity here as you have a very experienced lawyer in the

11  criminal law, who's very well-respected in that regard.

12  Somebody could make a mistake, but it's not likely.  So I just

13  do want to make that clear to you.

14      Okay.  Let's go back to facts for a minute.  I don't think

15  UMC would consider entering a plea just because they were

16  nervous about going to trial.  There has to be a factual basis

17  for any plea that the Court can accept.

18      In a very lengthy account of facts, which starts with

19  numbered item 2 and then has many subparts, there are facts

20  laid out describing various people who essentially left Micron,

21  came over to UMC, had knowledge from their work at Micron of

22  confidential, protected, proprietary information, trade

23  secrets; that they disclosed those without permission to UMC;

24  that UMC then had those secrets to help them in developing

25  DRAM; and that UMC does acknowledge that they are responsible

1    for the behavior of and conduct of those individuals which --

2    who include -- and I perhaps will name them just so that we're

3    all clear as to who the Court is talking about.

4        I'll use what are the anglicized or U.S. names.  Stephen

5    Chen.  J.T. Ho.  Kenny Wang or Wang, I'm not sure how he

6    pronounces it.  Let's see.

7        Did I leave anyone out of that group, Ms. Vartain?  No?

8            **MS. VARTAIN:**  No.

9            **THE COURT:**  Okay.  With Mr. Chen being more of the

10   officer in charge who is alleged to have brought the people

11   over and to have authorized them using the information.

12           **MS. CALDWELL:**  Your Honor, may I just jump in?  Sorry

13   to interrupt.  May I just clarify one point?

14           **THE COURT:**  Sure.  That's fine.

15           **MS. CALDWELL:**  And I appreciate that the Court is

16   summarizing because, as you noted, it is quite lengthy.

17           **THE COURT:**  Yes.

18           **MS. CALDWELL:**  But I just wanted to note that the

19   actual -- the actual Plea Agreement reflects that one

20   employee -- namely, Kenny Wang -- used Trade Secret 5, one

21   trade secret.  And --

22           **THE COURT:**  Oh, as opposed to plural.

23           **MS. CALDWELL:**  -- there's other information at issue,

24   but this is really just limited to his use of Trade Secret 5

25   while at UMC, yes.

1          **THE COURT:**  Okay.  Just so that we're clear --

2          **MS. CALDWELL:**  There was other confidential

3    information involved.

4          **THE COURT:**  Okay.  Your concern is I used the plural

5    trade secret?

6          **MS. CALDWELL:**  Yes, Your Honor, and suggested that

7    more than one employee was sharing trade secrets.

8          **THE COURT:**  Okay.  Well, Trade Secret 5.

9          **MS. CALDWELL:**  Yes.

10         **THE COURT:**  And, of course, Micron, in their letter to

11   me, which frankly although it says "victim," is essentially

12   something of an *ex parte* communication in the civil case

13   setting forth their whole view about what's going on here and

14   how terrible everybody really is and that this doesn't spell it

15   all out.

16       But this is what's in the Plea Agreement.  And, sir,

17   Mr. Chang, this statement as to who did what when goes on for

18   many, many paragraphs.

19       And you've told me you have read the Plea Agreement, and

20   I'm assuming that you read and approved this statement of

21   facts.  Is that correct?

22         **MR. CHANG:**  Yes, Your Honor.

23         **THE COURT:**  All right.  And are all of those

24   statements of fact, as set forth in the Agreement, true and

25   correct in all respects?

1          **MR. CHANG:**  Yes, Your Honor.

2          **THE COURT:**  Okay.  I don't want to hear private,

3    confidential communications you had with counsel, but I do want

4    to just ask you kind of a general question with -- yes or no is

5    probably good enough.

6        Do you feel and does UMC feel that it has had enough time

7    to explore any possible defenses that UMC might have to the

8    charge in the Superseding Information and to explore those

9    possible defenses with counsel for UMC?

10         **MR. CHANG:**  Yes, we have.

11         **THE COURT:**  Okay.  Has anyone threatened you or

12   anybody else at UMC, to your knowledge, in order to encourage

13   UMC to change its plea or to enter a plea to this Information?

14         **MR. CHANG:**  No, Your Honor.

15         **THE COURT:**  Have you -- and I'm assuming the answer is

16   no, looking at you, but just to ask you, have you consumed

17   anything before you came to court today -- it could even be a

18   medicine that's prescribed -- that might have a drug or alcohol

19   in it?

20         **MR. CHANG:**  No, Your Honor.

21         **THE COURT:**  Thank you.

22         **MR. CHANG:**  It is still early in the day.

23         **THE COURT:**  Where you are.  Not here.

24       And everyone appreciates that you were able to make

25   yourself available.  What time is it in Taiwan at this time?

1        **MR. CHANG:**  It's about 6:00 a.m.

2        **THE COURT:**  6:00 in the morning?  6:00 a.m.

3        **MR. CHANG:**  Thank you.

4        **THE COURT:**  Yeah, okay.

5        **MR. CHANG:**  Yes.

6        **THE COURT:**  Well, a lot earlier than we are here.

7        All right.  Now, let's go over that this is a Plea

8    Agreement, just to make clear, that's under a particular

9    provision of the criminal law rules.  It decides a sentence

10   that the parties to the case have agreed to.

11       And the Court has really only two choices.  The Court can

12   either accept the Agreement and impose the sentence that the

13   parties have agreed to or the Court can't accept the Agreement

14   and you essentially go back to square one and either go to

15   trial or come up with something different.

16       So in this instance I don't see anything at the moment

17   that would cause me not to accept the Agreement.  Oftentimes,

18   if there is a Presentence Report, I will only conditionally

19   accept the plea without making a final commitment to going

20   forward under it until I have the report.

21       But in this instance, given the Agreement of the parties

22   to waive that report and that we're dealing with a corporate

23   entity, I will in all likelihood just make the determination in

24   the course of these proceedings today.

25       But let's go over the terms of that agreement.  First of

1   all, there's a hefty fine that UMC is agreeing to pay and to

2   pay it essentially right away.  And that is $60 million.

3       Now, I know that counsel for Micron feels that's not

4   wholly indicative of the losses to their client, but it is not

5   an insignificant amount of money, shall we say.

6       Then that UMC would be on what's called organizational

7   probation for three years, and the terms are that they won't

8   commit any more violations of any law, federal, state, or

9   local, and that they would cooperate with the Government in

10  accordance with the laws of the U.S. and make all monetary

11  payments in a timely fashion.

12      The amount of restitution, which there is probably going

13  to be a disagreement about what that is, but the amount of it

14  and its calculation and the amount the parties are agreeing

15  would be so involved to make that calculation in the course of

16  the criminal proceedings that it would just delay things and

17  slow things down so much that it falls under an exception to

18  the Court's ordering restitution at this time and, rather,

19  allowing that determination to be made in the course of the

20  civil case rather than in the context of the criminal case.

21      And I think that that is likely to be correct.

22      I might ask either Ms. Caldwell or Ms. Vartain, or both of

23  you, if you want to weigh in on this as to why you think that

24  it would be particularly difficult to make a determination in a

25  timely fashion in the criminal case.

1            **MS. VARTAIN:**  Sure, Your Honor.  With the Court's

2     permission, I'll speak briefly first.

3            **THE COURT:**  Uh-huh.

4            **MS. VARTAIN:**  As the Court has highlighted, I think

5     speed is a key factor here.  We have a multiple-defendant case

6     set for trial.  The resolution here facilitates a resolution of

7     the criminal case by seeking and getting UMC's cooperation.

8            The restitution, as the Court is aware, under the criminal

9     restitution law requires a complex judgment.  And those facts

10    that will go into that judgment are precisely those that will

11    be at issue in the case, both through admissions of guilt, like

12    what UMC is making, but also in the forthcoming and upcoming

13    trial against Jinhua as it concerns the use of the trade

14    secrets that are alleged in the Indictment.

15           Because those issues are complex and will be part of the

16    evidentiary record in the case, they are best delayed until the

17    Court has the opportunity to hear those facts.

18           And, also, they will be the subject of expert testimony

19    both from the Government and presumably from defense counsel.

20    And the experts will opine on precisely the types of issues

21    that will be implicated in the restitution determination.

22           And for those reasons, in order to secure the guilty plea

23    today and keep the case against the rest of the defendants

24    moving, the Government believes that the provisions set forth

25    in the agreement are appropriate to invoke and to find in this

1    instance.

2          **THE COURT:**  Yeah, I understand you were saying in your

3    agreement that it would be complex.  I was asking why it's

4    complex.  You have made one statement in that regard that there

5    are going to be dueling experts on the amount of loss.

6          And in this instance it's not like someone simply took

7    money directly from someone as you might have in, oh, a

8    securities fraud case, for example, where somebody bought the

9    security or in a business scam case where someone invested in,

10   really, a nonexistent business.

11         There will have to be, as I understand it, a showing of

12   what the value is of the secrets and how it damaged Micron.

13         Would that be a kind of a quick summary?

14         **MS. VARTAIN:**  Yes, quick summary.  And correct

15   emphasis on the damage as well, Your Honor.

16         **THE COURT:**  Well, that is what we're talking about.

17         **MS. VARTAIN:**  Yes.

18         **THE COURT:**  Restitution is to pay someone back for

19   their loss or damage.  Okay.

20         Ms. Caldwell, did you want to weigh in on this at all, or

21   is the record complete as sufficient in your view?

22         **MS. CALDWELL:**  Your Honor, I echo what Ms. Vartain

23   said.  And I'll just add one thing, which is, as I think the

24   Court has already noted earlier in this proceeding, there is a

25   great gulf and disparity between what the victim believes to be

1    the value of the trade secrets and what we believe to be the

2    value of the trade secrets.

3         I think that would be very complicated and can effectively

4    be resolved in the civil case that is also before Your Honor.

5              **THE COURT:**  All right.  I tend to agree.  And so, just

6    so the record was clear, some of this was then spelled out a

7    little more.

8         You know, because this agreement is a little different

9    than the ones that I usually look at, I do want to make sure

10   that we've covered -- let me go back to what you've agreed to

11   again, because I ended by making the comment about the

12   restitution and, of course, the special assessment that we got

13   in -- discussed earlier, when I was asking about it.

14        The -- UMC's agreeing to complete a particular financial

15   form, and to do that in a limited period of time.  I don't know

16   if there's much else.

17        Let me ask -- first of all, I'll just go to Ms. Vartain

18   first.

19        Ms. Vartain, is there anything that you would like me to

20   take up in connection with the Plea Agreement and discussing

21   with Mr. Chang other than what we've already talked about?

22        It could be something that's just a general admonition

23   that I might have overlooked in some way, or it could be

24   something specific to this Plea Agreement that you would like

25   to emphasize in some fashion.

1    **MS. VARTAIN:**  No, Your Honor.  The advisements, I

2    think, were comprehensive.

3        The only thing I've heard and I want to be sort of precise

4    on is that when the Court referred to cooperation, I think the

5    Court said in accordance with the laws of the United States.

6    It's cooperation following the provisions of paragraph 9 of the

7    Plea Agreement, and paragraph 9 sets out specific instances of

8    the cooperation that the Government will be seeking promptly in

9    this case.

10       **THE COURT:**  I'm not sure if I tied the cooperation to

11   the laws.  But if I did, I didn't mean to.  There was a

12   reference to the laws that might have been, oh, I don't know

13   where I was looking at it now.  So -- but, no, I understand

14   it's in accordance with what's laid out in paragraph 9.  And if

15   I connected two terms inadvertently, I didn't mean to.  Thank

16   you.

17       What about you, Ms. Caldwell, anything you want to add to

18   this or have me add to it?

19       **MS. CALDWELL:**  No, Your Honor.  I just wanted to

20   clarify one minor point, and that is with regard to the

21   financial statement that UMC may be asked to fill out.

22       **THE COURT:**  Yes.

23       **MS. CALDWELL:**  Their obligation to do so is dependent

24   on whether they're actually asked to do so by the Financial

25   Litigation Unit.

1          **THE COURT:**  Oh, okay.  In other words, if nobody asks

2     them, they don't have to do it.

3          **MS. CALDWELL:**  Correct.

4          **THE COURT:**  Okay.  Fine.  They'll probably ask.

5          Okay.  So let me ask you, Mr. Chang, is there anything

6     that you have a question about that you either want to ask me

7     or Ms. Caldwell, perhaps?  If you can do that.  You could even

8     do it, I suppose, by phone privately, if you needed to, with

9     Ms. Caldwell.

10         But anything you need answered at this time, sir?

11         **MR. CHANG:**  Thank you, Your Honor.  No, not at this

12     time.

13         **THE COURT:**  All right.  Then I am going to turn to the

14     Superseding Information.  And I have read that earlier.  And I

15     may simply describe it summarily, having read all of it

16     previously, or I could read it again.  It's just when we get to

17     the design rules it's really long.

18         Well, if the court reporter needs that, it is all set out

19     in the docket in the Superseding Information.  So maybe I'll

20     read it just to be extra careful.

21         All right.  Then, Mr. Chang, I'm going to turn to the

22     Superseding Information and read it to you.  And it alleges

23     that UMC violated Title 18 of the United States Code Section

24     832(a)(3), briefly described as theft of trade secrets.

25         And, more particularly, that from in or about 2015 to in

or about 2018, in the Northern District of California and elsewhere that the defendant, UMC, did knowingly and with the intent to convert a trade secret, specifically Trade Secret 5 – recorded in an Excel spreadsheet with the digital filename "[DR25nmS] Design rules Periphery_EES_2012000023-013) Rev.13" – which is a trade secret used in and intended for use in interstate and foreign commerce to the economic benefit of someone other than the owner, Micron Technology, Inc. and knowing that the offense would injure Micron; knowingly received and possessed Trade Secret 5; and knowing Trade Secret 5 to have been stolen or appropriated, obtained and converted without authorization.

All right.  To that charge, as fully set out in the Superseding Information on behalf of United Microelectronics Corporations, Inc., what is the defendant's plea?

**MR. CHANG:**  We plead guilty to this.

**THE COURT:**  All right.  Thank you.

I am going to accept the guilty plea.  I do find that the defendant was advised of his rights; that he has knowingly and voluntarily waived them; that the defendant also, through Mr. Chang, has executed the Plea Agreement knowingly and voluntarily.

So I will direct that the Plea Agreement be filed, also that the Waiver of Indictment be filed.  I do find that an indictment was knowingly and voluntarily waived.  And, also,

1  that the Power of Attorney provided by Mr. Hung be filed.

2      Then the next stage, I gather, is to turn to the

3  sentencing, if both sides do ask the Court to proceed today,

4  and both sides have -- and if they both do waive the

5  preparation of a formal report by the U.S. Probation Office.

6      Does your client do so, Ms. Vartain?

7          **MS. VARTAIN:**  For the Government, yes, Your Honor.

8          **THE COURT:**  And Ms. Caldwell?

9          **MS. CALDWELL:**  Yes, on behalf of UMC.

10         **THE COURT:**  All right.  And you are in accord with

11 this as well, Mr. Chang, that I go forward with the sentencing

12 this morning in Taiwan and this afternoon here?

13         **MR. CHANG:**  Yes, Your Honor.

14         **THE COURT:**  All right.  Then I want to again turn to

15 the documents that I have.

16     I've indicated earlier that each side filed a separate

17 Sentencing Memorandum.  They are in accord as to what the

18 appropriate sentence should be.  And I'm just going over it

19 just to check a couple of things now.

20     Okay.  In the defendant's statement, of course, aside from

21 indicating what would be an appropriate sentence, the defendant

22 has set forth a series of facts that they feel justify the

23 plea.  Some of those may not be fully accepted in the civil

24 case, but it's what the defendant is setting out here.

25     Then we have the Government's memorandum.  And, again,

they set out what they feel an appropriate sentence should be
and also, excuse me, a number of facts which they summarize
briefly, those facts having been laid out in detail in the Plea
Agreement.

The original Indictment had alleged against UMC three
counts of conspiracy; one to commit espionage, one to commit
theft of trade secrets, and one to commit espionage in the form
of receiving and possessing stolen trade secrets.

All right.  The fine range, according to the Government's
calculations -- and they have given me a very, very detailed
set of figures and calculations as to how they arrived at what
they did, and they have determined the offense level to be 32.
And the fine range going along with that would be 42 million to
84 million.  They say that they have selected a midrange,
essentially, fine of 60 million.

In the Memorandum, Ms. Vartain, you've made reference to a
$100 special assessment, but it's different in the Plea
Agreement.

And do you want to explain that differential?

**MS. VARTAIN:**  Sure, Your Honor.  I think it's a --
something that the Government missed at the time that we
originally drafted the Plea Agreement and, therefore,
incorporated into the Sentencing Memorandum.

But Chapter 8 of the guidelines specifies that the
organizational special assessment is $400 in 8E1.1 as opposed

1    to the more traditional individual assessment of $100.

2              **THE COURT:**  Okay.  Thank you.  Now, organizational

3    Probation, does that mean, then, unsupervised?

4              **MS. VARTAIN:**  Yes.  It will be unsupervised in this

5    case.

6              **THE COURT:**  Okay.  So it is essentially a tale where

7    the defendant needs to conduct itself in a lawful fashion or

8    risk a motion or a petition finding them -- or alleging they're

9    in violation as well as any new offense that somebody might

10   want to specify.

11        Okay.  Then, Ms. Caldwell, if I could just confer with you

12   for a minute on this, or confirm, perhaps, or both.

13        Ms. Vartain has gone through this whole calculation,

14   looking at the various guidelines and how you determine a range

15   here for potential fines and how you then also come up with

16   offense levels and how those get added up.  And she has a

17   chart, which is helpful to make it clear how she arrived at

18   what she did.

19        Both as to the offense level and the fines, are you in

20   accord with what she's done here?

21              **MS. CALDWELL:**  Yes, we are, Your Honor.

22              **THE COURT:**  All right.  Thank you.

23        It's pretty involved, frankly, to make these

24   determinations with a lot of back and forth amongst the various

25   guidelines, somewhat akin to trying to figure out the Tax Code,

1    but maybe not quite the same.

2        Okay.  So I am going to find that these are -- this is the

3    guideline range for the fine.  There is no imprisonment range.

4    I will agree that the offense level is correctly stated.

5        And, for corporations, what do you do about criminal

6    history then?

7                **MS. CALDWELL:**  Your Honor, it would be factored in,

8    but UMC has no criminal history.

9                **THE COURT:**  All right.  That's what I understood.

10       So that you have a criminal history of -- I guess it's I,

11   which is no criminal history or one point, either one.  They

12   have none.

13       Okay.  Then what we're doing at this time is just to

14   indicate that I have considered the factors under 18 U.S.C.

15   Section 3553 and any other factors or elements that might be

16   relevant, including the character of the defendant, the

17   seriousness of the offense, the need to impose a sentence that

18   would have a deterrence not only for the individual defendant

19   entity here but also for any other either individuals or

20   entities that might be contemplating committing a crime of this

21   nature, the need to protect the public, and what would be a

22   just sentence that is not markedly out of step with what other

23   similarly situated entities would receive for similar conduct.

24       And I do think that, in particular, having gone through

25   the detail provided by the Government's counsel, that this does

1  seem to be a sentence that fits within all of those

2  considerations without doing an injustice in that regard.

3       So let me just take a moment then.

4       Does the Government wish to add anything for the record in

5  connection with the sentencing?

6            **MS. VARTAIN:**  No.  Thank you, Your Honor.

7            **THE COURT:**  Does counsel for UMC wish to add anything

8  in connection with the sentencing?

9            **MS. CALDWELL:**  No.

10           **THE COURT:**  All right.  Now, Mr. Chang --

11           **MS. CALDWELL:**  No, thank you.  Your Honor.

12           **THE COURT:**  Okay.  Mr. Chang, just to let you know,

13 every defendant has a right to be heard before judgment is

14 imposed.  There is no requirement that you say anything at all.

15 But you do have that right.

16      So I would just ask you, do you wish to say anything at

17 this time on behalf of UMC, or do you wish to just submit the

18 matter on the written and oral presentation by your attorney?

19           **MR. CHANG:**  Uhm, yes, Your Honor.  And thank you.

20           **THE COURT:**  So do you wish to submit or do you wish to

21 add anything on behalf of the company?

22           **MR. CHANG:**  No.  We're not adding anything.

23           **THE COURT:**  All right.  Then I'm going to deem the

24 matter submitted.

25      Is there any reason, then, for the Court -- any reason why

1   the Court should not proceed at this time to impose sentence

2   and judgment?

3           **MS. CALDWELL:**  No, Your Honor.

4           **MS. VARTAIN:**  Not from the Government, Your Honor.

5           **MS. CALDWELL:**  Nor for UMC.

6           **THE COURT:**  Thank you.

7           Then in accordance with the Plea Agreement under Rule

8   11(c)(1)(C) of the Federal Rules of Criminal Procedure and

9   having considered the factors that are required to be

10  considered in this matter under Section 3553 and any other

11  relevant information, the Court does at this time, pursuant to

12  the Sentencing Reform Act of 1984, impose the following

13  sentence upon the defendant, UMC:

14          They are ordered to pay forthwith a fine of $60 million.

15          They are then to be placed on unsupervised organizational

16  supervised release.  Well, I should say probationary period.

17  So placed on unsupervised organizational probation for a period

18  of three years.  And in connection with that supervised -- I'm

19  sorry -- unsupervised probation, the conditions are that:

20          They're not to commit another federal, state, or local

21  crime.

22          They are to comply with whatever conditions ordinarily

23  would be required by the Probation Office and agree to provide

24  substantial assistance as set forth in paragraph 9 of their

25  Plea Agreement.

1    They are also ordered to pay a special assessment of $400,

2   which is also due immediately.  That is the mandatory penalty.

3    There are no charges to be dismissed because the plea was

4   entered pursuant to a Superseding Information.

5    Are there other conditions of probation or other terms of

6   the sentence that the parties agreed to that the Court has not

7   imposed?

8    Ms. Vartain?

9    **MS. VARTAIN:**  No.  Although the Government does intend

10   to dismiss the charges in the Indictment as it concerns UMC.

11    **THE COURT:**  All right.  I'm not sure if you have to

12   because the information supercedes that document as to UMC.

13   But in a belt-and-suspenders cautionary, I guess, action, I

14   don't think there's anything that would preclude you from doing

15   it.

16    Ms. Caldwell, is there anything that either needs to be

17   clarified, added, removed, or otherwise remarked upon in

18   connection with the sentence?

19    **MS. CALDWELL:**  Yes, Your Honor.  Pursuant to the Plea

20   Agreement, the Government has agreed that it will dismiss the

21   Indictment --

22    **THE COURT:**  Okay.

23    **MS. CALDWELL:**  -- originally filed as to UMC.

24    And, in addition, at the time this -- this matter has been

25   stayed, so Your Honor may not recall it, but at the time of the

1    Indictment there was also a civil action for injunctive relief

2    brought against UMC and Jinhua.  And the Government has also

3    agreed, pursuant to the Plea Agreement, to move to dismiss that

4    civil action against UMC.

5              **THE COURT:**  Ah.  In other words, a separate action

6    brought by the Government as opposed to the -- yes.  Okay.

7         All right.  And you plan to do that, Ms. Vartain?

8              **MS. VARTAIN:**  I plan to do it in two parts.  I can do

9    the criminal piece on the record today, and the civil piece my

10   office will do in writing.

11             **THE COURT:**  Very good.  All right.

12        If I could ask Ms. Goldsberry, a Judgment will have to be

13   prepared by U.S. Probation.  Do you need clarification or

14   assistance in that regard at this time?

15             **MS. GOLDSBERRY:**  Your Honor, I am -- I've been working

16   on it throughout the hearing.  So I think I'm good.  I actually

17   do -- since you asked, if I could ask one question.

18             **THE COURT:**  Sure.

19             **MS. GOLDSBERRY:**  What I did for the one special

20   condition was I took language from the Plea Agreement.  And if

21   I could just read that to make sure.  What I wrote was:

22             "The defendant will cooperate with the United States

23        pursuant to the provisions of paragraph 9 of the Plea

24        Agreement and shall conduct all of its operations in

25        accordance with the laws of the United States and will

1        make the payments of all monetary amounts.

2             "UMC agrees that the cooperation provisions of

3        paragraph 9 of the Plea Agreement shall be incorporated in

4        the terms of its probation."

5             That -- that was the one special condition that I took

6   away from the Plea Agreement and from our discussion today.

7        Does that make sense to everyone?

8        **MS. VARTAIN:**  It does for the United States, Your

9   Honor.

10       And thank you, Ms. Goldsberry.

11            **THE COURT:**  Ms. Caldwell.

12            **MS. CALDWELL:**  Yes.  I apologize, but would you mind

13  just rereading that?  I apologize.  I lost you a little bit

14  there.

15            **MS. GOLDSBERRY:**  Sure.

16            "The defendant will cooperate with the United States

17       pursuant to the provisions of paragraph 9 of the Plea

18       Agreement and shall conduct all of its operations in

19       accordance with the laws of the United States, and will

20       make payments of all monetary amounts.

21            "UMC agrees that the cooperation provisions of

22       paragraph 9 of the Plea Agreement shall be incorporated in

23       the terms of its probation."

24            **MS. CALDWELL:**  Okay.

25            **MS. GOLDSBERRY:**  I took that language directly from

1   the Plea Agreement when the Plea Agreement was discussing the

2   sentence.

3           **MS. CALDWELL:**  Okay.  Thank you.  UMC agrees with

4   that.

5           **THE COURT:**  All right.  So ordered as a condition of

6   probation.

7       Then if I could just make an inquiry of Mr. Stephens for a

8   moment, and anyone else who wants to weigh in on this.

9       Mr. Stephens, I have a copy of the Victim Impact

10  Statement.  Usually what happens is that those statements in

11  other cases are forwarded by, let's say, the U.S. Attorney to

12  U.S. Probation.  Probation includes them in their Probation

13  Report.  We don't have a Probation Report here.

14      Would you like to have this statement filed?

15          **MR. STEPHENS:**  Yes, Your Honor.

16          **THE COURT:**  All right.  I think it can be.  So unless

17  I hear some reason why it can't be, even though somebody might

18  prefer it's not included, it could be filed.  It could also be

19  filed under seal, which is ordinarily how the Probation Report

20  would be filed.

21      So perhaps we should make it formal but under seal.  And I

22  think that's perhaps as close as what would ordinarily be the

23  procedure if we had a Probation Report.

24      Do you have any comment about that, Ms. Goldsberry?

25          **MS. GOLDSBERRY:**  I do not, Your Honor.  I think in

 1    this case, because it's a corporate victim, under seal may not

 2    be necessary.  But, certainly, that's the way we would normally

 3    address victim letters.

 4         **THE COURT:**  Okay.  So would you prefer it be in the

 5    public record or under seal, Mr. Stephens?

 6         **MR. STEPHENS:**  I'm fine with it in the public record,

 7    Your Honor.

 8         **THE COURT:**  Okay.  So we would file that as well.

 9         Then, Mr. Ybarra, I may have to talk to you after these

10    proceedings as to how we're going to have all these documents

11    in the docket, unless you already know how it can be done.

12         **THE CLERK:**  I have an idea, Judge, but I would like to

13    speak with you about it.

14         **THE COURT:**  That's fine.  Okay.

15         Now, let me just inquire, because we're about to conclude

16    this proceeding, if there is anyone who is participating who

17    needs to add anything to the record or have anything further

18    addressed.  Maybe I'll just go around.

19         Government counsel, Ms. Vartain?

20         **MS. VARTAIN:**  Yes, Your Honor.  For clarity of the

21    record, the Government moves to dismiss UMC from Counts One,

22    Two, and Seven of the Indictment.

23         **THE COURT:**  All right.  That motion is granted.  And

24    our minutes would then reflect that dismissal on the

25    Government's motion.

1           Okay.  I wonder if the Judgment ought to reflect that as

2      well.  I'm not sure if it fits into the form or not.  If

3      there's any place to put it, we'll try and incorporate it in

4      the Judgment as well.

5           **MS. GOLDSBERRY:**  It's a very tricky form, Your Honor,

6      because it's in PDF.  So I will see what I can do.

7           **THE COURT:**  If it can't be done, it's a matter of

8      record.  It will be a matter of public record in the minutes.

9      And for all practical purposes, you're not pursuing them

10     anymore in that case.  Okay.

11          What about Ms. Caldwell, anything that needs to be added,

12     clarified or you want to take up?

13          **MS. CALDWELL:**  No, Your Honor.  Thank you.

14          **THE COURT:**  Okay.  And is there anyone else who needs

15     to be heard before we conclude this proceeding and recess this

16     session?

17          Okay.  All right.  Then hearing nothing further, thank you

18     to everyone who actively participated.  And to those of you who

19     did not actively participate, thank you for not actively

20     participating.

21          That will conclude these proceedings at this time.

22          And I'm going to look here.  I'm about to click on

23     "leave."

24          So that concludes the proceedings.  I'm glad that you were

25     able to resolve the matter.  Good-bye to everyone both here and

1    in Taiwan.

2              **MR. CHANG:**  Thank you.

3              **MS. CALDWELL:**  Thank you.

4              **MS. VARTAIN:**  Thank you, Your Honor.

5         (At 3:32 p.m. the proceedings were adjourned.)

6                        - - - - -

7

8                 <u>**CERTIFICATE OF REPORTER**</u>

9         I certify that the foregoing is a correct transcript

10   from the record of proceedings in the above-entitled matter.

11   DATE: Friday, October 30, 2020

12

13

14                    *Katherine Sullivan*

15   _____

16        Katherine Powell Sullivan, CSR #5812, RMR, CRR
                      U.S. Court Reporter

17

18

19

20

21

22

23

24

25