# EXHIBIT C

File Name USD-0353878

Annex 2

## Technological Cooperation Agreement

  This Technological Cooperation Agreement (hereinafter referred to as "the Agreement") is signed, on May 13, 2016 (hereinafter referred to as "the signing date") of the Gregorian calendar (same hereinafter), by United Microelectronics Corporation, a company incorporated under the laws of Taiwan with its main office located at No.

File Name USD-0353878

3, Lixing 2nd Road, Hsinchu Science and Technology Park, Taiwan (hereinafter referred to as "Party A") and Fujian Jinhua Integrated Circuit Co., Ltd., a company incorporated under the laws of the People's Republic of China with its main office located in Jinjiang City, Fujian Province (hereinafter referred to as "Party B").

Party A is a leading company in the production of 12-inch semiconductor wafers and has developed and owns many patents, trade secrets, the right to circuit layout of integrated circuits and other intellectual property rights related to semiconductor wafer products. The company currently has two 12-inch semiconductor wafer factories in operation and possesses unique information, knowledge and methods related to 12-inch semiconductor wafer factory.

Party B is planning to build two production lines in Jinjiang City, Fujian Province, China, to manufacture 12-inch dynamic random-access memory (DRAM) wafers, which are primarily intended for specific dynamic random-access memory (DRAM) products demanded by local emerging markets in China. The products are primarily used for the Internet of Things, big data, cloud computing, smart terminal, wearables, and other emerging markets, to meet [the demands of] local customers in China.

Parties A and B shall both comprehensively provide the global resources which they respectively own and collaborate to engage in development of process technologies related to dynamic random-access memory (DRAM) with feature size 32/32S nanometer. The site of the cooperative research and development is in a designated location in Fab12A Plant of Tainan Science Park ("Tainan Research and Development Base"), which is owned by Party A. Once Party B's production lines are completed, the technological achievements from the cooperative research and development by the two parties shall be transferred to Party B in their entirety, enabling the operation site located in Jinjiang City to achieve mass production, and Party B shall carry on the subsequent research and development work on basis of the existing technology.

Given the aforementioned consideration, the two parties agree to the terms of the matter of technological cooperation as follow:

**Article 1: Definition**

1.1 The technology developed in cooperation under the Agreement refers to the development of process technology, by both parties, related to dynamic random-access memory (DRAM) of feature size 32 nanometer (feature size, F value) (hereinafter referred to as "32 nanometer") and 32S nanometer dynamic random-access memory (DRAM) (hereinafter referred to as "32S nanometer," and as "32/32S nanometer" when combined with 32 nanometer), as well as the process technologies and design rules, etc., for dynamic random-access memory (DRAM) wafers arising therefrom. Please refer to Annex 1 for details on important parameters for the aforementioned 32/32S nanometer technology, and Annex 2 for details of the estimated schedule for technological development.

704

1.2 The intellectual property rights under the Agreement refer to the patent rights, trade secrets, and the right to circuit layout of integrated circuits and other related intellectual property rights which are jointly acquired by both parties in cooperatively developing technologies worldwide under the Agreement.

**Article 2: Scope of Technological Cooperation**

2.1 Unless otherwise instructed by Party A regarding the schedule, Party B shall purchase dedicated research and development equipment and ancillary equipment (hereinafter referred to collectively as "the dedicated research and development equipment") and be responsible for freight, installation fee and other additional charges,

File Name USD-0353878

with a total budget of approximately $300 million (including tax), and for shipping [them] to the Tainan Research and Development Base; and, the installation shall be completed by October 31, 2016 to be ready for the cooperative development. Party A shall provide assistance when the equipment is being installed. A list of the dedicated research and development equipment and a detailed installation schedule shall be separately provided by Party A.

2.2 To ensure a complete integration of the design and manufacturing technology for the dynamic random-access memory (DRAM) wafers, the two parties will jointly select a competent design services company as a consultant to complete the design of the dynamic random-access memory (DRAM) wafers in the shortest time to conform to the schedule for the technological development. Party B shall be responsible for paying the costs of the design of the dynamic random-access memory (DRAM) wafers (including testing carriers and the design of product's circuit) and the photomasks.

2.3 Within 5 years from the signing date of the Agreement or before the completion of the technological cooperation, the earlier of which shall prevail, Party A shall provide a written report to the designated personnel of Party B at least every two months regarding the results and progress of the technological cooperation, and make a periodic summary report every six months; the relevant information and materials shall be filed and kept by Party B.

2.4 Within 5 years from the signing date of the Agreement, Party A shall use the dedicated research and development equipment to develop the joint development technology under the Agreement, and the joint development technologies under the Agreement which are developed or generated due to the provision of technical services by Party A to Party B under this article shall be jointly owned by both parties, and both parties also have the right to use. Party B shall be responsible for the matters of application, registration, and maintenance of related intellectual property rights to ensure such intellectual property rights to be jointly owned by both parties. If matters arise from authorization in the future, these shall still be jointly handled by both parties according to law.

2.5 On the expiry date of 5 years from the signing date of the Agreement or a date otherwise agreed upon by both parties in writing, Party A shall act in concert with Party B to hand over the dedicated research and development equipment to a carrier designated by Party B, and Party B shall bear the relevant shipping costs.

2.6 To assist Party B in smooth mass production, Party A shall recommend consultant companies to provide necessary production line construction, planning, equipment, management and other information consulting and training services.

2.7 When the technologies cooperatively developed by both parties meet the conditions defined in Item 7 of Annex 1 and Item 6 of Annex 2, it indicates that the technology of 32/32S dynamic random-access memory (DRAM) products is successfully developed. Party A shall continue to support Party B to gradually increase

-2-                                                                                                                                 705


## Declaration of Implementing Approval for Reference

To:        Investment Review Committee of Ministry of Economic Affairs

Purport:   (Daji No. 148) In relation to our company's application for the technological cooperation project with Fujian Jinhua Integrated Circuit Co. in Mainland China, the implementation of the cooperation plan is hereby declared for approval for reference.

Description:

27

File Name USD-0353878

1. Proceeded in accordance with Description 8 of your Committee's Official Document Economic Review No. 2, #10522255030 (Please refer to Annex 1 for details) dated April 12, 2016 (same hereinafter).
2. As presented previously by the declarant, with your Committee's approval of the technological cooperation with Fujian Jinhua Integrated Circuit Co., Ltd. in Mainland China, the declarant already signed the Technological Cooperation Agreement on May 13, 2016, with the signing date of May 13, 2016 as the starting date of the technological cooperation with Mainland China. The period of validity of the Agreement is 5 years beginning on May 13, 2016.
3. For this purpose, a photocopy of the Technological Cooperation Agreement signed by both parties and a Traditional Chinese translation (please refer to Annex 2) are attached for your Committee's reference.

Annex:

1. One photocopy of your Committee's Official Document Economic Review No. 2, #10500055030 dated April 12, 2016;
2. A photocopy of the Technological Cooperation Agreement signed by both parties and its Traditional Chinese translation.

United Microelectronics Corporation [stamp]

| | |
|---|---|
| Applicant: | United Microelectronics Corporation |
| Person in Charge: | Hong Jiacong, Hong Jiacong [stamp] |
| Application Legal Representative: | Chen & Lin Attorneys-At-Law |
| | Attorney Wang Chuanfen, Attorney Wang Chuanfen [stamp] |
| | Attorney Yu Xinhui (contact person), Attorney Yu Xinhui [stamp] |
| | Contact Telephone: (02) 27150270 (Ext: 205) |
| | Address for Service of Documents: Suite 1201, 12th Floor, No. 205, Dunhua North Road, Taipei |

Republic of China, May 13, 2016

702
10500110320

# Letter of Appointment

For matters in connection with the company's application for engagement in technological cooperation in Mainland China, Attorney Wang Chuanfen and Attorney Yu Xinhui, of Chen & Lin Attorneys-At-Law, are hereby appointed, jointly or severally, as the company's [legal] representatives, representing the company to apply for the technological cooperation, approval and approval for reference of the amendments or changes to the technological cooperation plan; in addition, they are authorized for all relevant acts, including but not limited to addition and

File Name USD-0353878
correction, change, explanation, withdraw, designation or replacement of subagents, and acting to receive and accept the service of documents, in matters related to the application.

Sincerely,

Investment Review Committee of Ministry of Economic Affairs

United Microelectronics Corporation [stamp]

| | | |
|---|---|---|
| Appointer: | | United Microelectronics Corporation |
| Representative: | | Hong Jiacong, Hong Jiacong [stamp] |
| Appointees: | | Attorney Wang Chuanfen, Attorney Wang Chuanfen [stamp] |
| | | Attorney Yu Xinhui (contact person), Attorney Yu Xinhui [stamp] |
| | | (Chen & Lin Attorneys-At-Law) (Sua Sponte) |
| Telephone: | | 02-2715-0270 #205 |
| Address: | | Suite 1201, 12th Floor, No. 205, Dunhua North Road, Taipei 105 |

Republic of China, May 13, 2016

703

its yield to 80%, which is the standard for mass production of the industry (for example: the industry's standard for mass production's yield is 85%, then Party A shall assist to increase the yield to 85% * 80% = 68%).

**Article 3: Technological Information Disclosure and Confidentiality Obligations**

3.1 Once the Agreement is signed, Party A shall provide Party B with technical documents, parameters and data, etc., related to the joint development of technologies and/or the intellectual property rights under the Agreement according to the schedule agreed upon by both parties, and [also] provide Party B with all necessary

File Name USD-0353878

technical consulting and professional manpower required for manufacturing the Dynamic Random Access Memory (DRAM) wafer products.

3.2 The confidential information as referred to in the Agreement includes all technical information and confidential data during the cooperative development. Without a unanimous written consent of both parties, neither party shall disclose, license, authorize, transfer to its affiliates and/or any third party, or allow any affiliates and/or any third party to access and/or use the information and data under the Agreement. Each party shall ensure that appropriate rules and regulations are in place and inform the party's (including the party's affiliates) directors, senior staff, technicians, and other employees to strictly abide by the confidentiality obligations specified in this article.

**Article 4: Cooperative Research and Development Funds and Taxes**

4.1 The funds for cooperative research and development under the Agreement are USD $400 million dollars (USD 400,000,000) in total, which is divided into USD $200 million dollars (USD200,000,000) for 32 nanometer and USD $200 million dollars (USD200, 000,000) for 32S nanometer and shall be paid in installments by Party B to the designated account of Party A according to the schedules specified in Annex 1 and Annex 2. The parties will negotiate separately on detailed progresses of technological cooperation and funding, etc., under the Agreement.

4.2 The foregoing fees to be paid by Party B already include taxes. If there are other tax burdens, they shall be borne respectively by both parties in accordance with relevant regional laws and regulations. If Party B withholds any taxes for Party A in accordance with law, Party B shall provide the withholding documents and relevant assistance for Party A in order to facilitate Party A in offsetting or applying for tax refunds.

4.3 Within the range that the number of personnel and service period provided by Party A for 32 nanometer and 32S nanometer are no more than 60 individuals/month in total (for instance, 10 individuals for 6 months each; the specific number of personnel and period shall be determined by Party A), Party A will send personnel to Party B's location to fulfil the obligations under the Agreement. And, the expenditures related to salaries, travel expenses, raises, board and lodging, and transportation, etc. shall all be borne by Party A. The portion in excess shall be borne by Party B, which should be reimbursed for one's actual expenses, such as accommodation and transportation expenses, etc.

4.4 Preconditions for Payment: Both parties agree that only after obtaining the assurance of fulfillment of compliance recommendations and necessary approvals by relevant government authorities shall Party B have the obligation to fulfil in paying the research and development expenses in accordance with the Agreement, and Party A must cooperate with Party B in providing relevant documents. If Party B needs an extension on payment time due to review and approval procedures, then Party A shall grant understanding and cooperation; and, Party A, however, has the right to apply Item 8.1 to handle related matters.

File Name USD-0353878

4.5 Party B shall conduct acceptance inspections for Party A's technological results. The specific method for acceptance inspection shall be separately agreed upon by both parties.

4.6 If required, Party B shall have the right to engage a third-party agency to perform special audits on the use of Party B's research and development funds, and Party A shall provide assistance in the audit process under Taiwanese law and within the scope approved by the competent authorities.

**Article 5: Assurance**

5.1 Party A shall, acting in the principle of good faith and fair dealing, guarantee that it shall provide comprehensively relevant special technologies which it controls and are necessitated for the cooperative development under the Agreement within the scope agreed upon in the Agreement and permitted by legal regulations. Party A shall not assume assurance obligations beyond what has been agreed upon in the Agreement.

5.2 All parties should maximally adhere to the principle of good faith; if technical risks are undoubtedly found in the cooperation, which may possibly cause the research and development to fail or partially fail, the other party shall be notified without delay and appropriate measures shall be taken to reduce losses for both parties. The parties shall immediately negotiate in good faith and proceed with ensuing matters in accordance with the negotiated consensus.

5.3 If any party knows that the intellectual property rights under the Agreement have been infringed upon by a third party, it shall immediately inform the other party and [create] an action plan through consultation.

**Article 6: Improvement**

6.1 Both parties shall also need to improve the technologies cooperatively developed under the Agreement, but the other party shall be notified in writing of the results of relevant improvement upon the completion of such improvements, and both parties shall jointly acquire all patent rights, trade secrets, the right to circuit layout of integrated circuits, and other relevant intellectual property rights related to the results of such improvement. All the patents, trade secrets, the right to circuit layout of integrated circuits, and other relevant intellectual property rights related to the results independently developed by Party B shall be owned by Party B.

**Article 7: Term of Authorization and Prerequisites**

7.1 The period of validity of the Agreement is 5 years in total, starting from the signing date of the Agreement.

7.2 The parties must inform the other party of an extension of the Agreement within three months prior to the expiration of the Agreement, and the expiration of the period after the extension remains the same [sic].

7.3 Prerequisites: Both parties agree that Party A shall have an obligation to fulfill under the Agreement only after it has obtained all the necessary approvals from relevant government authorities, and Party B shall cooperate with Party A in providing relevant documents. If Party A is forced to suspend or delay fulfilling its obligations due to review and approval procedures in Taiwan and other reasons, then both parties agree that the payment period of relevant expenses shall be postponed simultaneously.

File Name USD-0353878

707

### Article 8: Breach of Agreement and Termination

8.1 If circumstances arise, such as Party B delays the payment of the cooperative research and development funding prescribed in Item 4 for more than two quarters, or Party B procrastinates due to the schedule of relevant competent authorities regarding the Agreement's review and approval, or Party B's relevant competent authorities revoke or terminate the authorization or approval obtained by Party B for the Agreement, then Party A may, in addition to exercising the relevant rights stated in Item 8.4 under the Agreement, suspend to provide the services as set out in the Agreement, which shall not constitute breach of the Agreement.

8.2 If Party A cannot complete the development of 32 nanometer technology according to the schedule (including buffer period) specified in Item 7 of Annex 1 and the 32 nanometer technical criteria listed in Annex 1, Party A shall provide a team and technical support and use the existing plant and equipment to develop business, and both parties shall negotiate separately the specific contents and sign a supplementary agreement, which, upon being approved by Taiwan relevant competent authorities, should be handled, within the scope approved by the relevant Taiwan competent authorities, by both parties according to the supplementary agreement. If Party A fails to complete the development of 32S nanometer technology according to the schedule (including buffer period) prescribed in Item 6 of Annex 2 and the 32S nanometer technical indicators listed in Annex 1, then Party A shall return 70 percent (70%) of the cooperative research and development funding received for 32S nanometer technology. Party A and its strategic partners shall not participate in the redistribution of the return of the cooperative research and development funding.

8.3 If circumstances arise, such as Party B delays payment for more than two quarters, or the authorization or approval obtained by Party B for the Agreement is revoked or terminated, or the Agreement is unable to be executed due to Force Majeure such as natural disasters, then the two parties shall immediately negotiate in good faith and within the scope of the statute and handle subsequent matters per the legal consensus agreed upon. However, only under the circumstances listed in Item 8.2 shall Party A be required to return the cooperative research and development funding received according to the Agreement to Party B.

8.4 [If] either of the two parties fails to fulfill any of the terms of the Agreement, and it still has not fulfilled [its obligations] or corrected [its actions] after the other party has given regular reminders in writing urging [it] to do so, then other party shall demand reparation for damages and notify in writing the termination of the Agreement.

8.5 Where the execution of the Agreement is impacted by circumstances such as one party is unable to pay, declares bankruptcy, coordinates with creditors due to difficulties in paying debt, disposes of its business or major assets, or is being sequestrated and confiscated, the other party shall notify the said party in writing of the immediate termination of the Agreement.

8.6 Before the expiration of the contractual period of the Agreement, the parties may notify in writing the other party at any time of the willingness to terminate all or part of the Agreement. Upon other party's written agreement, the Agreement shall be terminated according to the two parties' negotiations and their written agreement to terminate the Agreement.

File Name USD-0353878

708

### Article 9: Transfer and Amendment of the Agreement

9.1 The Agreement shall have a binding effect upon both parties, [and their respective] successors and assigns.

9.2 Without being agreed upon in writing by both parties in advance, the rights and obligations of the two parties under the Agreement shall not be transferred to any third party.

9.3 Without a written consensus of both parties, neither party shall arbitrarily modify [or] supplement the contents of the Agreement.

### Article 10: Waiver

10.1 Failure by either party to exercise any of its rights bestowed under the Agreement shall not constitute a waiver of that right, nor shall it impede [the party] exercising that right at any time.

10.2 Unless otherwise approved in writing by both parties to the Agreement, the waiver of part of a right stipulated in any term of the Agreement shall not constitute the waiver of rights stipulated in the same or other terms in the future.

### Article 11: Proper Law and Jurisdiction

11.1 The cooperative development under the Agreement involves the most significant interests of both parties respectively, thus the parties agree to respect the most significant statutory provisions of the other party; and, where any dispute or claim arises out of or in connection with the Agreement, the parties shall jointly choose an arbitration institution to settle [the matter] by arbitration.

11.2 If a clause of the Agreement becomes invalid or will become invalid because it is in conflict with the most significant statutory provisions of either party, the parties shall enter another valid clause in its place, and the replacement clause should be sufficient to represent the true meaning of the parties at the time of signing the Agreement; and, the effect of other clauses of the Agreement shall not be affected by the invalid clause.

### Article 12: Entire Agreement

12.1 The Agreement and the relevant Annexes to the Agreement constitute the complete consensus of the two parties with respect to the matters agreed upon in the Agreement and supersede all previous oral and written agreements and other covenants.

12.2 The Agreement is the fundamental agreement for the cooperation between the two parties. Other matters not covered [shall be addressed by] a separate agreement signed by both parties.

**Article 13:** This Agreement shall be executed in identical six copies, each party shall hold one copy, and the rest is for review and approval.

File Name USD-0353878

(No text beyond this line)

-6-

709

Party A: United Microelectronics Corporation     [stamp is illegible]

Authorized Representative: Huang Bowen [STC 7806/2672/2429]


Party B: Fujian Jinhua Integrated Circuit Co., Ltd.

[Stamp: Fujian Jinhua Integrated Circuit Co., Ltd]

Authorized Representative:  LU Wensheng [STC 4151/2429/0524]


Date:    May 13, 2016

34

File Name USD-0353878

-7-

710

Annex 1

## Important Parameters of 32/32S Nanometer Technology

| Process Technology | Cell | F Value (nm) | STI Pitch (nm) | Wordline Pitch (nm) | Bitline Pitch (nm) | Cylinder Pitch (nm) |
|---|---|---|---|---|---|---|
| 32 nm | 2 x 3, $6F^2$ | 32 | 64 | 52 | 80 | 156 |
| 32S nm | 2 x 3, $6F^2$ | 29 | 62 | 42 | 72 | 144 |

35

File Name USD-0353878

-8-

711

36

File Name USD-0353878
Annex 2

# Estimated Schedule for Technological Development

| | 2016 | | | | 2017 | | | | 2018 | | | | 2019 | | | | 2020 | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Q1 | Q2 | Q3 | Q4 | Q1 | Q2 | Q3 | Q4 | Q1 | Q2 | Q3 | Q4 | Q1 | Q2 | Q3 | Q4 | Q1 | Q2 | Q3 | Q4 |
| | Sign Agreement | | | RD Equipment in place | | | | | | | | | | | | | | | | |
| | 50mn | | | | | | | | | | | | | | | | | | | |
| 32 Nanometer | | Provide a list of Manufacturing Equipment | | Provide Manufacturing Process | | Complete Optical Correction & Photolithographic Blocks | Provide Design Manual/ SPICE Model | | | Complete *Good Electrical Die on Wafer*, provide complete technical information | | Yield/reliability of wafers produced by project company meets the standard of successful R&D | | | | | | | | |
| | | USD 30mn | | USD 30mn | | USD30mn | USD20mn | | | USD20mn | | USD20mn | | | | | | | | |
| 32S Nano-meter | | | | | | | | Provide list of Manufacturing Equipment | Provide Manufacturing Process | | | Complete Optical Correction & Photolithographic Block | | Provide Design Manual SPICE Model | | | Complete *Good Electrical Die on Wafer*, provide complete technical information | | Yield/reliability of wafers produced by project company meets the standard of successful R&D |
| | | | | | | | | USD40mn | USD40mn | | | USD40mn | | USD30mn | | | USD30mn | | USD20mn |

File Name USD-0353878

712

File Name USD-0353878
Annex 1

# Payment Schedule for 32 Nanometer Technology Research and Development Funding

|   | Payment Terms | Tentative Schedule (Note 1) | Amount (Unit: US Dollar) | Payment Period/Remark |
|---|---|---|---|---|
| 1 | The parties sign the Agreement | First Quarter of 2016 | 50,000,000 | To be paid in the Second Quarter of 2016 |
| 2 | Party A provides a list of 32nm manufacturing equipment. | Second Quarter of 2016 | 30,000,000 | To be paid within 90 days upon being provided. |
| 3 | Party A provides 32nm manufacturing process. | Fourth Quarter of 2016 | 30,000,000 | To be paid within 90 days upon being provided. |
| 4 | Party A completes optical correction and photolithographic blocks. | Second Quarter of 2017 (Note) | 30,000,000 | To be paid within 90 days upon completion |
| 5 | Party A provides the Design Manual/ SPICE Model. | Third Quarter of 2017 (Note) | 20,000,000 | To be paid within 90 days upon being provided. |
| 6 | Party A completes the Good Electrical Die on Wafer and provides relevant technical information. | Second Quarter of 2018 (Note) | 20,000,000 | To be paid within 90 days upon being provided. |
| 7 | The yield and reliability of the dynamic random-access memory (DRAM) wafers produced by Party B meet the standards for successful research and development. | Fourth Quarter of 2018 (Note) | 20,000,000 | Party B produces three batches of the dynamic random-access memory (DRAM) wafers, with three wafers per batch, reaching a yield of 40% and passing the 240-hour HTOL. To be paid within 90 days upon meeting [the requirements]. |
| Total: | - | - | 200,000,000 | - |

Note: The "Tentative Schedule" refers to a preliminary schedule estimated by both parties assuming that the dedicated research and development equipment will be installed by October 31, 2016; if, for any reason, the dedicated research and development equipment cannot be installed by October 31, 2016, the Tentative Schedule of Item 4 through Item 7 will be postponed to the time (T) when the installation of the dedicated research and development equipment is completed according to the Agreement, which is to be changed to T + 2 quarters, T + 3 quarters, T + 6 quarters and T + 8 quarters. With the tentative schedule of Item 2 through Item 7 (including the tentative schedule following a delay), each item can basically have a one-quarter buffer period; however, the total of all buffer periods is limited to one year.

File Name USD-0353878

Annex 2

# Payment Schedule for 32S Nanometer Technology Research and Development Funding

|   | Payment Terms | Tentative Schedule (Note) | Amount (Unit: US Dollar) | Payment Period/Remark |
|---|---|---|---|---|
| 1 | Party A provides a list of 32Snm manufacturing equipment | Fourth Quarter of 2017 | 40,000,000 | To be paid within 90 days upon being provided. |
| 2 | Party A provides the 32Snm manufacturing process. | First Quarter of 2018 | 40,000,000 | To be paid within 90 days upon being provided. |
| 3 | Party A completes optical correction and photolithographic blocks. | Fourth Quarter of 2018 | 40,000,000 | To be paid within 90 days upon completion. |
| 4 | Party A provides the Design Manual/ SPICE Model. | Third Quarter of 2019 | 30,000,000 | To be paid within 90 days upon being provided. |
| 5 | Party A completes the Good Electrical Die on Wafer and provides relevant technical information. | Second Quarter of 2020 | 30,000,000 | To be paid within 90 days upon being provided. |
| 6 | The yield and reliability of the dynamic random-access memory (DRAM) wafers produced by Party B meet the standards for successful research and development. | Fourth Quarter of 2020 | 20,000,000 | Party B produces three batches of the dynamic random-access memory (DRAM) wafers, with three wafers per batch, reaching a yield of 40% and passing the 240-hour HTOL. To be paid within 90 days upon meeting [the requirements]. |
| Total: | - | - | 200,000,000 | - |

Note: The "Tentative Schedule" refers to a preliminary schedule estimated by both parties assuming that the dedicated research and development equipment will be installed by October 31, 2016; if, for any reason, the dedicated research and development equipment cannot be installed by October 31, 2016, the tentative schedule of Item 1 through Item 6 will be postponed to the time (T) when the installation of the dedicated research and development equipment is completed according to the Agreement, which is to be changed to T + 4 quarters, T + 5 quarters, T + 8 quarters and T + 11 quarters, T + 14 quarters, and T + 16 quarters. With the tentative schedule (including the tentative schedule following a delay), each item can basically have a one-quarter buffer period; however, the total of all buffer periods is limited to one year.