# Exhibit D

## Questioning Record

The Trade Secrets Act, No. 1 of Year 107 of the Republic of China Aid to the United States Zi No. 1 and 7707, at 1: 57 p.m. on April 22, Year 108 of the Republic of China, in Taiwan Taichung District Public Prosecutors Office. The staff who attended the interrogation in Investigation Room No. 1 were as follows:

Prosecutor Wang          Liangqin          Clerk of Court Liu Jinmei

The following people were present:

The witness was summoned and made appearance.

The prosecutor asked the witness for their name, age, nationality, address, and their unified national identity card number.

Witness answered

Huang Enxu, born on September 15, 1963.

Unified national identity card number: No. C120840772

Address: No.65-1, Lane 83, Alley 115, Section 3, Chenggong Road, Taoyuan District, Taoyuan City

The prosecutor advised the witness of the applicable provisions on when he may refuse to testify:

Section 180 of the Code of Criminal Procedure provides that:

The witness may refuse to testify in any of the following circumstances:

I. If they are, or have been, either the spouse, lineal consanguinity, collateral consanguinity within three generations, an in-law, or a parent or family member within two generations of the defendant or the private prosecutor.

II. If they are engaged to either the defendant or the private prosecutor.

III. If they are currently, or previously have been, a statutory representative for the defendant or the private prosecutor; or, are or have been represented legally by the defendant or the private prosecutor.

A co-defendant or private prosecutor cannot refuse to testify if any of the aforementioned relationships exist between them and another co-defendant or private prosecutor and they are only a witness on matters that concern their co-defendant or a private prosecutor.

----------------------------------------------------------------------

Section 181 of the Code of Criminal Procedure provides that:

A witness may refuse to testify if they believe that their testimonial could incriminate either themselves or an individual that they share one of the aforementioned relationships with.

----------------------------------------------------------------------

Section 182 of the Code of Criminal Procedure provides that:

Witnesses who are business associates of, currently are themselves, or previously have been: doctors, pharmacists, midwives, chaplains, lawyers, defenders, public notaries, or accountants may refuse to provide their testimony if they are questioned about matters that relate to another person's private information known to them as a result of their occupation, except when they have been given permission to reveal that information.

----------------------------------------------------------------------

Article 33 of the Attorneys' Code of Ethics provides that:

Lawyers must keep their client information strictly confidential and must not disclose any such information. However, this restriction does not apply to the client's future criminal and plans; or the client's continuation of ongoing criminal acts that may cause harm to the life or health of any third party.

----------------------------------------------------------------------

Question: Are you aware of the above provisions?
Answer: Yes, I am. I will make a legally compliant affidavit concerning specific information about United Microelectronics Corporation (UMC)'s trade secrets.

[107 Cooperation with the United States_000001_1080422140245]



Question: Are you willing to testify?
Answer: Yes.
The prosecutor informed the witness of his obligation to make an affidavit and the punishment for perjury. He then asked the witness to sign the affidavit and read it aloud.
Question: What made you think that the second computer found (No. UMC031525) was important? What was on the second computer?
Answer: Of course, I don't know exactly what files were stored on the second computer. It was during my interview with Guo Fengming when I learned that the second computer should have been used in a similar way to the first computer handed in to your Office. Both computers were used by the DRAM team. At the time of the search, the DRAM team instructed Huang Shuhan to hide the computer, which convinced me that the two computers had the same legal status in that they could both be criminal evidence.
Question: Have you ever reported to Chairman Hong of UMC about the second computer?
Answer: I think he should have known about that. I should have told him, but I don't remember exactly when and where. At that time, Chairman Hong was my immediate supervisor, and I was eager to explain that the way I dealt with the first computer was in line with my professional judgment. Therefore, I am sure I mentioned the existence of the second computer to him, but I can't remember when and where I did. The second computer was not the focus of my explanation to Chairman Hong, after all. Moreover, I didn't want to accuse attorney Chen Zhehong of mishandling the issue in front of Chairman Hong, especially when we had no idea whether the prosecutor would press charges. The focus of my communication with my immediate supervisor was on convincing him of my professional judgment, and it is possible that the existence of the second computer was mentioned during the conversation.
Question: You mentioned that you had informally chatted with Rong Letian and Chen Zhengkun. Is there any recording of this conversation?

~
Answer: Yes, but it implicated my UMC defense strategy so I couldn't provide it then.
Question: Were you able to confirm that Rong Letian and Chen Zhengkun were aware of the existence of the second computer during your conversation with them?
Answer: It's been too long to recall details of the conversation. I think it is more likely that Chen Zhengkun knew about the second computer because it was him who recruited all former Micron employees and established the DRAM

team. Rong Letian was not part of the DRAM team. Rong was transferred to the DRAM team because he had issues with his former supervisor. In other words, by the time Rong Letian joined the DRAM team, those two computers had already been allocated.

Question: Do you know Zhou Xinhong or Wang Bangming from the IT department? Did you interview them during your internal investigation for UMC?

Answer: I know both of them. My team members had arranged interviews with them. Those four people I mentioned this morning refer to those DRAM team members, and members from the IT department and the HR department were also interviewed.

Question: Were recordings made of these interview conversations?

Answer: Those records were kept in the legal office back then, but I am not sure if they are still there.

Question: Zhou Xinhong and Wang Bangming previously testified to our Office that they had noticed unusual file downloads at UMC, and that they did an investigation on it. Are you aware of that?

Answer: This occurred during the internal investigation after the Prosecutors Office's search and should have been mentioned by Zhou Xinhong at the internal meeting. What he meant was, that in December 2015, the IT departments had discovered unusual file downloads and uploads on He Jianting and Li Fuzhe's business computers. The IT department dealt with the matter at the time by taking He Jianting's laptop and removing the hard drive. However, at that time, in December 2015, the legal department was not informed of the matter. They were informed only after an internal investigation in 2017. Wang Bangming was also present at the meeting. But Zhou Xinhong was the person doing the explaining, as he was doing the actual work. I was very surprised when I learned about the matter. Under normal circumstances, such an act constitutes a serious violation of the company's information confidentiality rules and constitutes a major disciplinary violation. I have no idea why the company did not punish them at that time.



Question: During the investigation, did you know which company owned those files. He Jianting and Li Fuzhe were using?

Answer: The IT department has compiled an EXCEL spreadsheet with a file list. Judging from the contents of the file list, some file titles
did contain the word MICRON.

Question: Did you tell the IT department that these files could not be removed at that time?

Answer: Yes, including the hard drive that was removed from He Jianting's laptop and taken by the Company.

Question: Where were these hard drives and this data stored afterwards?

Answer: I didn't ask about how the IT department would retain them, but I believe the IT department staff possesses basic legal knowledge.

Question: Who sent the first computer to you? The one that was handed over by Huang Shuhan to UMC's legal department. Was it Rong Letian?

Answer: I don't know the name of the specific person. Rong Letian knew about it, though. But he didn't personally bring it to Hsinchu's office from Tainan. Rong

      Letian basically agreed with my own opinion that we should be honest.

Question: You refused to answer several questions this morning. Was it because those questions involved any of UMC's trade secrets, or are there other reasons?

Answer: Because those questions directly related to whether illegal acts actually took place or not, and I decided to refuse to testify because I myself defend UMC at the investigation stage.

Question: The IT department provided you with the EXCEL list at the time. Do you know whether these original files are still retained?

Answer: If they have been removed from the hard drive, there should be appropriate technologies available to restore them. I am not sure if there are any other copies.

Question: Did you report to the company's executive management after you learned about the LOG file mentioned by Zhou Xinhong? If you did, to whom did you report? How did they respond?

Answer: At that time, I reported to my immediate supervisor, Chairman Hong, and strongly recommended that the employment contract with He Jianting and other people involved should be terminated immediately. However, attorney Chen Zhehong strongly objected to my recommendation. Attorney Chen Zhehong believed that those employee's testimonies would be uncontrollable if the relationship between UMC and its employees became tense. However, I thought that the best way to protect the company's interests was for the company to proactively and decisively make a clear cut with the employees who, based on internal investigation results, might be involved in any illegal activities prior to the end of the investigation.

Question: Did you talk to Chen Zhengkun about this matter, who was He Jianting and Li Fuzhe's supervisor?

Answer: No, because I am directly under the charge of Chairman Hong, and I did not need to refer to Chen Zhengkun's opinion.

Question: Has He Jianting been punished for this?

Answer: No, he was still employed by UMC when I left the company.

Question: Do you know if He Jianting handed in the laptop or the hard drive involved afterwards? To whom?

Answer: I don't know. After the prosecutor filed a public prosecution, UMC would no longer trust as it did before. That was why the entire legal department had been isolated from dealing with this case.

Question: At that time, did UMC take action to warn or require other employees not to engage in similar practices?

Answer: Of course, it did. As I mentioned earlier, I also held a course on trade secrets at that time. In fact, long before this case occurred, every new employee would be required to sign a confirmation letter on trade secrets. The confirmation letter not only warned those new employees not to bring the former employer's technical information to UMC but also served to educate about basic legal issues.

Question: Did you know that, in 2005, He Jianting applied for USB-enabled laptops, that is, UMC031525 and UMC030761, in order to avoid the company's IT investigation, and to access Micron's data at work after UMC had found out that he was holding a vast amount of Micron's data?

Answer: This was deduced by IT department staff when they were interviewed during the internal investigation. It was probably deduced by Zhou Xinhong or Wang Bangming because the two computers only appeared after the IT

department had found out He Jianting's abnormal data up and downloads.



I personally agreed with their opinion.

Question: Have you ever interviewed Chen Zhengkun or Rong Letian about the first part? Do you think Chen Zhengkun knew about them?

Answer: Rong Letian only learned about them afterwards. He didn't know the two computers even existed until the after search. I suppose Chen Zhengkun might have known, since applying for the two computers or granting USB permissions would have required his review and approval. However, I didn't directly question him on the existence of the two computers, nor did I mention them in a questioning tone, considering that he was also a senior executive.

Question: Were you aware that some UMC employees had stored Micron's confidential files on the company's devices in November or December 2015? If not in December 2015, when did you learn about this?

Answer: I didn't know. The subsequent internal investigation that followed indicated it was the HR department that had been informed, not the legal department. So, I didn't learn about this until the search.

Question: Did you find out which UMC employees were in possession of confidential Micron electronic files throughout the course of your internal investigation?

Answer: Even if prosecutors formally prosecute some employees, I am not sure whether these employees actually did possess electronic copies of Micron trade secrets. Everything I have learned has been based on indirect facts acquired through internal investigations and reasonable inferences based on the rule of thumb.

Question: Did you issue a written report following the completion of the internal investigation?

Answer: Yes, at least one report was issued to the audit committee, which itself is an organization required to be established by listed companies pursuant to the Securities and Exchange Act. Its statutory authority essentially that of a supervisor under Company Law.

Question: Was the report retained?

Answer: Of course. At the time it was stored on my company's computer, but I don't think it will be of much help to the criminal investigation, because it wasn't too detailed and primarily focused on when and why the case occurred and how it should be dealt with by the company. Another report, my regular monthly report to Chairman Hong, also mentioned this information.

Question: Were you aware that UMC employees had used or referred to other companies' confidential electronic files when designing and developing UMC's F32/F32S DRAM technology?

Answer: I refuse to testify on this part because the company internally had a variety of opinions at the time. Of course, the DRAM team wouldn't admit to such, but other R&D teams might see it differently. Some people still believe that the DRAM device structure had reached its physical limits and that it was difficult to achieve any breakthroughs in technological innovation without referring to currently known technologies. However, I am not an engineering professional, so I cannot confidently answer this technical question.

The prosecutor instructed the court to broadcast the audio recording "interview with Huang Wanjun" provided by the witness Huang Enxu and prompted for translation.

Question: Can you recognize the people taking in the recording?

Answer: Yes, I can recognize them.

Question: Is it a complete recording?

Answer: Yes.

Question: Who was talking in the recording?

Answer: Huang Wanjun and I, as well as my subordinate Huang Lanzhi, who was a senior manager. It was a conference call held at the time. I was the one asking the questions. Liao Weiming was also present, Huang Wanjun's immediate supervisor.

Question: Who were Louisa and senior vice president Chen?

Answer: Chen Zhengkun was the senior vice president, and Louisa was his secretary.



Question: How did you learn that over 25,800 files had been downloaded?

Answer: This is what I just said. There is an Excel file with a list of all the serial numbers.

Question: Is the translation of the recording correct?

Answer: Yes, it is correct. Only a few words are wrong. All internal investigation interviews were recorded. However, some of them were merely casual conversations between employees. I think only those related to criminal facts should be used as evidence. For example, the parts of Chen Zhengkun in this conversation were merely the legal department's or my own assumptions. We just felt that he dragged us into something, but weren't exactly sure what it was. Of course, from the perspective of crime and punishment, actual evidence should speak louder.

The prosecutor instructed the court to broadcast the audio recording "Micron case interview" provided by the witness Huang Enxu and prompted the translation.

Question: Who was involved in the interview?

Answer: Attorney Chen Zhehong, Guo Fengming, Liu Jiakun, and myself, but Liu Jiakun was an external lawyer, so he didn't say much.

Question: Who is Jockey?

Answer: I'm not sure they seem to be referring to their secretary in Tainan.

Question: In the conversation, did you not suggest that UMC keep those computers?

Answer: Attorney Chen Zhehong didn't take the issue seriously. I didn't think that anyone in UMC would consider withholding criminal evidence. In the conversation, I refuted attorney Chen Zhehong's idea that this matter should be taken lightly because he questioned my decision to hand over the first computer to your Office. I also questioned why Guo Fengming had still done this even after after he had completed the confirmation letter from the HR department. Additionally, I raised doubts about why Guo Fengming couldn't find out. But attorney Chen Zhehong insisted that he would talk to Louisa before doing anything.

Question: Who is Chen Yiyi (translated phonetically)?

Answer: One of Wang Yongming's coworkers. I'm not sure how to write this name.

Question: Have you ever seen the second computer?
Answer: Never, I only saw photos of the first computer.
Question: Did you find out later whom Guo Fengming gave the second computer to?
Answer: I'm not sure whether he gave it to Chen Zhengkun's secretary, like attorney Chen Zhehong's asked or not. I think it's likely that Guo Fengming had followed attorney Chen Zhehong instructions. I haven't seen Guo Fengming since then, and I didn't specifically ask Chen Zhehong whether the second computer had been given to Louisa, because I assumed he would have already taken care of it. My relationship with attorney Chen Zhehong was tense and antagonistic at the time, so I tried to avoid contact with him as much as possible.
The prosecutor ordered a temporary recess.
Question: How did the IT department show you the list of files they had found during the internal investigation in ROC 106?
Answer: Zhou Xinhong, together with another member from the IT department, showed me the files during the internal meeting using the projector in the company's internal conference room. The IT department then stored those files on a shared folder so that the legal department could access them at any time after the meeting.
Question: Who attended the meeting on that day?
Answer: Zhou Xinhong, Wang Bangming, attorney Chen Zhehong, attorney Hong Meifen, Huang Lanzhi, and I, as well as an employee under the charge of Zhou Xinhong. No one from the HR department attended the meeting that day.
Question: Did Zhou Xinhong claim that those files were found on internal UMC computers? Or did they find records on the server?
Answer: Zhou Xinhong and Wang Bangming found them on the computers allocated to He Jianting and Li Fuzhe after they discovered unusual data uploads and downloads.
Question: Do you recall ever hearing Zhou Xinhong and Wang Bangming mention that they only noticed these unusual uploads and downloads on the server?
Answer: They discovered them during monitoring and then looked for the specific computers. As I mentioned earlier, the computers involved were later confiscated by the IT department.



Question: Have you seen the original files?
Answer: No.
Question: Has any Excel file listing just the file names been kept?
Answer: I don't currently have the original file, this was kept by the IT department, and I never kept a copy of it. However, I did keep a record on my computer of all the files that mentioned Micron, but these are just my notes, and I can identify the original should UMC present it.
Question: At the time, did you actually tell the IT department that such data should be retained?

Answer: Yes, and Micron filed a civil suit against UMC in the United States District Court for the Northern District of California before I left in 2017. I also told my department that litigants are obliged to preserve any related evidence pursuant to the Federal Rules of Civil Procedure, and that they would be subject to an adverse presumption if they concealed or destroyed it. I am sure that the data was still on the same shared folder when I left.

Question: Did you retain the file with your notes?

Answer: I need to check again. But I would like to know what Wang Bangming said in his previous testimony. After all, I defended UMC in the previous case.

The prosecutor provided notice that the file concerned was important evidence in this case. If such file is still available, it must be submitted to the Office for reference.

Question: (The witness was informed of Wang Bangming's testimony on December 19, Year 107) What is your opinion?

Answer: As per UMC rules, this file is an internal company document and, in theory, ex-employees cannot retain it. However, since this document is so important, I might have kept a copy for future reference. I am willing to provide a printed copy as supplementary evidence after the court recess.

As a list of names of the related files was important evidence, the prosecutor ordered the witness to submit a copy of the document for later comparison with the data kept by UMC.

Question: Do you have anything else to say?

Answer: No.

The prosecutor dismissed the witness.

4:54 P.M., April 22, ROC 108

Please sign your name after reading and reviewing this transcript.

                The questioned  Huang Enxu

Clerk of Court Liu Jinmei

Prosecutor Wang Liangqin

