STEPHANIE M. HINDS (CABN 154284)
Acting United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

LAURA VARTAIN HORN (CABN 258485)
NICHOLAS WALSH (CABN 314290)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    Laura.Vartain@usdoj.gov
    Nicholas.Walsh@usdoj.gov

NICHOLAS O. HUNTER (DCBN 1022355)
STEPHEN MARZEN (NYBN 2007094)
Trial Attorneys, National Security Division

    950 Pennsylvania Ave., NW
    Washington, DC 20530
    Tel: (202) 353-3434
    Fax: (202) 233-2146
    Nicholas.Hunter@usdoj.gov
    Stephen.Marzen@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>FUJIAN JINHUA INTEGRATED CIRCUIT CO., LTD.,<br><br>    Defendant. | CASE NO. 18-CR-00465 MMC<br><br>UNITED STATES' MOTION IN LIMINE NO. 3<br><br>MOTION TO ADMIT DAMAGED HARD DRIVE PRODUCED BY UNITED MICROELECTRONIC CORPORATION, INC. |

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................ 1

RELEVANT BACKGROUND .................................................................................................... 2

ARGUMENT ................................................................................................................................ 4

    I.    The Damaged Hard Drive Is Properly Authenticated Based on UMC's Act of Production ........................................................................................................... 4

    II.   The Damaged Hard Drive's Chain of Custody Goes to The Weight of the Evidence, not the Hard Drive's Admission in Evidence ..................................... 5

CONCLUSION ............................................................................................................................. 6

## TABLE OF AUTHORITIES

### CASES

*Am. Fed. Of Musicians of U.S. & Can. v. Paramount Pictures Corp.*,
  903 F.3d 968 (9th Cir. 2018) ............................................................................................... 4

*Braswell v. United States*,
  487 U.S. 99 (1988) ............................................................................................................... 5

*Burgess v. Premier Corp.*,
  727 F.2d 826 (9th Cir. 1984) ............................................................................................... 4

*Orr v. Bank of Am., NT & SA*,
  285 F.3d 764 (9th Cir. 2002) ............................................................................................... 4

*Tyco Thermal Controls, LLC v. Redwood Industrial, LLC*,
  2012 WL 2792435 (N.D. Cal. July 9, 2012) ...................................................................... 5

*United States v. Black*,
  767 F.2d 1334 (9th Cir. 1985) ............................................................................................. 4

*United States v. Hubbell*,
  530 U.S. 27 (2000) ............................................................................................................... 5

*United States v. Matta-Ballesteros*,
  71 F.3d 754 (9th Cir. 1995) ................................................................................................. 5

*United States v. Oriho*,
  969 F.3d 917 (9th Cir. 2020) ............................................................................................... 5

*United States v. White*,
  2021 WL 4929082 (M.D. Ala. Oct. 21, 2021) .................................................................... 6

*United States v. Whitworth*,
  856 F.2d 1268 (9th Cir. 1988) ............................................................................................. 6

*Yongo v. I.N.S.*,
  355 F.3d 27 (1st Cir. 2004) .................................................................................................. 4

### RULES

Fed. R. Evid. 901(a) .................................................................................................................. 4

# INTRODUCTION

As described in more detail in United States' Motion *in Limine* No. 2, Defendant Stephen Chen approved two off-network laptops at United Microelectronic Corporation, Inc. ("UMC"), at the start of his efforts to develop Dynamic Random Access Memory ("DRAM") for Project M. He approved those so-called "public-use" laptops knowing and intending that Defendant J.T. Ho and another engineer named Neil Lee (aka, Li Fuzhe) would use those laptops to access Micron's DRAM manufacturing-process trade secrets for use by Defendant Fujian Jinhua Integrated Circuit Company, Ltd. ("Jinhua").

When investigators from the Taiwan Ministry of Justice Investigation Bureau ("MJIB") performed surprise searches at UMC in February 2017, Defendant J.T. Ho and Project M engineer Guo Fengming (aka, Ray Guo) concealed those laptops so MJIB law-enforcement officers would not find them. Investigators eventually seized one of the laptops. Project M employees disappeared the second laptop.

Pursuant to its plea agreement with the United States, UMC's outside counsel conducted an internal investigation into the disposition and whereabouts of that laptop. UMC Plea Agreement ¶ 9e (Dkt. 148). At the conclusion of that investigation, UMC produced a hard drive that appears to have been physically destroyed with a blunt instrument ("the damaged hard drive"). UMC witnesses with knowledge of the destruction of the hidden public-use laptop and the destruction of its hard drive—all of whom reside in Taiwan and are thus outside the subpoena power of the United States—are unavailable to the United States.

Because witnesses with first-hand knowledge are unavailable, the United States seeks to authenticate the actual physically damaged hard drive based on UMC's act of production after an internal investigation. For purposes of authentication, the United States will present testimony that the damaged hard drive was the hard drive that UMC produced as result of an internal investigation into the disposition and whereabouts of the second public-use laptop. The United States therefore moves *in limine* to admit the physical hard drive *de bene* subject to the testimony described herein.

**RELEVANT BACKGROUND**

At trial, the United States intends to prove that in December 2015, Defendant Stephen Chen—a Senior Vice President at United Microelectronics Corporation ("UMC") and the would-be *de facto* and formal chief executive of Jinhua—approved two off-network, USB-enabled laptops for JT Ho and an engineer named Neil Lee so that they could access trade secrets they stole from their former employer, Micron Technology Inc. ("Micron"). Chen approved those so-called "public use" laptops around the same time UMC's information-technology ("IT") department inquired with Chen about suspicious USB file-transfer activity involving Ho and Lee. UMC's IT department provided Chen a log file indicating that Ho and Lee were using USB devices to access files with Micron file names. Eventually, at least Ho, Defendant Kenny Wang, Neil Lee, and potentially Chen himself, used the public-use laptops to access Micron's trade secrets without further detection or recording by UMC's IT department. *See, e.g.*, Ex. A at 22-25, (Translation of 2/14/2017 Interview of J.T. Ho); Ex. B at 7-8 (Translation of 12/19/2018 Interview of UMC IT manager Wang Bang Ming).

The MJIB executed a series of judicially authorized searches of UMC beginning on February 7, 2017. Upon hearing that investigators were coming, Ho gave his public-use computer to another UMC employee, Huang Shuhan (aka Emily Huang), for safekeeping. *See* Ex. A at 21-23. Upon the advice of UMC's in-house counsel David Huang (aka Huang Enxu), however, Huang Shuhan turned that laptop in to Taiwan authorities the following day. *See* Ex. C at 6 (Translation of 12/19/2018 Interview of Huang Shuhan); Ex. D at 3-4 (Translation of 4/22/2019 Interview of David Huang). The United States intends to prove that UMC hid the second public-use laptop originally issued to Neil Lee ("Public Laptop 2")— the same public-use laptop that Chen had used at least in June 2016. *See* Ex. E (Translation of excerpt of LINE chat between Ho and Wang).

Pursuant to its plea agreement with the United States, UMC agreed to "[c]onduct[] an internal investigation by a reputable international law firm into the disposition and current whereabouts of Public Laptop 2." UMC Plea Agreement ¶ 9e (Dkt. 148). After conducting that investigation, UMC produced through counsel to the United States a hard drive that someone had physically destroyed, apparently with a hammer or similar blunt instrument. A photograph of the damaged hard drive obtained from

1  UMC appears below:



The damaged hard drive was damaged to such an extent that the United States cannot even attempt to access the data on it without the application of advanced techniques, which are not guaranteed to work and which would result in further destruction of the hard drive to access its internal mechanisms.

Witnesses with first-hand knowledge of the damaged hard drive—all of whom reside outside the United States and therefore outside the subpoena power of the United States—are unavailable to testify. Despite the unavailability of witnesses, the United States has recorded audio evidence about Public Laptop 2 and its destruction. Those recordings are the subject of the United States Motion *in Limine* No. 2.

UNITED STATES' MOT. IN LIMINE NO. 3
MOT. TO ADMIT DAMAGED HARD DRIVE
18-CR-00465 MMC                                            3

## ARGUMENT

**I.       The Damaged Hard Drive Is Properly Authenticated Based on UMC's Act of Production**

To establish the authenticity of the damaged hard drive, the United States "must produce evidence sufficient to support a finding that the item is what the [United States] claims it is." Fed. R. Evid. 901(a). "The government need only make a *prima facie* showing of authenticity, as the rule requires only that the court admit evidence if sufficient proof has been introduced that a reasonable juror could find in favor of authenticity or identification." *United States v. Black*, 767 F.2d 1334, 1342 (9th Cir. 1985) (internal quotations omitted).

The damaged hard drive is the hard drive UMC produced as the result of an internal investigation into the disposition of Public Laptop 2. At trial, the United States intends to establish that fact through the testimony of its lead FBI case agent. The FBI case agent will testify that UMC agreed with the United States to conduct that internal investigation. The FBI case agent will not refer to UMC's guilty plea or the plea agreement in which UMC agreed to undertake the investigation. The FBI case agent will then testify that, upon concluding its investigation of the whereabouts of Public Laptop 2, UMC produced the damaged hard drive to the United States representing that it was the hard drive from Public Laptop 2. Because the United States has been unable to access the data in the damaged hard drive hard drive, it will not seek to introduce evidence of its content at trial.

Such evidence about an act of production is sufficient to authenticate evidence under Rule 901. *See, e.g.*, *Am. Fed. Of Musicians of U.S. & Can. v. Paramount Pictures Corp.*, 903 F.3d 968, 976 (9th Cir. 2018) (jury could find email was authentic based on distinctive characteristics "plus the fact that it was produced . . . in discovery"); *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 777 & n.21 (9th Cir. 2002) (for evidence to be "authenticated by way of production in discovery" the proponent needed to identify who produced the evidence); *Black*, 767 F.2d at 1342 (authentication of evidence that was in defendant's "possession at the time the government sought its production"); *Burgess v. Premier Corp.*, 727 F.2d 826, 835-36 (9th Cir. 1984) (no error admitting documents "authenticated only by the fact that they were found in" a corporation's warehouse); *Yongo v. I.N.S.*, 355 F.3d 27, 31 (1st Cir. 2004) (German immigration records authenticated by testimony of agent as to source of records and familiarity

with appearance of such records); WRIGHT & GOLD, FED. PRACTICE & PROCEDURE: EVIDENCE § 7105 ("Authentication also can be accomplished through judicial admissions such as . . . production of items in response to subpoena or other discovery requests.").

It is settled law that the act of production is a testimonial act of authentication subject to the Fifth Amendment right against self-incrimination. "The jury may draw from [a] corporation's act of production the conclusion that the records in question are authentic corporate records, which the corporation possessed, and which it produced in response to [a] subpoena." *Braswell v. United States*, 487 U.S. 99, 118 (1988). For purposes of authentication under Rule 901, there is no relevant distinction between producing records pursuant to a subpoena and pursuant to an internal investigation conducted as part of a plea agreement. *See also United States v. Hubbell*, 530 U.S. 27, 36 n.19 (2000) ("[B]y producing document in compliance with a subpoena, the witness would admit that the papers existed, were in his possession or control, and were authentic."); *United States v. Oriho*, 969 F.3d 917, 924 (9th Cir. 2020) (same).

*Tyco Thermal Controls, LLC v. Redwood Industrial, LLC*, 2012 WL 2792435 (N.D. Cal. July 9, 2012) (Armstrong, J.) is instructive. In *Tyco*, the court admitted an unsigned copy of a release agreement that a party obtained from the historical files of a law firm that previously represented the party's predecessor-in-interest. The court held that a declaration from an attorney at the firm stating that he found the unsigned release agreement in the firm's files was sufficient to authenticate the document as "a copy of an unsigned Release Agreement found in the files [the predecessor-in-interest's] former counsel." *Id.*

Similarly, the United States seeks to authenticate the damaged hard drive as an item UMC produced after its outside counsel conducted an internal investigation into the disposition of Public Laptop 2. The United States will establish those facts through the testimony of its FBI case agent at trial. As in *Tyco*, such testimony about the act of production is sufficient to authenticate the drive.

## II. The Damaged Hard Drive's Chain of Custody Goes to The Weight of the Evidence, not the Hard Drive's Admission in Evidence

The United States is not required to prove a perfect chain of custody for the Court to admit the damaged hard drive. It is well-established that defects in the chain of custody go to the weight of the

UNITED STATES' MOT. IN LIMINE NO. 3
MOT. TO ADMIT DAMAGED HARD DRIVE
18-CR-00465 MMC                                5

evidence, not its admissibility.  *See, e.g., United States v. Matta-Ballesteros*, 71 F.3d 754, 769 (9th Cir. 1995).  The United States "can prove the connection of physical evidence to a defendant" by means other than a complete chain of custody, including by circumstantial evidence.  *Cf. United States v. White*, 2021 WL 4929082, at *1 (M.D. Ala. Oct. 21, 2021) (government could establish authenticity by other means after confidential informant who bought drugs became unavailable to authenticate the drugs).  Here, the direct production of the damaged hard drive from UMC itself is sufficient to establish a connection.

At trial, Jinhua will be free to question the FBI case agent about the weight of the evidence and make arguments in closing about its relative worth as a piece of evidence, but under the established case law described above, Jinhua cannot prevent the admission of the damaged hard drive in evidence.  *See United States v. Whitworth*, 856 F.2d 1268, 1282–83 (9th Cir. 1988) ("Evidence is admissible under Rule 901(a) once a prima facie case has been made on the issue…," and once a prima facie case has been made, "the matter is committed to the trier of fact to determine the evidence's credibility and probative force.").

## CONCLUSION

For the reasons set forth above, the United States respectfully requests that the Court grant the United States' Motion *in Limine* and issue an order admitting the damaged hard drive *de bene*, subject to the testimony of the United States' FBI case agent regarding UMC's agreement with the United States to have its outside counsel conduct an internal investigation into the disposition of Public Laptop 2 and that UMC thereafter produced the hard drive upon completion of that investigation.

Dated: December 1, 2021

Respectfully Submitted,

STEPHANIE M. HINDS
Acting United States Attorney

 */s/ Nicholas O. Hunter*
LAURA VARTAIN HORN
NICHOLAS WALSH
Assistant United States Attorneys

NICHOLAS O. HUNTER
STEPHEN MARZEN
Trial Attorneys, National Security Division