# Exhibit D

# Interrogation Record

The Trade Secrets Act, No. 1 of Year 107 of the Republic of China Cooperation with the United States Zi No. 1 and 7707, at 10: 13 a.m. on April 22, Year 108 of the Republic of China, in Taiwan Taichung District Public Prosecutors Office.

The staff who attended the interrogation in the No. 1 Investigation Room were as follows:

Prosecutor Wang Liangqin, Clerk Liu Jinmei

The following people were present:

The witness was summoned and made their appearance

The prosecutor asked the witness for their name, age, nationality, address, and unified national identity card number.

Witness responded

Huang Enxu, born on ▬▬▬▬▬ 1963.

Unified national identity card number: ▬▬▬▬▬

Address: ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

Taoyuan City

The prosecutor informed the witness of the applicable provisions specifying when he may refuse to testify:

Section 180 of the Code of Criminal Procedure provides that:

The witness may refuse to testify in any of the following circumstances:

I. If they are or have been, either the spouse, lineal consanguinity, collateral consanguinity within three generations, an in-law, or a parent or family member related within the second degree of the defendant or the private prosecutor.

II. If they are engaged to either the defendant or the private prosecutor.

II. If they are currently, or previously have been, a statutory representative for the defendant or the private prosecutor; or, are or a statutory representative of the defendant or the private prosecutor.

A co-defendant or private prosecutor cannot refuse to testify if any of the aforementioned relationships exist between them and another co-defendant or private prosecutor, and they are only a witness on matters that concern a co-defendant or a private prosecutor.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

As provided in Section 181 of the Code of Criminal Procedure:

A witness may refuse to testify if they are concerned that their testimony could incriminate either themselves or an individual that they share one of the aforementioned relationships with.

[Seal of Taiwan Taichung District Public Prosecutors Office]

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

As provided in Section 182 of the Code of Criminal Procedure:

Witnesses who are business associates of, currently are themselves, or previously have been: doctors, pharmacists, midwives, chaplains, lawyers, defenders, public notaries, or accountants may refuse to provide their testimony if they are questioned about matters that relate to another person's confidential information that is known to them as a result of their occupation, except when they have otherwise been given permission to reveal that information.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Article 33 of the Attorneys' Code of Ethics

Lawyers must keep their assignment information strictly confidential and must not disclose any such information. However, this restriction does not apply to the client's future criminal intentions and plans; or the client's continuation of ongoing criminal acts that may cause harm to the life or health of any third party.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Question: Are you aware of the above provisions?

Answer: Yes, I am. I will make an affidavit in compliance with the law concerning specific information about the United Microelectronics Corporation's (UMC) secrets.

Questions: Are you willing to testify?

Response: Yes.

The prosecutor informed the witness of his obligation to make an affidavit and the punishment for perjury. He then asked the witness to sign the affidavit and read it aloud.

Questions: What are your current employment circumstances?

Response: Currently, I serve as the General Counsel of Wuhan Xinxin Integrated Circuit Manufacturing. LLC

Questions: Where were you employed before that? Can you list your previous employers (until 2015) and your job title in each company?

Response: From June 18, 2012, until December 31, 2017, I was employed by UMC as Senior Director of its intellectual property law division. On June 18, 2012, I was employed by Qisda Technologies Corporation and served as their General Counsel.

Questions: UMC was searched on two occasions by investigators with warrants, as ordered by the Taichung District Prosecutors Office; on February 7 and 14, Year 106 of the Republic of China. Were you present for both searches?

Response: On those particular two days, I went back to Tainan from Hsinchu after I received

messages from manufacturers in Tainan, and when I arrived at the company, the searches were about to end. It was close to the end of the day that is, I assume, after 5 pm.

Questions: Could you please describe the circumstances of the search?

Response: There were two searches. The first happened on February 7, Year 106. I was aware that an Assistant Engineer, Huang Shuhan, had been caught in the act and arrested. Several Tainan factory employees, including He Jianting and Wang Yongming, were interrogated overnight. As my expertise focused on patent litigation and transactions, it was attorneys Chen Zhehong and Hong Meifen, who were there accompanying them during the interrogation. The two attorneys were hired from outside the company but were not selected by the legal department.

Questions: Who hired those two attorneys?

Response: Attorney Chen Zhehong has been acquainted with the chairman of Liandian Company for many years. He has taken over almost all the traditional litigation cases in Taiwan. Attorney Hong Meifen, however, was appointed temporarily by chairman Hong in Tainan because he didn't know any other attorneys in Tainan. Attorney Hong Meifen did not have close ties with UMC before this. It is said that their younger brother was a former employee of chairman Hong.

Questions: What happened after those searches?

Response: After the search, the intellectual property law division, informally known as the law division, initiated an internal investigation with attorney Chen Zhehong to find out whether any infringement of any other third party's business secrets actually had occurred within the company.

Questions: Did you know that Huang Shuhan handed in a laptop (No. UMC030761) and other storage devices after the Prosecutors Office's initial search on February 7, Year 106?

Response: Of course, I knew that Huang Shuhan was caught in flagrante delicto and arrested by the public prosecutor, but he was not detained because the detention application was not approved.  [Translation note: the civil law term is described in the Oxford Dictionary of Foreign Terms Used in Englishas "indicate that a criminal has been caught in the act of committing an offence," text viewable online at https://en.wikipedia.org/wiki/In_flagrante_delicto] After Huang Shuhan returned to the company, he handed some incriminating evidence over to his immediate supervisor. I don't quite remember who the supervisor was. The evidence included a pile of printed documents and a laptop. The department Huang Shuhan worked in didn't know how to handle it, so the

[Seal of Taiwan Taichung District Public Prosecutors Office]

evidence was left for the law division. The evidence was packed in a carton and then sent to the legal affairs office by company car. I have only heard Huang Shuhan describing what was in the carton. I Considered the provisions for spoliation of evidence in Article 165 of the Criminal Law and the requirements of Article 23 of the Attorneys' Code of Ethics, the law division could not hide or destroy criminal evidence for employees who might have committed illegal acts. Additionally, Huang Shuhan's own criminal liability was also considered. After several considerations, I instructed Fang Yuping, the secretary of the law division, to accompany Huang Shuhan to hand over the potential criminal evidence to your office.

Questions: So it was you who asked Huang Shuhan to send the laptop (No. UMC030761) and other storage devices to our office?

Response: Yes.

Questions Who did you discuss this decision with? Did the UMC chairman, President, and other executives know? Did they agree with you?

Response: The situation was urgent at the time. So, after making the decision, I reported to Hong Jiacong, UMC chairman. While chairman Hong had no objections, attorney Chen Zhehong made it clear that this was not a wise move. However, the evidence had already been submitted. In fact, attorney Chen Zhehong objected the night before, but this was my decision to make as I supervised the internal law division after all. I firmly believed that it was in the best interests of UMC Company at the time. This was a company that employed over 16,000 employees. Things can't be hidden forever, and hiding evidence for company employees was not the best way to solve the problem.

Questions: Did UMC check whether there were any other company employees who held Micron or other companies' trade secrets or documents after the search?

Response: As far as the law division is concerned, it did, in fact, explicitly warn the IT department to further improve data security and confidentiality. Following the search, I personally traveled south to Tainan to hold an internal training course on trade secret law and made it mandatory for all employees of departments involved in the case to attend.

Questions: Did UMC's IT (Information Technology) department carry out a thorough search and investigation of the files stored in employees' computers? Were company employees required to inform the legal department if they held any Micron trade secrets?

Response: As far as I knew, the IT department had been closely monitoring company computers

for any unusual file uploads or downloads. This was not only for Micron but also due to data breach concerns. The department would also check whether the employees had taken any technical documents from their former company or employers. This is what I know about the IT department. However, I believe there was a gap between the ideal and actual effectiveness of the implementation, and it was difficult to completely prevent other companies' documents from making their way into the company.

Questions: Was Wang Bangming the IT Department's highest level director at the time?

Response: Yes.

Questions: Did you personally carry out an internal investigation of UMC regarding the Micron trade secret case following the aforementioned searches?

Response: Yes.

Questions: How was the internal investigation carried out at the time? Who interviewed who? Were only the defendants charged in the case, or was there anyone else?

Response: Most of the internal investigation activities were led by attorney Chen Zhehong, such as I have never personally met Wang Yongming and don't know what he looks like. The internal investigation carried out by the law division primarily interviewed former Micron Taiwan employees. Even though Yongming Wang is one as well, he hadn't returned to the company since he was searched. It is also possible that I didn't know if he has been in the Company. As far as I know, Wang Yongming had made several visits to attorney Chen Zhehong's office in Taipei, but I don't know exactly how many times he visited. Furthermore, the employee to whom one of the two laptops was issued was interviewed, and the purpose of the interview was to clarify the application procedure and how the laptops were actually used.

Question: How did you know how many computers were involved?

Answer: The first computer was handed in by Huang Shuhan. As mentioned earlier, the computer had been handed over to your office. The other computer was mentioned by a former Micron employee during the interview.

Question: Who mentioned it?

A: I don't remember their specific name at the moment. However, I kept audio recordings throughout the subsequent internal investigations, which prove that I did not tamper with criminal evidence or do anything illegal as attorney Chen Zhehong had expressed strong doubts regarding my handling of the first computer. I believe the employee's name will be mentioned in the recordings.

Questions: How many employees were subsequently interviewed?

Response: At least four were formally interviewed. I clearly remember He Jianting and an employee to whom one of the laptops was issued who, in my memory, was a female secretary. I also talked with others, including one of the defendants, Rong Letian, but he was not a former Micron employee. I found out about the second computer during formal interviews with former Micron employees. Apart from Rong Letian, others informally interviewed include Chen Zhengkun, and attorney Chen Zhehong should have interviewed more UMC employees.

Questions: Do you know what UMC's rules are regarding the use of USB drives by employees? Are they required to file an application? What is the application procedure?

Response: USB drives are, in principle, restricted, and their use is not permitted. Employees needing permission to use USB drives to upload or download a large number of files as part of their work are required to file an electronic application.

Questions: According to He Jianting's previous testimony to our Office, both he and Li Fuzhe had applied to Chen Zhengkun for a shared laptop that could read USB drives. Some IT department staff also knew about this. Were you aware of this? When did you find out?

Response: On this issue, I am permitted to refuse to testify pursuant to Article 182 of the Code of Criminal Procedure.

Questions: According to He Jianting's testimony to the Office, the shared laptop with USB capabilities he applied for and kept was UMC030761. He Jianting, Wang Yongming, and Li Fuzhe have all used the USB function of that computer to read data, and both Wang Yongming and He Jianting admitted they had used this computer for Micron data that they brought in from Micron. Were you aware of that?

Response: As before, I am permitted to refuse to testify on this issue pursuant to Article 182 of the Code of Criminal Procedure.

Questions: Did you know at that time that the laptop, with the serial number UMC030761, presented by Huang Shuhan, was the one that He Jianting, as he mentioned just now, applied for and used to read Micron Technology's data?

Response: Ibid., regarding this issue, let me refuse to testify according to article 182 of the criminal procedure law.

Questions: Then, at that time, did you know that the other public laptop, which may have enabled USB functionality, has not been found by our Office?

Response: Yes.

Questions: Guo Fengming was Wang Yongming's supervisor. Was he one of your internal

investigation targets at that time? Do you remember when you interviewed Guo Fengming? Who participated in the investigation at the time?

Response: This name rings a bell. The participants would be: me, Guo Fengming, and the lawyer Chen Zhehong, as well as the lawyer Liu Jiakun, who was employed by Chen Zhehong, and currently serves as a judge.

Questions: Do you know whether it was Guo Fengming or Li Fuzhe that was responsible for the UMC031525 laptop back then?

Response: I don't know who the custodian was, but I learned of this laptop's existence when I was interviewing Guo Fengming.

Questions: Do you remember when you interviewed Guo Fengming?

Response: Between the first and second searches.

Questions: Did Guo Fengming tell you how he used this laptop, or what its purpose was at the time?

Response: I'm not sure whether it was Guo Fengming, who told me about it. As far as I know, the company's IT Department would normally monitor employee computers, so Guo Fengming's department applied for the two laptops privately, in order to evade the monitoring.

Questions: (Prompted with evidence, the 50A Hardware Application Form) Do you know what this document is?

Response: From its name, this was the form all departments used to apply to the IT Department for laptops.

Questions: Is the UMC030761 laptop recorded in the document the laptop you asked Huang Shuhan to hand over to our office?

Response: I don't remember its specific serial number, but I think it is one of the two laptops.

Questions: Is the UMC031525 laptop recorded in the document the laptop once kept by Li Fuzhe and Guo Fengming?

Response: I don't really remember the serial number. I know one of the laptops was handled by the lawyer Chen Zhehong.

Questions: He Jianting previously testified to our office that he and Li Fuzhe had each filed an application with Chen Zhengkun for a public laptop. Are these two laptops numbered UMC031525 and UMC030761?

Response: I have never met Li Fuzhe in person. They have never told me personally that they made applications to Chen Zhengkun.

[Seal of Taiwan Taichung District Public Prosecutors Office]

Questions: The application form used reads "12 VIP User Common Needs." Do you know what that means?

Response: I think this application form's stated purpose was just something made up, and not the true reason. Who was the VIP? VIP should refer to clients or other important visitors. However, following my internal investigation, it was discovered that the two laptops had existed for a long time, and were not just for temporary use.

Questions: The application date on this form is December 8, 2015, indicating that the application was made long before the crime was committed. Did your investigation find out who handled the application at the time? And who approved it?

Response: According to the application form, it was an HR Department employee, with the surname Huang, who applied. Therefore, this employee was also a subject of the law division's internal investigative interviews. As for who approved the application, I don't remember now.

Questions: Is this employee's name Huang Wanjun?

Response: It should be, according to the information on the application. The law division interviewed her.

Questions: Do you remember who took part in the interview with Huang Wanjun? Is there any recording of that interview?

Response: There was a recording. The participants included my subordinate, Huang Lanzhi, and Huang Wanjun's supervisor, whose name I can't remember.

Questions: Through the course of the investigation, as far as you know, who else within United Microelectronics knew about these two laptops?

Response: I'm sure many of my colleagues in other departments knew about them. For example: in the IT Department, as this is something they're in charge of. Or, in He Jianting's department, as they were the ones who used the two laptops.

Questions: Do you know who the last person was that was using the UMC031525 laptop? Do you know where that laptop is now?

Response: The lawyer Chen Zhehong, said that he would ask the secretary Chen Zhengkun, to handle the laptop during the interview with Guo Fengming. As for how it was to be handled, I'm not sure. I have the audio file of the recorded interview at that time (Presented sections of the sense-for-sense translations to the court). [stamp][stamp of Liu Jinmei]

Questions: Please explain who the speakers were in the two translations?

Response: This is part of the interview with Guo Fengming, mentioned before.

Questions: Are there any sound recording files?

Response: Yes, I can play a segment in court now if necessary.

Questions: Could you submit it to our office for review?

Response: Yes.

Questions: What made you decide to record the interview, at that time?

Response: As mentioned earlier, the lawyer Chen Zhehong questioned the way I handled the first laptop. However, the disposing of the company's internal criminal evidence could cause me to be subjected to criminal prosecution. So, this was one of my motives for recording internal investigations. Additionally, the law division had a practice of recording any internal investigations involving employee conduct infractions, or any conference discussions on patent infringement or disputes.

Questions: During your interview, did Guo Fengming tell you the whereabouts of the UMC031525 laptop after United Microelectronics' premises were searched? Was the laptop still there at the time of the interview? Did Guo Fengming give the laptop to you or to the United Microelectronics' Legal Department?

Response: My memory is that Guo Fengming mentioned this laptop during the interview and said that he had formatted it. However, this was just his personal oral statement, and he didn't give me the laptop.

Questions: Did Guo Fengming tell you what information was stored on the 525 laptop?

Response: I don't remember whether he clearly described the information stored on the laptop, but this laptop does exist.

Questions: Did Guo Fengming mention that the laptop had Micron Technology documents stored on it?

Response: He only mentioned that he would format the data and even suggested destroying the laptop, but I personally never saw or heard that Micron Technology documents were stored on it.

Questions: Did Guo Fengming tell you what he did with the laptop?

Response: According to the interview at the time, lawyer Chen Zhehong asked Guo Fengming to hand over the laptop to secretary Chen Zhengkun.

Questions: Did you ask Guo Fengming to turn in the laptop, or did you give him any suggestions as to what to do with it after you learned that he still had the laptop?

Response: Since my way of dealing with the first laptop was strongly questioned, at the time, I didn't expressly suggest we should take the initiative to hand the laptop over for review to show the company's intolerant attitude towards illegal acts. However, I did repeatedly say throughout the interview that formatting the laptop or dealing with the matter privately with the company wasn't a wise decision.

[Seal of Taiwan Taichung District Public Prosecutors Office]

Questions: Did the UMC's senior management know about this at the time? Did other people in the Legal Department or the company's external lawyers have anything to say about this?

Response: I believe that UMC senior management did know about this. I personally reported the first laptop but didn't explicitly report the second one, so them knowing is just my own guess. First, chairman Hong gradually excluded the law division from the investigation of this case following the first incident. The law division wasn't even aware of the direction of the defense. Second, the law division was abruptly demoted within the company's organizational structure from a first-level unit controlled by the Chairman to a small unit controlled by the HR Department. The reason given in the written document was that the Chairman was too busy with his job duties and thus had no time to manage the law division. However, it had been a first-level unit for years, and I hadn't been otherwise negligent . Thus, I believe that this abrupt downgrading was related to the way the case was handled.

Questions: Why didn't you ask Guo Fengming to give you the laptop first and then to us as in Huang Shuhan's case? What was the company's final decision on dealing with the laptop?

Response: As I said earlier, I was always against keeping the laptop at the company. I had definitely mentioned my concern, though I can't remember exactly when, whether it was during a phone call or in my report of the internal meeting. The company ultimately never clarified how it would be dealt with. I mentioned that the way we dealt with the first laptop was in the company's best interests in one of the meetings or phone calls. I also tried my best to gain Chairman Hong's understanding and trust and to prove that I wasn't an irresponsible coward.

Questions: Who else at UMC knew about the case concerning the second laptop? Did you report this to Chen Zhengkun? Or to the board of directors?

Response: Some people must have known about it. I had no contact with Chen Zhengkun, as I didn't have a working relationship with him. I personally reported case developments to the audit committee following the search, and the committee had an agenda. I didn't expressly mention the two laptops, but they were the company's property, so the IT Department must have known about them. I also believe that Guo Fengming wasn't the only one who knew this.

Questions: Did Guo Fengming later hand this laptop over to the law division? Or to lawyer Chen Zhehong?

Response: I don't know.

Questions: Is this laptop still at UMC?

Response: I'm not sure.

Questions: Are your previous statements true? Did you instigate or help Guo Fengming to hide the laptop
?

Response: They are true, and I didn't solicit or aid Guo Fengming in hiding the second laptop because I didn't approve. However, I didn't explicitly stop it. It was after all not an open investigation investigation, and maybe lawyer Chen Hongzhe's concealment of criminal evidence could help UMC evade criminal liability.

Questions: You just mentioned that you have audio recordings of the internal investigations. Did you bring them to court and could you give them to us for the investigation?

Response: I currently only have recordings of Guo Fengming's and Huang Wanjun's interviews. I cannot provide you with any other parts of the recordings because they include my suggestions for UMC's defense strategy in the previous case (a USB flash drive was presented to the court).

The court recessed for lunch.

11:56 A.M. April 22, ROC 108

Please sign this record after reviewing it to confirm that it is free of any errors.

                                              Interviewee Huang Enxu

Court Clerk Liu Jinmei

Prosecutor Wang Liangqin

[Seal of Taiwan Taichung District Public Prosecutors Office]