STEPHANIE M. HINDS (CABN 154284)
Acting United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

LAURA VARTAIN HORN (CABN 258485)
NICHOLAS WALSH (CABN 314290)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    Laura.Vartain@usdoj.gov
    Nicholas.Walsh@usdoj.gov

NICHOLAS O. HUNTER (DCBN 1022355)
STEPHEN MARZEN (NYBN 2007094)
Trial Attorneys, National Security Division

    950 Pennsylvania Ave., NW
    Washington, DC 20530
    Tel: (202) 353-3434
    Fax: (202) 233-2146
    Nicholas.Hunter@usdoj.gov
    Stephen.Marzen@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br> v.<br><br>FUJIAN JINHUA INTEGRATED CIRCUIT CO., LTD.,<br><br>    Defendant. | CASE NO. 18-CR-00465 MMC<br><br>UNITED STATES' REPLY IN SUPPORT OF MOTION *IN LIMINE* FOR AN ORDER FINDING EVIDENCE OBTAINED FROM TAIWAN AUTHENTIC PURSUANT TO THE UNITED STATES' MUTUAL LEGAL ASSISTANCE AGREEMENT WITH TAIWAN AND RULE 901 |

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................ 1

ARGUMENT .............................................................................................................................. 1

    I.     The Government Has Identified with Particularity the Evidence it Seeks to Authenticate ........................................................................................................... 1

    II.    The Taiwan Evidence is Self-Authenticating Under Article 10 of the U.S.-Taiwan MLAA ..................................................................................................... 2

    III.   The Search-And-Seizure Certificates Are Admissible Evidence Sufficient To Establish The Authenticity Of Taiwan Evidence ............................................... 4

    IV.   Authenticating the Evidence Based on the Certificates Will Not Violate Jinhua's Confrontation Rights ............................................................................. 6

    V.    Jinhua's Remaining Arguments Ask the Court to Invade the Province of the Jury by Weighing the Evidence of Authenticity ................................................... 6

CONCLUSION ........................................................................................................................... 9

i

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Gallego v. United States*,
  276 F.2d 914 (9th Cir. 1960) ............................................................................... 8

*Melendez-Diaz v. Massachusetts*,
  557 U.S. 305 (2009) ......................................................................................... 6, 7

*Messih v. Mercedes-Benz USA, LLC*,
  2021 WL 2588977 (N.D. Cal. June 24, 2021) (Orrick, J.) ................................ 5

*Raphaely Int'l, Inc. v. Waterman S.S. Corp.*,
  972 F.2d 498 (2d Cir. 1992) .............................................................................. 3

*United States v. Anekwu*,
  695 F.3d 967 (9th Cir. 2012) ............................................................................ 6

*United States v. Calhoun*,
  No. 6:15-CR-16, 2015 WL 7769619 (E.D. Tex. Nov. 9, 2015) ........................ 8

*United States v. Denton*,
  944 F.3d 170 (4th Cir. 2019) ............................................................................ 6

*United States v. Doyle*,
  130 F.3d 523 (2d Cir. 1997) .............................................................................. 3

*United States v. Harrington*,
  923 F.2d 1371 (9th Cir. 1991) .......................................................................... 7

*United States v. Kilpatrick*,
  No. 10-20403, 20-WL-3236727 (E.D. Mich. Aug. 7, 2012) ............................. 6

*United States v. Luna*,
  649 F.3d 91 (1st Cir. 2011) ............................................................................... 7

*United States v. Matta-Ballesteros*,
  71 F.3d 754 (9th Cir. 1995) ........................................................................... 4, 7

*United States v. Morgan*,
  505 F.3d 332 (5th Cir. 2007) ............................................................................ 6

*United States v. Nelson*,
  ---F. Supp. 3d ----, 2021 WL 1391591 (N.D. Cal. April 13, 2021) (Chen, J.) ........ 4

*United States v. Robinson*,
  967 F.2d 287 (9th Cir. 1995) ............................................................................ 7

*United States v. Summers*,
 666 F.3d 192 (4th Cir. 2011) ............................................................................................ 7

*United States v. Tatum*,
 548 F.3d 584 (7th. Cir. 2008) ........................................................................................... 7

*United States v. Wolfenbarger*,
 2021 WL 3475713 (N.D. Cal. Aug. 6, 2021) (Koh, J.) ...................................................... 5

*United States v. Yeley-Davis*,
 632 F.3d 673 (10th Cir. 2011) ....................................................................................... 6, 7

**Other Authorities**

Fed. R. Evid. 902(3), (4), (11), (13), (14) ................................................................................... 3

Fed. R. Evid. 902(11) ............................................................................................................. 4, 6

Fed. R. Evid. 104 ......................................................................................................................... 9

Fed. R. Evid. 901 ............................................................................................................... 4, 5, 6

**INTRODUCTION**

The United States has moved *in limine* for pre-trial authentication of critical evidence of Jinhua's guilt so that it can effectively coordinate obtaining the testimony of Taiwan authorities involved in the seizure of that evidence. Jinhua's opposition is long on pages but short on authority. Throughout its response, Jinhua argues that Taiwan evidence cannot be admitted because of purported defects in the chain of custody. But it is settled law that such defects go to the weight of the evidence, not its admissibility. Jinhua ignores that legal standard. In so doing, it seeks to have the Court usurp the role of the jury and find as a matter of fact that the Taiwan evidence is not authentic. Moreover, Jinhua's interpretations of the U.S.-Taiwan Mutual Legal Assistance Agreement ("MLAA") are contrary to the plain meaning of its text and not supported by case law. If adopted by courts, Jinhua's interpretation of the U.S.-Taiwan MLAA would eviscerate key provisions of that agreement and similar provisions in numerous mutual legal assistance treaties between the United States and other countries.

**ARGUMENT**

**I.  The Government Has Identified with Particularity the Evidence it Seeks to Authenticate**

In its motion, the United States identified with particularity the evidence that is the subject of its motion: Hard Drive 48, the forensic images of devices seized by the Taiwan Ministry of Justice Investigation Bureau ("MJIB"), and the LINE chats between J.T. Ho and Kenny Wang (collectively, "the Taiwan evidence"). As stated in its motion, "[t]he United States claims that the Taiwan evidence is precisely what the certificates say it is: copies or software extractions of digital data seized by investigators in Taiwan and belonging to Project M employees, namely L.T. Rong and defendants Kenny Wang and J.T. Ho." Motion at 8 (Dkt. 220).

Despite the United States' clear identification of the evidence, Jinhua's response feigns confusion about the evidence. According to Jinhua, Opp. at 1, the government did not include bates numbers, production dates, or other identifying information in the motion. Jinhua neglects to mention, however, that during the meet-and-confer process, the United States sent a detailed email outlining exactly what evidence would be the subject of motion, by bates number and production date (items of information that are essentially meaningless to the Court). *See* 10/13/2021 Email from N. Hunter to M. Sloan (Ex. M).

Jinhua is incorrect that there are multiple versions of the critical evidence that is the subject of the motion. The United State produced one version of Hard Drive 48. It subsequently provided bates numbers for files on that drive for ease of reference by the party. But there has always only been one copy of Hard Drive 48 produced to Jinhua. Likewise, Jinhua has received a single copy of the forensic images of the seized devices. And while there are multiple *instances* of the LINE chats—as specified in the United States' email (Ex. M)—there are not multiple *versions* of the LINE chats with different content. There is one version of the LINE chats between Ho and Wang. Jinhua does not assert otherwise.

In any event, Jinhua's lengthy response to the United States' motion and the detailed expert report of its forensic expert about the evidence lays bare Jinhua's assertion that it is "left guessing" what evidence is the subject of the motion. Opp. at 1. Jinhua knows what the evidence is, what the government purports it to be, and how prejudicial the evidence is to Jinhua's defense.

## II. The Taiwan Evidence is Self-Authenticating Under Article 10 of the U.S.-Taiwan MLAA

The U.S.-Taiwan MLAA requires courts to authenticate records accompanied by a Form-B Certificate of Authenticity of Foreign Public Documents. Form B authenticates "copies of any documents records, or information which are in the possession of a department or agency" of Taiwan. U.S.-Taiwan MLAA art. 10, ¶ 2. That is exactly what the Taiwan evidence is. Exhibit A1 certifies that Hard Drive 48 is in the possession of the Taiwan Taichung District Court. Exhibit A2 certifies that the forensic images of the seized devices are in the possession of the forensic laboratory of the New Taipei Investigation Office. It is unremarkable that those records are in the custody of those government agencies.

The Form B certificates incorporate detailed information about what the evidence is. Exhibit A1 references the Taiwan Indictment (Ex. C), which describes with specificity the seized devices from which Taiwan investigators sourced the files on Hard Drive 48. The indictment includes description of the seized devices, the execution date of the seizure, the execution site, the target, the legal basis for seizure, and the relationship to "mobile disk No. 48" (*i.e.*, Hard Drive 48). *See, e.g.*, Ex. C at 38-29 (seizure details for "Attachment 8"). Similarly, Exhibit A2 references the same set of 26 seized devices mentioned throughout the certificates, including in a seizure certificate that is part of Exhibit A2.

1    Contrary to Jinhua's argument, Opp. at 13-14, there is nothing that forbids a certificate from referencing
2    and incorporating detailed information in another document, such as the Taiwan Indictment.

3          Jinhua asserts, Opp. at 9-10, that Article 10 of the MLAA does not apply to seized evidence.
4    According to Jinhua, Opp. at 3, Article 10 only applies to documents like "property deeds, birth
5    certificates, or arrest reports." Jinhua cites not authority for that proposition, because there is none. Nor
6    do any such limitations exist in the plain text of Article 10. Instead, Article 10 applies to "*any*
7    documents, records, or information" in the custody of a government agency. U.S.-Taiwan MLAA art.
8    10, ¶ 2 (emphasis added). One would expect that evidence associated with a criminal indictment might
9    exist in the custody of a district court. *See* Ex. A1. One would also expect a law enforcement agency to
10   have forensic images of electronic devices seized by that agency. *See* Ex. A2. Applying Article 10 to
11   seized items is, therefore, a plain, common-sense application of the provision. It is no more of a
12   "backdoor" for hearsay than any of the certificates contemplated under the Federal Rule of Evidence.
13   *See, e.g.*, Fed. R. Evid. 902(3), (4), (11), (13), (14).

14         Nor is there a meaningful distinction between seized evidence and recorded evidence for purposes
15   of self-authentication. Jinhua draws the conclusion that such a distinction exists by attempting to
16   distinguish, Opp. at 11, one case cited by the United States: *United States v. Doyle*, 130 F.3d 523 (2d Cir.
17   1997). But *Doyle* does not address a distinction between seized and recorded evidence. And Jinhua does
18   not even attempt to distinguish the other cases the United States cites. *See* Motion at 7. Those cases
19   suggest that the method by which a government agency obtains records or information is irrelevant to
20   whether the evidence can be self-authenticating. *Raphaely Int'l, Inc. v. Waterman S.S. Corp.*, 972 F.2d
21   498 (2d Cir. 1992), for example, involved the self-authentication of inspection certificates for peanut
22   cargo. An "inspection" is essentially a "seizure" of information.

23         The existence of Article 15—which is specific to seized evidence—does not render Article 10
24   inapplicable to seized evidence. Article 15 is not just about authentication of evidence. It allows a
25   requesting territory to request the seizure of evidence and to request certificates for the chain of custody.
26   *See* U.S.-Taiwan MLAA art. 15, ¶¶ 1-2. Article 10, on the one hand, provides a means of self-
27   authentication of certain types of documents through inadmissible certificates, not dissimilar from a
28

UNITED STATES' REPLY ISO
MOT. FOR AUTHENTICATION OF TAIWAN EVIDENCE
18-CR-465 MMC                                          3

1   business-records certificate.  *Cf.* Fed. R. Evid. 902(11).  Article 15, on the other hand, allows the United

2   States to request and obtain admissible evidence of authenticity.  That the two provisions may overlap

3   and apply to the same item of evidence does not negate the plain meaning of Article 10.  Just as a

4   business-record could be authenticated under Federal Rule of Evidence 901 or self-authenticated under

5   Rule 902(11), so too could the United States authenticate items of evidence under multiple provisions of

6   the U.S.-Taiwan MLAA.

7       The United States agrees that the Form B certificate for the instance of the Wang-Ho LINE chats

8   transmitted by Taiwan does not specifically identify the LINE chats, which were included in the

9   "[e]vidence based on the prosecutor's indictment."  Ex. A3.  The United States has therefore obtained a

10  declaration from the Taiwan Ministry of Justice Prosecutor responsible for coordinating the responses to

11  the United States' MLAA requests, Jane Jung.  *See* Jung Decl. (Ex. N).  Ms. Jung's declaration maps

12  items of the Taiwan evidence to their respective declarations.  Exhibit A3 corresponds to the instance of

13  the LINE chats attached as Exhibit F to the United States' motion.  Ex. N ¶ 5.

14  **III.   The Search-And-Seizure Certificates Are Admissible Evidence Sufficient to Establish the Authenticity Of Taiwan Evidence**

15

16      The unambiguous text of Article 15 requires that Form-C seizure certificates "shall be admissible

17  in evidence."  U.S.-Taiwan MLAA art. 15, ¶ 2.  A reasonable juror could review the seizure certificate in

18  Exhibit A1 and A2 and find in favor of authenticity.  *See United States v. Matta-Ballesteros*, 71 F.3d 754,

19  768 (9th Cir. 1995).

20      Jinhua asserts, Opp. at 14, that Article 15 allows Taiwan to "execute an admissible chain of

21  custody," but "does not discuss authenticating the seized documents themselves."  Chain-of-custody

22  evidence, however, is evidence of authenticity.  There is no distinction between the two and no reason to

23  think the U.S.-Taiwan MLAA contemplated such a non-existent distinction.  The United States does not

24  claim that the seizure certificates self-authenticate the evidence.  It claims that the certificates are

25  extrinsic admissible evidence that the jury may consider as the fact finder responsible for determining the

26  ultimate issue of authenticity.  The requirement for the United States to present *prima facie* evidence of

27  authenticity is strict, in that authentication is a strict prerequisite for the admission of evidence.  But the

28  *burden* of establishing the prima facie case is a low bar.  *See*, *United States v. Nelson*, ---F. Supp. 3d ----,

UNITED STATES' REPLY ISO
MOT. FOR AUTHENTICATION OF TAIWAN EVIDENCE
18-CR-465 MMC                                              4

2021 WL 1391591, at *14 (N.D. Cal. April 13, 2021) (Chen, J.); *see also United States v. Wolfenbarger*, 2021 WL 3475713, at *3 (N.D. Cal. Aug. 6, 2021) (Koh, J.) (authentication is a "lenient standard"); *Messih v. Mercedes-Benz USA, LLC*, 2021 WL 2588977, at *3 (N.D. Cal. June 24, 2021) (Orrick, J.) ("The burden to authenticate under Rule 901 is not high").

Jinhua is also incorrect, Opp. at 15-16, that the seizure certificates are not sufficiently specific. Both certificates, reference detailed tables that specify the date, location, and custodian of each seized device. Exhibit A1 incorporates a detailed description called "the TDPO statement." Ex. A1 at 5; Ex. D (translation of TDPO Statement). Jinhua asserts it does not know that Exhibit D is the TDPO statement referenced in Exhibit A1. To remove any doubt, Ms. Jung's declaration states that Exhibit D1 of her declaration—the original Chinese-language version of Exhibit D—is a true and accurate copy of the TDPO statement. Ex. N ¶ 3.

Jinhua is wrong, Opp. at 16, that the seizure certificate for the forensic images "says nothing about how or where the devices were seized." The certificate references and incorporates the description of seized devices in the "Certificate of Authenticity of Forensic Images," which is attached to the seizure certificate. *See* Ex A2 at 7, 9-12. The table in that "Certificate of Authenticity of Forensic Images" provides the date and location of seizure for each device.

Jinhua is also incorrect, Opp. at 15, that the United States did not provide a Form C seizure certificate for the LINE chats. One of the instances of the LINE chats is in a forensic extraction report on Hard Drive 48, from Kenny Wang's phone. Ex. E. Exhibit A1 includes a Form C seizure certificate for Hard Drive 48. Exhibit A1, therefore, is admissible evidence of the authenticity of the LINE chats. There is no dispute that the content of the various instances of the LINE chats are the same. *Compare* Ex. E (phone extraction) *with* Ex F (version provided by Taiwan).

In a footnote, Jinhua argues, Opp. at 15, that the certifications are invalid because they do not include a "seal," which the MLAA template Form C includes a space for. *See* U.S.-Taiwan MLAA Form C. But Article 15 is does not say a seal is required, and Jinhua cites no authority for invalidating a duly executed certificate based on the lack of a seal.

UNITED STATES' REPLY ISO
MOT. FOR AUTHENTICATION OF TAIWAN EVIDENCE
18-CR-465 MMC                                      5

## IV. Authenticating the Evidence Based on the Certificates Will Not Violate Jinhua's Confrontation Rights

Since the Supreme Court decided *Crawford*, courts—including the Ninth Circuit—have held that statements in certifications of authenticity are not testimonial for purposes of the Sixth Amendment right to confrontation. In *United States v. Anekwu*, 695 F.3d 967 (9th Cir. 2012), the court addressed essentially the same argument Jinhua makes now: whether authentication of foreign records based on foreign certificates of authenticity violated the defendant's confrontation rights. As here, the defendant in *Anekwu* argued that the certifications were "solemn declarations or affirmations made for the purpose of establishing or proving some fact." *Id.* at 977; *see also* Jinhua Response at 23 ("Here, the certificates at issues are being used to establish or prove some fact at trial." (internal quotations and citation omitted)). Nonetheless, the *Anekwu* court held that it was not plain error for the court to admit the records. *Anekwu*, 695 F.3d at 977. See also *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 311 n.1 (2009) ("We do not hold, and it is not the case, that anyone whose testimony may be relevant in establishing the chain of custody, authenticity of a sample, or accuracy of the testing device, must appear in person as part of the prosecution's case."); *United States v. Denton*, 944 F.3d 170, 184 (4th Cir. 2019) (admission of business records certificates at trial "did not contravene [defendant's] Sixth Amendment confrontation rights"); *United States v. Yeley-Davis*, 632 F.3d 673, 680-81 (10th Cir. 2011) (certifications under Rule 902(11) are not testimonial); *United States v. Morgan*, 505 F.3d 332, 339 (5th Cir. 2007) ("[W]e hold that *Crawford* does not apply to the foundational evidence authenticating business records in preliminary determinations of admissibility of evidence."); *United States v. Kilpatrick*, No. 10-20403, 20-WL-3236727, at *4 (E.D. Mich. Aug. 7, 2012) ("The Confrontation Clause is not implicated when the Court makes a preliminary authentication ruling under [Federal Rule of Evidence] 104").

## V. Jinhua's Remaining Arguments Ask the Court to Invade the Province of the Jury by Weighing the Evidence of Authenticity

Factual issues related to the authenticity and gaps in a chain of custody go to the weight of the evidence, not its admissibility. For purposes of determining admissibility under Rule 901, the Court must not weigh the evidence, it must only determine if a reasonable juror could conclude the evidence is

authentic. *See Matta-Ballesteros*, 71 F.3d at 768-69. "[I]t is not the case[] that anyone whose testimony may be relevant in establishing the chain of custody . . . must appear in person as part of the prosecution's case." *Melendez-Diaz*, 557 U.S. at 311 n.1.

Jinhua's brief ignores that settled principal of law. It repeatedly argues, *e.g.*, Opp. at 3, 4, 14, 16, 18, 19, and 20, that the Taiwan evidence is inadmissible because of defects in the chain of custody. Jinhua fails to cite authority in support of that proposition, because the overwhelming weight of authority is to the contrary. *See Melendez-Diaz*, 557 U.S. at 311 n.1; *United States v. Robinson*, 967 F.2d 287, 291-92 (9th Cir. 1995) ("A defect in the chain of custody . . . goes to the weight to be afforded to the evidence."); *United States v. Summers*, 666 F.3d 192, 201 (4th Cir. 2011) ("Establishing a strict chain of custody is not an iron-clad requirement, and the fact of a missing link does not prevent the admission of real evidence, so long as there is sufficient proof that the evidence is what it purports to be and has not been altered in any material respect."); *United States v. Tatum*, 548 F.3d 584, 587 (7th. Cir. 2008) ("The government does not need to prove a 'perfect' chain of custody, and any gaps in the chain go to the weight of the evidence and not its admissibility." (internal quotation marks omitted)). Indeed, the Ninth Circuit has affirmed the admission of evidence that lacked any chain of custody. *See Matta-Ballesteros*, 71 F.3d at 768-769; *see also United States v. Harrington*, 923 F.2d 1371, 1374 (9th Cir. 1991) ("[T]he prosecution was not required to call the custodian of evidence.").

Moreover, chain-of-custody requirements for evidence that is relatively resistant to change is relaxed when compared to evidence that is more susceptible to altering by tampering or alternation, like drugs. *United States v. Luna*, 649 F.3d 91, 103 (1st Cir. 2011); *Yeley-Davis*, 632 F.3d at 683. Digital files like those on the seized devices regarding complex technology, business presentations regarding DRAM, and business emails regarding the same are not the type of evidence that is susceptible to altering or tampering. And Jinhua's response all but ignores the substantial evidence in the United States' motion about the unique content of the seized devices and the LINE chats. The evidence of that content alone is sufficient to authenticate the seized devices. *See* Ex. H.

Jinhua intends to illicit testimony from its purported forensic expert, John Ashley, that a few of the seized devices were accessed after they were seized. *See generally* Ashley Disclosure (Jinhua Opp.

UNITED STATES' REPLY ISO
MOT. FOR AUTHENTICATION OF TAIWAN EVIDENCE
18-CR-465 MMC                                                7

Ex. 1). Jinhua intends to use that evidence to imply that MJIB agents tampered with the devices or acted improperly. The United States forensic expert, Andy Crain, however, submitted a rebuttal report indicating that the MJIB accesses to the devices did not alter the forensic evidence establishing that Project M employees possessed and access the indicted trade secret files during their employment at United Microelectronic Corporation, Inc. ("UMC") and/or Jinhua. *See* Andrew Crain Rebuttal Report ¶¶ 4-5 (Ex. P). In fact, there is a ready explanation for why the MJIB agents accessed the seized devices before the items could be forensically imaged: to conduct their investigation. MJIB interviews of Project M employees show, for example, that MJIB agents accessed and used seized devices to conduct interviews of suspects. *See, e.g.*, Ex. O (MJIB interviewer showing JT Ho the LINE chats on Kenny Wang's seized phone during interrogation of JT Ho). And other evidence shows that MJIB used a seized device to access UMC's servers to conduct a search and download information, undoubtedly because they needed a UMC-authorized device to access a UMC server. Whatever the case, that battle of the forensic experts must be resolved by the jury, not the Court in determining admissibility. *See also United States v. Calhoun*, No. 6:15-CR-16, 2015 WL 7769619, at *2 (E.D. Tex. Nov. 9, 2015), *report and recommendation adopted*, No. 6:15-CR-17, 2015 WL 7777988 (E.D. Tex. Dec. 2, 2015), *aff'd* 691 F. App'x 230 (5th Cir. 2017) (finding prima facie showing of authenticity of laptop despite undocumented access to laptop that occurred while in custody of law enforcement).

In any event, a presumption of regularity attaches to the acts of the MJIB agents, who conducted a lawful investigation that resulted in the conviction of UMC, Rong Letian, J.T. Ho, and Kenny Wang in Taiwan. *See Gallego v. United States*, 276 F.2d 914, 917 (9th Cir. 1960) ("[T]he presumption of regularity supports the official acts of public officers, and courts presume that they have properly discharged their official duties."). The Court should not deny the admission of the Taiwan evidence based on Jinhua's attempt to cast an aura of impropriety around its acquisition, with no actual evidence of improper conduct.

# CONCLUSION

Pursuant to its authority to decide preliminary questions about the admissibility of evidence under Federal Rule of Evidence 104, the Court should order that the Ho-Wang LINE chats, Hard Drive 48, and the forensic images of seized devices, are sufficiently authenticated for purposes of determining the admissibility of that evidence at trial. The Court should further order that the Form C seizure certificates included in Exhibits A1 and A2 are admissible at trial.

Dated: December 2, 2021

Respectfully Submitted,

STEPHANIE M. HINDS
Acting United States Attorney

 /s/ Nicholas O. Hunter
LAURA VARTAIN HORN
NICHOLAS WALSH
Assistant United States Attorneys

NICHOLAS O. HUNTER
STEPHEN MARZEN
Trial Attorneys, National Security Division